# UNITED STATES DISTRICT COURT
for the
Eastern District of California



FILED
DEC 0 2 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

| | | |
|---|---|---|
| United States of America<br>v.<br>CRAIG MASON<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>2:15 - MJ - 0 2 2 6   CKD |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  March 2013 through October 2013  in the county of  Sacramento  in the  Eastern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Unlawfully Manufacture and Deal in Firearms |
| 18 U.S.C. § 922(a)(1)(A) | Unlawful Dealing and Manufacturing in Firearms |

This criminal complaint is based on these facts:

See Attached Affidavit of ATF Special Agent Jerry Donn

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jerry Donn, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/2/2015

_____
*Judge's signature*

City and state:  Sacramento, California    Carolyn K. Delaney, United States Magistrate Judge
*Printed name and title*

# Affidavit in Support of a Criminal Complaint

I, Jerry Donn, being duly sworn, depose and state that:

## Purpose

1. This Affidavit is made in support of a criminal complaint and an arrest warrant for:

   a. **CRAIG MASON**

   For the following federal law violations:

   **COUNT 1:** Conspiracy to Unlawfully Manufacture and Deal in Firearms (18 U.S.C. § 371)

   **COUNT 2:** Unlawful Dealing and Manufacturing Firearms (18 U.S.C. § 922(a)(1)(A))

   Under 18 U.S.C. § 922(a)(1)(A), "[i]t shall be unlawful for any person – except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms."

## Agent Background

2. I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been an ATF Special Agent for fourteen years. Prior to working for ATF, I was employed as a Deputy United States Marshal with the United States Marshals Service for four years. I have received training in federal firearms laws and regulations at the ATF National Academy and Federal Law Enforcement Criminal Investigator Training Program. I have investigated at least one hundred cases involving federal firearms violations, involving unlawful sales, possession, manufacturing, and transportation of firearms. I have participated in a variety of different aspects of those investigations,

including surveillance, undercover operations to conduct controlled purchases of firearms, interviewing suspects, and the execution of search and arrest warrants. I have been the affiant of numerous affidavits for arrest and search warrants relating to firearms offenses.

3. The information contained in this Affidavit is based upon my review of the reports and files in the case, conversations with other law enforcement personnel, and my own personal knowledge. Because this affidavit is for the limited purpose of setting forth probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me through this investigation. I have set forth only those facts I deem necessary to establish probable cause to believe that the above-mentioned violation has been committed by **CRAIG MASON** (herein referred to as "MASON").

## Probable Cause Statement

4. ATF has been investigating the unlawful sales and manufacturing of firearms in the greater Sacramento area since March 2013. Since March 2013, undercover law enforcement officers and confidential informants have conducted controlled purchases of thirty-four illegally-manufactured firearms. The initial investigation focused on LCG AR Parts and Custom Accessories (herein referred to as "LCG"), a firearms accessories dealer in Sacramento, California. ATF determined that three individuals associated with LCG, LUIS CORTEZ-GARCIA ("LUIS CORTEZ"), EMILIANO CORTEZ-GARCIA ("EMILIANO CORTEZ"), and MICHAEL TURNER were manufacturing and selling AR-15-style firearms. Subsequent investigation determined that these three individuals were part of a network of individuals, to include MASON, in the greater Sacramento area engaged in the manufacturing and sale of firearms.

    a. On February 27, 2014, LUIS CORTEZ and EMILIANO CORTEZ were indicted by a federal grand jury in a 36-count indictment for unlawfully dealing in firearms and unlawful possession of firearms and machineguns (2:13-CR-00353-TLN).

5. On April 25, 2013, ATF Confidential Informant (herein referred to as "CI") visited LCG and purchased two AR-15 blanks from LUIS CORTEZ. The CI inquired about converting the AR-15 blanks into firearms. TURNER advised the CI that they [LCG] were no longer going to machine and drill AR-15 blanks into completed lower receivers and that the CI was going to have to do it. TURNER continued that this change was because of a "DOJ" announcement stating that it was illegal for them to show customers how to do the machining and drilling and be paid for it.

6. When the CI approached LUIS CORTEZ about the information provided by TURNER, LUIS CORTEZ advised that his brother (EMILIANO CORTEZ) was afraid to touch "the machine" (referring to the machine used to mill the AR-15 blanks). LUIS CORTEZ informed the CI that numerous customers had been calling and LUIS CORTEZ had informed them that he no longer did "it" anymore (referring to the machining and drilling of AR-15 blanks).

