UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:16-cr-00002-KJM-1 |
| Plaintiff, | ORDER |
| v. | |
| Craig Mason, | |
| Defendant. | |

Defendant Craig Mason pled guilty to one charge of manufacturing and dealing in firearms without a federal firearms license, 18 U.S.C. § 922(a)(1)(A). He moves to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). He wishes to proceed to trial on both charged offenses listed in the superseding indictment: the unlawful manufacturing and dealing in firearms charge, in violation of 18 U.S.C. § 922(a)(1)(A) (count one), and manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1) (count two). Mr. Mason has not carried his burden to show a "fair and just reason" exists for withdrawal of his plea prior to sentencing. *See United States v. Davis,* 428 F.3d 802, 805 (9th Cir. 2005). **The motion is denied.**

I.   **BACKGROUND**

The government originally charged Mr. Mason with unlawful manufacturing and dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A) (count one), and manufacturing marijuana, in

1

violation of 21 U.S.C. § 841(a)(1) (count two).  *See generally* Indictment, ECF No. 11.  These charges were based on his alleged involvement in the unlawful sale and manufacturing of firearms, in the greater Sacramento area, specifically AR-15-style firearms.  *See* Presentence Rep. (PSR) ¶ 5, ECF No. 103.  He also allegedly advertised on Craigslist in late 2011 seeking to reach people who wanted access to machine "80%" receivers.[1]  Mr. Mason had never applied for or held a federal firearms license and was not licensed to manufacture or deal firearms.  *Id*.  After the indictment issued, Mr. Mason was arrested and released on an unsecured appearance bond; he has been on pretrial supervision since December 11, 2015 without incident.  *Id*. ¶ 6.

       In August 2017, Mr. Mason's defense counsel filed a motion to dismiss count one of the indictment, arguing: (1) 18 U.S.C. § 922(a)(1)(A) is unconstitutionally vague as applied to Mr. Mason because "a blank or 80% receiver is not considered to be a firearm"[2] under the Gun Control Act of 1968 (GCA), 18 U.S.C. §§ 921–928, in violation of the Fifth Amendment's Due Process Clause, Mot. to Dismiss (MTD) at 6–7, ECF No. 52, and (2) violation of the Constitution's *ex post facto* clause given that the indicted conduct allegedly happened in 2013, *see* MTD at 10–11 (invoking U.S. Const. art. 1 § 9).  The government opposed the motion, contending it was improper for the court to evaluate evidence beyond the four corners of the indictment, *see generally* MTD Opp'n, ECF No. 53, and Mr. Mason replied, MTD Reply, ECF No. 54.  The court heard oral argument on November 15, 2017, denied the motion without prejudice from the bench and then issued a confirming order.  *See* Minutes, ECF No. 59; Order

---

      [1] This is the lay terminology to describe AR-15 rifle lower receivers in an 80-percent completed form that require additional machining to become operational lower receivers.  *See* PSR ¶ 5.

      [2] The statute does not itself define "frame or receiver." The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has adopted a gap-filling regulation that defines the term "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 479.11.  The regulation also provides that the term "machine gun" shall include "the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person." *Id*.

1  (Nov. 30, 2017), ECF No. 60.  The court explained in its written order that when "reviewing
2  pretrial dismissal motions" the court is "bound to the four corners of the indictment."  Order
3  (Nov. 30, 2017) at 2 (citing *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)).  As Mr.
4  Mason did not argue that § 922(a)(1)(A) was unconstitutionally vague as applied to the
5  Indictment's "characterization of his conduct" the court found Mr. Mason's vagueness argument
6  unavailing.  *Id*. at 3 (citing *United States v. Rodriguez-DeHaro*, 192 F. Supp. 2d 1031, 1039 (E.D.
7  Cal. 2002) (denying motion to dismiss indictment on grounds of unconstitutional vagueness,
8  finding statute at issue not unconstitutionally vague as applied to facts alleged in indictment)).

9        On March 8, 2018, a grand jury returned a superseding indictment against Mr. Mason with
10  the same two criminal counts originally charged, making two changes: (1) expanding the time
11  period of the criminal activity in count one from "on or about April 25, 2013" to "beginning in
12  2011, and continuing until on or about October 9, 2013"; and (2) adding a detailed forfeiture
13  allegation which sought to forfeit "any property" obtained "directly or indirectly" as a result of
14  the criminal offense.  Superseding Indictment at 1–2, ECF No. 62.  It was a year later that
15  defendant pled guilty to count one of the two-count superseding indictment.  Plea Agreement,
16  ECF No. 100; Change of Plea Hr'g Tr., ECF No. 137.  As part of his plea agreement, defendant
17  waived his right to collateral attack including a challenge to "any aspect of the guilty plea,
18  conviction, or sentence."  Plea Agreement at 8:16–22.