7. LUIS CORTEZ advised the CI to call "Steve" and assured the CI that "this guy ["Steve"], he do it". The CI attempted to call "Steve" but he did not answer the CI's call. The CI then advised LUIS CORTEZ that the CI was unable to make contact with "Steve" and that the CI wanted to purchase two AR-15 blanks if LUIS CORTEZ could reach "Steve" to conduct the milling. LUIS CORTEZ responded that he was going to call "Craig" (later identified to be MASON). While in the presence of the CI, LUIS CORTEZ called MASON via cell phone and advised him that he [LUIS CORTEZ] was "going to send somebody, [the CI] wants to do two 80s ok". LUIS CORTEZ reiterated to MASON that "[The CI] wants to do two 80s, carve it out". LUIS CORTEZ then told TURNER that he called MASON. TURNER responded that the "first one I ever did was with Craig".

8. Later on April 25, 2013, the CI travelled to MASON's residence outside of Sacramento, California. After meeting MASON, the two conversed and the CI advised MASON that the CI had been incarcerated in state prison and MASON responded that he was not concerned about it. MASON directed the CI into a large workshop on his property. The CI showed MASON the two AR-15 blanks that the CI wanted to mill. MASON then advised the CI that the CI was going to conduct the machining and drilling and that

MASON's role was to ensure the CI's safety and that the CI conducted the work properly. Based on my training and experience, I believe that MASON did this so that he could maintain a pretext that the CI was making the firearm instead of MASON. In fact, the CI had no knowledge or skill regarding the manufacturing of firearms and MASON specifically set up each task and then directed the CI to put the CI's hands on the equipment so that MASON could claim he wasn't making the firearm.

9. Pictured below is a screenshot from a video recorded during the CI's interaction with MASON. This screenshot shows the AR-15 blank fitted in a jig on a drill press.



*Screenshot 1 – Drill press operation at MASON's workshop*

10. MASON asked the CI if the AR-15 blanks were for the CI, to which the CI answered that they were. The CI machined the first AR-15 blank with the assistance and guidance of MASON. MASON advised the CI that "the Feds are cracking down on this stuff...on the 'CNC' guys especially". After the first AR-15 blank was milled into a lower receiver, MASON installed various internal AR-15 gun parts to determine if it was machined correctly. Thereafter, the CI began to mill the second AR-15 blank with the assistance and guidance of MASON. During that time, the CI observed MASON carrying a pistol on his person. When the CI addressed the matter with MASON, MASON advised the CI that he possessed a State of California carry concealed weapon ("CCW") license. MASON further advised that all

4 | Page

the other firearms he possessed, except those under his CCW license, were not registered because he did not believe in having to do so. Pictured below is another screenshot of MASON operating a drill press during his interaction with the CI.



*Screenshot 2 – MASON operating a drill press*

11. Eventually, the CI and MASON milled the second AR-15 blank into a lower receiver. MASON again installed various internal AR-15 gun parts into the lower receiver to determine if it was machined correctly. After MASON made some minor adjustments to the lower receiver, he advised the CI to pay him $250 for his services. The CI provided MASON payment and walked out of the workshop with the two completed AR-15 rifle lower receivers.

    a. Under 18 U.S.C. § 921(a)(3), the term "firearm" includes "the frame or receiver of any such weapon."

12. On April 29, 2013, the CI returned to LCG with the two lower receivers to purchase the necessary parts and accessories to build two AR-15 rifles. The CI asked LUIS CORTEZ to assemble the rifles, which he did and after doing so, he handed them to the CI. The CI paid $2,000 and then left LCG with the two AR-15 rifles (pictured below).



*Photo 1 - Two AR-15 rifles purchased on April 29, 2013 by the CI*

13. On October 9, 2013, law enforcement executed federal search warrants (2:13-SW-0659-CKD and 2:13-SW-0666-AC) at MASON's residence. During the search of the main residence and in and around the workshop, law enforcement seized the following:

    a. 40 AR-15 or AR-10 blanks (unfinished lower receivers);
    b. 7 AR-15 rifle lower receivers that were originally AR-15 blanks;
    c. 1 AR-15 rifle built with a lower receiver that was originally an AR-15 blank;
    d. 1 AR-10 rifle built with a lower receiver that was originally an AR-10 blank;
    e. 1 AR-15 pistol built with a lower receiver that was originally an AR-15 blank; and
    f. 3 jigs used for machining an AR-type blank into an AR-type rifle lower receiver.

14. A query of ATF records indicates that MASON is not a licensed dealer or manufacturer of firearms.

///

///

///

///

## Conclusion

15. Based upon the evidence presented in this Affidavit, there is probable cause to believe that Craig MASON did commit the following federal criminal law violations:

   **COUNT 1:** Conspiracy to Unlawfully Manufacture and Deal in Firearms (18 U.S.C. § 371)

   **COUNT 2:** Unlawful Dealing and Manufacturing Firearms (18 U.S.C. § 922(a)(1)(A))

I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

_____
JERRY DONN
Special Agent, ATF


Sworn and Subscribed to me on December 2, 2015,

_____
Hon. CAROLYN K. DELANEY
United States Magistrate Judge


Approved as to form:

_____
JUSTIN L. LEE
Assistant United States Attorney