19        On May 24, 2019, defendant filed a sentencing memorandum requesting a sentence of
20  home confinement.  *See* ECF No. 108.  On August 19, 2019, the government filed a sentencing
21  memorandum requesting the court impose a 51-month custodial sentence.  *See* ECF No. 112.  The
22  Probation Officer recommended a 33-month custodial sentence, the low end of the guidelines
23  range.  *See* PSR at 3.

24        Nearly a year after entering his guilty plea, but before being sentenced, defendant filed the
25  pending motion to withdraw his guilty plea under Federal Rule of Criminal Procedure
26  11(d)(2)(B).  The parties briefed the matter and the court heard oral argument by videoconference
27  on June 29, 2020.  *See* Mot., ECF No. 130; Opp'n, ECF No. 141; Reply, ECF No. 142.

1  Defendant was present out of custody; the court submitted the matter after hearing.  *See* Minutes,
2  ECF No. 146.  The court resolves the motion below.

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) governs requests to withdraw a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."  *See United States v. Ruiz*, 257 F.3d 1030, 1033 (9th Cir. 2001) (holding fair and just reason standard applies to pre-sentencing motions to withdraw guilty pleas).  Once the court has accepted a plea, "permitting withdrawal is, as it ought to be, the exception, not an automatic right."  *United States v. Minasyan*, 4 F.4th 770 (9th Cir. 2021).  The decision to allow withdrawal of a plea is solely within the discretion of the district court.  *See United States v. Nagra*, 147 F.3d 875, 880 (9th Cir.1998).  The standard is applied liberally.  *Id*.  While the fair and just standard "is generous," *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008), a defendant may not withdraw his guilty plea "simply on a lark." *United States v. Hyde*, 520 U.S. 670, 676–77 (1997).  Mr. Mason "has the burden to show a fair and just reason for withdrawal of a plea." *Davis,* 428 F.3d at 805 (9th Cir. 2005).

## III.   DISCUSSION

Mr. Mason argues the government offered him the plea agreement without disclosing to defense counsel two items: one, the district court decision in *United States v. Jimenez*, 191 F. Supp. 3d 1038, 1043 (N.D. Cal. 2016), and two, a 2016 letter by then-Attorney General Loretta Lynch to then-Speaker of the House of Representatives Paul Ryan discussing the *Jimenez* case, which granted a constitutional vagueness based on the statute's application to the lower receiver of an AR-15 style machine gun, and the merits of not appealing the decision.  *See* Mot. at 6–9; *id*. Ex. C (Lynch Letter) at 1, ECF No. 130-3.  Had he known about the district court's decision in *Jimenez*, Mr. Mason says he would have presented similar arguments in his defense in this case; also, had he known about the government's decision not to appeal *Jimenez* and the Lynch Letter, he would have changed his litigation strategy.  *See generally* Mot.

The government argues it had no duty to disclose a court decision or public letter, and that Mr. Mason's motion is barred by the collateral attack waiver, that Mr. Mason knowingly and

4

voluntarily signed the waiver, and that principles of contract law control the interpretation of the plea agreement. *See* Opp'n at 3 (citing Plea at 8:16–22; *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) ("Principles of contract law control our interpretation of a plea agreement.")).

Without resolving the collateral attack waiver issue, the court addresses the merits to determine whether the defendant has shown "a fair and just reason for requesting the withdrawal." *Ruiz*, 257 F.3d at 1033. Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other viable reason for withdrawing the plea that did not exist when the defendant entered his guilty plea. *See United States v. Turner,* 898 F.2d 705, 713 (9th Cir. 1990) (citing *United States v. Rios–Ortiz,* 830 F.2d 1067, 1069 (9th Cir. 1987) (noting the origin of the "fair and unjust" language)).

Mr. Mason has not carried his burden to show that a "fair and just reason" exists for withdrawing his plea. He does not challenge the adequacy of the Rule 11 hearing nor does he claim he has located newly discovered evidence; instead he moves to withdraw his plea arguing that his not knowing about the *Jimenez* decision and Lynch Letter qualify as "any other reason" for withdrawal of his plea. Reply at 10. As noted above, in *Jimenez*, the district court resolved the vagueness challenge with respect to AR-15 lower receivers in that defendant's favor. 191 F. Supp. 3d at 1043. The court found defendant "did not have any notice that buying the lower receiver of an AR-15 would subject him to criminal penalties under federal law." *Id*. And Ms. Lynch's letter describes the unique "split receiver" mechanism of an AR-15 as a factor in the decision not to appeal. *See generally* Lynch Letter. In Mr. Mason's eyes the *Jimenez* decision and the Lynch Letter point out an "intractable problem" with applying § 922(a)(1)(A) to AR-15 blanks, which cannot be solved "without additional regulatory or legislative action." *See* Mot. at 6–7.

Mr. Mason argues he should be permitted to withdraw his guilty plea and proceed to jury trial so that he too can challenge the vagueness of § 922(a)(1)(A) in this case. Specifically, he contends his only recorded interaction with an ATF confidential source involved working on blanks, conduct he argues is not unlawful under the reasoning applied by other district courts in

5

addition to that in *Jimenez*. *See* Mot. at 11 (citing *Jimenez*, 191 F. Supp. 3d at 1038; *United States v. Joseph Roh*, Docket No. SACR 14-167(JVS) (S.D. Cal. 2018),[3] and *United States v. Rowold*, 429 F. Supp. 3d 469, 473 (N.D. Ohio 2019)).  But the Superseding Indictment alleges Mr. Mason's manufacturing of firearms with both an upper and lower receiver.  Superseding Indictment at 2.  And "[a] development in non-binding authority such as a district court decision . . . does not . . . satisfy[] a defendant's burden under Rule 11(d)(2)(B)." *See United States v. Ensminger,* 567 F.3d 587, 591 (9th Cir. 2009).

      Mr. Mason has not shown a "marked shift in governing law that gives traction to a previously foreclosed or unavailable argument." *Id.* at 592.  Withdrawal of his plea would be appropriate, unlike here, where intervening United States Supreme Court precedent provided grounds for a previously foreclosed argument. *See United States v. Garcia-Lopez*, 903 F.3d 887 (9th Cir. 2018).  By contrast, in *United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004), at the time Ortega-Ascanio pled guilty in early 2000, the law precluded Ortega-Ascanio's argument that he was eligible for discretionary relief from deportation given the lengthy period of his residency in the United States, despite his having pled guilty to other prior disqualifying crimes. *Id.* at 882 (noting although relief available at time of an underlying plea in 1989, relief eliminated by passage of AEDPA by the time of deportation proceedings in 1998; citing in particular 8 U.S.C. § 1182(c) in effect in 1998); *see also, e.g., Magana-Pizano v. INS*, 200 F.3d 603, 613 (9th Cir. 1999) (Ninth Circuit law at the time applying the AEDPA's elimination of relief), *rev'd*, *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001).  In particular, the law precluded Ortega-Ascanio's argument  that because the immigration judge did not advise him of the availability of relief, his deportation could not be the basis for his later conviction in federal court. *Ortega-Ascanio*, 376 F.3d at 883.  After Ortega-Ascanio pled guilty, the Supreme Court then decided *St. Cyr*, *supra*, holding that the AEDPA "could not apply retroactively to bar [discretionary] relief to aliens who were eligible for such relief at the time they pled guilty to the offense that rendered them

---

[3] Mr. Mason cites this "Tentative Minute Order re Post Trial Motions" in his briefing. *See* Mot. Ex. E at 2–9, ECF No. 130-5.  It appears the tentative minute order was never issued. *See* Opp'n at 8 n.5.

ineligible under the AEDPA." *See* 376 F.3d at 882. Before his sentencing hearing, Ortega-Ascanio filed a motion to withdraw his guilty plea, which the district court denied. *Id.* at 883. The Circuit reversed the denial so that Ortega-Ascanio could move to dismiss the indictment under *St. Cyr*, given that he had not yet been sentenced. *Id*. at 885-86. Here, Mr. Mason does not move the court to withdraw his plea based on an actual change in the controlling law. Moreover, both the *Jimenez* decision and Lynch Letter were available to him with diligent effort starting in or about 2016, nearly three years before he entered his guilty plea in 2019.

Mr. Mason's argument that the government is barred from "misleading the tribunal" if aware of adverse authority, *see* Reply at 8 (citing to ABA Model Rule of Professional Conduct 3.3), does not persuade the court to reach a different conclusion. The ABA Model Rule of Professional Conduct prohibits an attorney from knowingly failing to disclose controlling authority directly adverse to the position he advocates. *See* Rule 3.3(a)(3). Mr. Mason would put the onus on the government to disclose the *Jimenez* decision and the Lynch Letter while at the same time acknowledging the *Jimenez* decision is "not technically controlling" in this court. Mot. at 8. The government was not obliged to disclose the *Jimenez* decision and the Lynch Letter because the information they contain is not controlling authority, was not directly adverse to the position the government's counsel advocated and was available to Mason's defense counsel.

Although the "fair and just reason" standard for requesting withdrawal of a guilty plea is a liberal one, it must be consistent with "Rule 11's purpose of ensuring some finality at the time pleas are accepted." *Minasyan*, 4 F.4th at 778 (citing Fed. R. Crim. P. 11(d)(2)(B)). Consistent with the purpose of ensuring some finality, the court **denies** Mr. Mason's motion to withdraw his guilty plea.

This order resolves ECF No. 130.

IT IS SO ORDERED.

DATED: September 13, 2021.

CHIEF UNITED STATES DISTRICT JUDGE