This site displays a prototype of a "Web 2.0" version of the daily Federal Register. It is not an official legal edition of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to About the Federal Register on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

LEGAL STATUS

# Definition of "Frame or Receiver" and Identification of Firearms

A Proposed Rule by the Alcohol, Tobacco, Firearms, and Explosives Bureau on 05/21/2021

## DOCUMENT DETAILS

**Printed version:**
PDF (https://www.govinfo.gov/content/pkg/FR-2021-05-21/pdf/2021-10058.pdf)

**Publication Date:**
05/21/2021 (/documents/2021/05/21)

**Agencies:**
Bureau of Alcohol, Tobacco, Firearms, and Explosives (https://www.federalregister.gov/agencies/alcohol-tobacco-firearms-and-explosives-bureau)

**Dates:**
Written comments must be postmarked and electronic comments must be submitted on or before August 19, 2021. Commenters should be aware that the electronic Federal Docket Management System will not accept comments after Midnight Eastern Time on the last day of the comment period.

**Comments Close:**
08/19/2021

**Document Type:**
Proposed Rule

**Document Citation:**
86 FR 27720

**Page:**
27720-27753 (34 pages)

**CFR:**
27 CFR 447
27 CFR 478
27 CFR 479

**Agency/Docket Numbers:**
Docket No. ATF 2021R-05
AG Order No. 5051-2021

RIN:
1140-AA54 (https://www.federalregister.gov/regulations/1140-AA54/definition-of-frame-or-receiver-and-identification-of-firearms)

Document Number:
2021-10058

**DOCUMENT DETAILS**

**DOCUMENT STATISTICS**

Page views:
207,659
as of 11/29/2021 at 12:15 pm EST

**DOCUMENT STATISTICS**

**ENHANCED CONTENT**

regulations.gov

Docket Number:
ATF-2021-0001 (https://beta.regulations.gov/docket/ATF-2021-0001)

Docket Name:
Definition of "Frame or Receiver" and Identification of Firearms

Docket RIN
1140-AA54 (https://www.federalregister.gov/regulations/1140-AA54/definition-of-frame-or-receiver-and-identification-of-firearms)

Supporting/Related Materials:
Definition of Receiver.RIA.5-7-21 - final (https://www.regulations.gov/document?D=ATF-2021-0001-0002)
Definition of Frame or Receiver and Identification of Firearms (https://www.regulations.gov/document?D=ATF-2021-0001-0001)

**ENHANCED CONTENT**

**PUBLISHED DOCUMENT**

⊡ Start Printed Page 27720

## AGENCY:

Bureau of Alcohol, Tobacco, Firearms, and Explosives, Department of Justice.

## ACTION:

Notice of proposed rulemaking; request for comment.

## SUMMARY:

The Department of Justice ("Department") proposes amending Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") regulations to provide new regulatory definitions of "firearm frame or receiver" and "frame or receiver" because the current regulations fail to capture the full meaning of those terms. The Department also proposes amending ATF's definitions of "firearm" and "gunsmith" to clarify the meaning of those terms, and to provide definitions of terms such as "complete weapon," "complete muffler or silencer device," "privately made firearm," and "readily" for purposes of clarity given advancements in firearms technology. Further, the Department proposes amendments to ATF's regulations on marking and recordkeeping that are necessary to implement these new or amended definitions.

Written comments must be postmarked and electronic comments must be submitted on or before August 19, 2021. Commenters should be aware that the electronic Federal Docket Management System will not accept comments after Midnight Eastern Time on the last day of the comment period.

## ADDRESSES:

You may submit comments, identified by docket number ATF 2021R-05, by any of the following methods—

- *Federal eRulemaking Portal: www.regulations.gov (http://www.regulations.gov)*. Follow the instructions for submitting comments.
- *Mail:* Andrew Lange, Office of Regulatory Affairs, Enforcement Programs and Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, 99 New York Ave. NE, Mail Stop 6N-518, Washington, DC 20226; *ATTN: ATF 2021R-05.*
- *Fax:* (202) 648-9741.

*Instructions:* All submissions received must include the agency name and docket number (ATF 2021R-05) for this notice of proposed rulemaking ("NPRM" or "proposed rule"). All properly completed comments received will be posted without change to the Federal eRulemaking portal, *www.regulations.gov (http://www.regulations.gov),* including any personal information provided. For detailed instructions on submitting comments and additional information on the rulemaking process, see the "Public Participation" heading of the **SUPPLEMENTARY INFORMATION** section of this document.

## FOR FURTHER INFORMATION CONTACT:

Andrew Lange, Office of Regulatory Affairs, Enforcement Programs and Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, U.S. Department of Justice, 99 New York Ave. NE, Mail Stop 6N-518, Washington, DC 20226; telephone: (202) 648-7070 (this is not a toll-free number).

## SUPPLEMENTARY INFORMATION:

### I. Background

The Attorney General is responsible for enforcing the Gun Control Act of 1968 ("GCA"), as amended, and the National Firearms Act of 1934 ("NFA"), as amended.[1] This responsibility includes the authority to promulgate regulations necessary to enforce the provisions of the GCA and NFA. *See* 18 U.S.C. 926 (https://www.govinfo.gov/link/uscode/18/926?type=usc&year=mostrecent&link-type=html)(a); 26 U.S.C. 7801 (https://www.govinfo.gov/link/uscode/26/7801?type=usc&year=mostrecent&link-type=html)(a)(2) (A), 7805(a). Congress and the Attorney General have delegated the responsibility for administering and enforcing the GCA and NFA to the Director of ATF, subject to the direction of the Attorney General and the Deputy Attorney General. *See* 28 U.S.C. 599 (https://www.govinfo.gov/link/uscode/28/599? type=usc&year=mostrecent&link-type=html)A(b)(1); 28 CFR 0.130 (/select-citation/2021/05/21/28-CFR-0.130)(a)(1)-(2). Accordingly, the Department and ATF have promulgated regulations implementing the GCA and NFA. *See* 27 CFR parts 478 (/select-citation/2021/05/21/27-CFR-478), 479.

Prior to passage of the GCA, the Federal Firearms Act of 1938 ("FFA") regulated all firearm parts. The FFA and implementing regulations defined the term "firearm" to mean "any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer, *or any part or parts of such weapon.*" Public Law 75-785, 52 Stat. 1250 (1938); 26 CFR

Control and Safe Streets Act of 1968 repealed the FFA, replacing it with the GCA. Public Law 90-351, section 907, 82 Stat. 197 (1968). During debate on the GCA and related bills introduced to address firearms trafficking, Congress recognized that regulation of all firearm parts was impractical. Senator Dodd explained that "[t]he present definition of this term includes `any part or parts' of a firearm. It has been impractical to treat each small part of a firearm as if it were a weapon. The revised definition substitutes the words `frame or receiver' for the words `any part or parts.' " *See* 111 Cong. Rec. 5527 (March 22, 1965).[2]

A "firearm" is defined by 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921? type=usc&year=mostrecent&link-type=html)(a)(3) to include not only a weapon that will, is designed to, or may readily be converted to expel a projectile, but also the "frame or receiver" of any such weapon. Because "frames" or "receivers" are included in the definition of "firearm," any person who engages in the business of manufacturing, importing, or dealing in frames or receivers must obtain a license from ATF. 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?type=usc&year=mostrecent&link-type=html)(a)(1)(A); *id.* at 923(a). Each licensed manufacturer or importer must "identify by means of a serial number engraved or cast on the receiver or frame of the weapon, in such manner as the Attorney General shall by regulations prescribe, each firearm imported or manufactured by such importer or manufacturer." [3] 18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(i); *see* 27 CFR 478.92 (/select-citation/2021/05/21/27-CFR-478.92), 479.102. Licensed manufacturers and importers must also maintain permanent records of production or importation, as well as their receipt, sale, or other disposition of firearms, including frames or receivers. 18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(1)(A); 27 CFR 478.122 (/select-citation/2021/05/21/27-CFR-478.122), 478.123.

A "frame or receiver" is the primary structural component of a firearm to which fire control components are attached.[4] While the GCA does not ☐ define the term "frame or receiver," to implement the statute, the terms "firearm frame or receiver" and "frame or receiver" were defined in regulations several decades ago as that part of a firearm that provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel. 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) (implementing GCA, Title I); 27 CFR 479.11 (/select-citation/2021/05/21/27-CFR-479.11) [5] (implementing GCA, Title II). The intent in promulgating these definitions was to provide guidance as to which portion of a firearm was the frame or receiver for purposes of licensing, serialization, and recordkeeping, thereby ensuring that a necessary component of the weapon could be traced if later involved in a crime.

☐ Start Printed
Page 27721

At the time these definitions were published around 50 years ago, single-framed firearms such as revolvers and break-open shotguns were far more prevalent for civilian use than split/multi-piece receiver weapons, such as semiautomatic rifles and pistols with detachable magazines. Single-framed firearms incorporate the hammer, bolt or breechblock, and firing mechanism within the same housing. Years after these definitions were published, split/multi-piece receiver firearms, such as the AR-15 semiautomatic rifle (upper receiver and lower receiver), Glock semiautomatic pistols (upper slide assembly and lower grip module), and Sig Sauer P320 (M17/18 as adopted by the U.S. military) (upper slide assembly, chassis, and lower grip module), became popular.[6] Additionally, more firearm manufacturers began incorporating a striker-fired mechanism rather than a "hammer" in the firing design. With the rise in popularity of striker-fired Glock semiautomatic pistols in the mid-1980s, other manufacturers began incorporating a striker-fired mechanism, rather than a hammer, in semiautomatic handguns.[7]

Although ATF's regulatory definitions of "frame or receiver" do not expressly capture these types of firearms (*i.e.*, split/multi-piece receivers) that now constitute the majority of firearms in the United States,[8] ATF's position has long been that the weapon "should be examined with a view toward determining if [either] the upper or lower half of the receiver more nearly fits the legal definition of `receiver,' " and more specifically, for machineguns, whether the upper or lower portion has the ability to accept machinegun parts.[9 10]

Since it began issuing firearm classifications under the GCA and NFA in private letter rulings and for criminal investigations, ATF has considered a variety of factors when examining firearms, including: (a) Which component the manufacturer intended to be the frame or receiver; (b) which component the firearms industry commonly considers to be the frame or receiver with respect to the same or similar firearms; (c) how the component fits within the overall design of the firearm when assembled; (d) the design and function of the fire control components to be housed, such as the hammer, bolt or breechblock, and firing mechanism; (e) whether the component could permanently, conspicuously, and legibly be identified with a serial number and other markings in a manner not susceptible of being readily obliterated, altered, or removed, in accordance with regulations; (f) whether classifying the particular component is consistent with the legislative intent of the GCA and implementing regulations; and (g) whether classifying the component as the frame or receiver is consistent with ATF's prior classifications.

Even though neither the upper nor the lower portion of a split/multi-piece receiver firearm alone falls within the precise wording of the regulatory definition, ATF has for many years interpreted the regulatory definition using these factors as a guide in determining which portion of a weapon model is a firearm frame or receiver. Indeed, the current definitions were never intended to be, or understood to be, exhaustive; at the time the current definitions were adopted there were numerous models of firearms that did not contain a part that fully met the regulatory definition of "frame or receiver," such as the Colt 1911, FN-FAL, and the AR-15/M-16, all of which were originally manufactured almost exclusively for military use, and ATF has long applied these factors in determining which component of those weapons qualifies as the frame or receiver.[11]

Existing law recognizes that the definition of "frame or receiver" need not be limited to a strict application of the regulation. The prefatory paragraph to the definitional section of 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) (Meaning of Terms) states: "[w]hen used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, terms shall have the meanings ascribed in this section." [12] The intent of Congress, as indicated by the plain language and the statutory scheme of the GCA, is to regulate—as a firearm—the frame or receiver of a firearm. *See* 111 Cong. Rec. 5527 (March 22, 1965). As stated above, Congress replaced the term "part or parts" in the FFA definition of "firearm" with "frame or receiver," the major parts of a weapon regulated under the GCA. This includes marking these parts with serial numbers for tracing purposes, recording these parts as "firearms" in required records, and running a National Instant Criminal Background Check System ("NICS") background check when individuals purchase or acquire them.

☐ Start Printed
Page 27722

In the past few years, however, some courts have treated the regulatory definition as exhaustive when applied to the lower portion of the AR-15-type rifle, which is the semiautomatic version of the M-16-type machinegun originally designed for the U.S. military. While ATF for decades has classified the lower receiver of the AR-15 rifle as a "frame or receiver," courts recently have read the regulatory definition to mean that the lower portion of the AR-15 is not a "frame or receiver" because it only provides housing for the hammer and firing mechanism, but not the bolt or breechblock. *See United States* v. *Rowold*, 429 F. Supp. 3d 469, 475-77 (N.D. Ohio 2019) ("The language of the regulatory definition in § 478.11 lends itself to only one

interpretation: namely, that under the GCA, the receiver of a firearm must be a single unit that holds three, not two components: 1) the hammer, 2) the bolt or breechblock, and 3) the firing mechanism."); *United States* v. *Jimenez*, 191 F. Supp. 3d 1038, 1041 (N.D. Cal. 2016) ("[A] receiver must have the housing for three elements: hammer, bolt or breechblock, and firing mechanism."); *United States* v. *Joseph Roh*, SACR 14-167-JV, Minute Order p. 6 (C.D. Cal. July 27, 2020) (granting defendant's post-trial motion for acquittal for manufacturing AR-15 lower receivers without a license because "[n]o reasonable person would understand that a part constitutes a receiver where it lacks the components specified in regulation").

These courts' interpretation of ATF's regulations, if broadly followed, could mean that as many as 90 percent of all firearms now in the United States would not have any frame or receiver subject to regulation.[13] Those firearms would include numerous widely available models, such as Glock-type and Sig Sauer P320 [14] pistols, that do not utilize a hammer—a named component—in the firing sequence. Such a narrow interpretation of what constitutes a frame or receiver would allow persons to avoid: (a) Obtaining a license to engage in the business of manufacturing or importing upper or lower frames or receivers; (b) identifying upper or lower frames or receivers with a serial number and other traceable markings; (c) maintaining records of upper or lower frames or receivers produced or imported through which they can be traced; and (d) running NICS checks on potential transferees to determine if they are legally prohibited from receiving or possessing firearms when they acquire upper or lower frames or receivers. In turn, this would allow prohibited persons to acquire upper and lower receivers that can quickly be assembled into semiautomatic weapons more easily and without a background check.[15] If no portion of split/multi-piece frames or receivers were subject to any existing regulations, such as marking, recordkeeping, or background checks, law enforcement's ability to trace semiautomatic firearms later used in crime would be severely impeded. This result would thereby undermine the intent of Congress in requiring the frame or receiver of every firearm to be identified, *see* 18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(i), and regulated as a firearm, *see* 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(3)(B).[16]

## B. Privately Made Firearms or "Ghost Guns"

Technological advances have also made it easier for unlicensed persons to make firearms at home from standalone parts or weapon parts kits, or by using 3D printers or personally owned or leased equipment, without any records or a background check. Commonly referred to as "ghost guns," these privately made firearms ("PMFs"), when made for personal use, are not required by the GCA to have a serial number placed on the frame or receiver, making it difficult for law enforcement to determine where, by whom, or when they were manufactured, and to whom they were sold or otherwise disposed.

In recent years, the number of PMFs recovered from crime scenes throughout the country has increased.[17] From January 1, 2016, through December 31, 2020, there were approximately 23,906 suspected PMFs reported to ATF as having been recovered by law enforcement from potential crime scenes, including 325 homicides or attempted homicides, and that were attempted to be traced by ATF, broken down by year as follows: [18]

🗋

🗋 Start Printed Page 27723

2016: 1,750

2017: 2,507

2018: 3,776

2020: 8,712

It is, therefore, not unexpected that numerous Federal criminal cases have been brought by the Department to counter illegal trafficking in unserialized home-completed and assembled weapons, and possession of such weapons by prohibited persons.[19]

The problem of untraceable firearms being acquired and used by violent criminals and terrorists is international in scope. On May 28, 2019, citing intelligence reports by the Department of Homeland Security ("DHS"), the Federal Bureau of Investigation ("FBI"), and the National Counterterrorism Center ("NCTC"), the House Committee on Homeland Security issued a report concluding that "[g]host guns not only pose a challenge on the front end, enabling prohibited buyers to purchase deadly weapons with just a few clicks online, but also on the back end, hamstringing law enforcement's ability to investigate crimes committed with untraceable weapons" and that the "wide availability of ghost guns and the emergence of functional 3D-printed guns are a homeland security threat. Terrorists and other bad actors may seek to exploit the availability of these weapons for dangerous ends." H.R. Rep. No. 116-88, at 2 (May 28, 2019).[20] Criminal investigations and studies highlight this concern.[21]

The GCA "insists that the dealer keep certain records, to enable federal authorities both to enforce the law's verification measures and to trace firearms used in crimes." *Abramski* v. *United States,* 573 U.S. 169, 173 (2014) (citing H. Rep. No. 1577, 90th Cong., 2d Sess., 14 (1968)). "That information helps to fight serious crime." *Id.* at 182; *see also* Identification Markings Placed on Firearms, 66 FR 40597 (/citation/66-FR-40597) (Aug. 3, 2001) ("Firearms tracing is an integral part of ☐ any investigation involving the criminal use of firearms."); *Blaustein & Reich, Inc.* v. *Buckles,* 220 F. Supp. 2d 535, 537 (E.D. Va. 2002) (ATF has a statutory duty pursuant to the GCA to trace firearms to keep them out of the hands of criminals).[22] An accurate firearm description is necessary to trace a firearm and is required to be recorded by a person licensed to engage in the business of manufacturing, importing, or dealing in firearms, or by a licensed collector of curio or relic firearms, regardless of whether it is a business or personal firearm.[23]

☐ Start Printed
Page 27724

ATF traces firearms found by law enforcement at a crime scene by first contacting the licensed manufacturer or importer marked on the frame or receiver who maintains permanent records of their manufacture or importation and disposition. Using the information obtained from those required records, ATF then contacts each licensed dealer or other licensee who recorded their receipt and disposition to locate the first unlicensed purchaser to help find the perpetrator or otherwise solve the crime.[24] However, because PMFs do not bear a serial number or other markings of a licensed manufacturer or importer, ATF has found it extremely difficult to complete such traces on behalf of law enforcement to individual unlicensed purchasers. From January 1, 2016, through March 4, 2021, ATF could only complete traces of suspected PMFs recovered by law enforcement to an individual purchaser in approximately 151 out of 23,946 attempts, generally by tracing a serial number engraved on a handgun slide, barrel, or other firearm part not currently defined as a frame or receiver, but recorded by licensees in the absence of other markings.[25]

With the proliferation of PMFs, ATF has also received numerous requests from licensees seeking clarity on how they may be accepted and recorded so that they can track their inventories, process warranty claims, reconcile any missing inventory, respond to trace requests, and report lost or stolen PMFs to police and insurance companies. Federal law and regulations require licensees, before conducting business, to inventory the firearms possessed for such business and record it in a Firearms Acquisition and Disposition Record

("A&D Record"). [26] After commencing business, licensees must record all firearms received and disposed of by the business in the A&D Record to include the following information separated into columns: Manufacturer and/or importer, model, serial no., type, and caliber or gauge. [27] When a firearm is disposed to an unlicensed person, licensees are required to complete a Firearms Transaction Record, ATF Form 4473 ("Form 4473"). [28] Like the A&D Record, this form requires licensees to record the manufacturer and importer, model (if designated), serial number, type, and caliber or gauge of the firearm. Licensees are also required by law to report the theft or loss of firearms on a Federal Firearms Licensee Theft/Loss Report, ATF Form 3310.11, which includes a description of the manufacturer, importer, model, serial number, type, and caliber/gauge of each firearm stolen or lost. [29] And when licensees sell or otherwise dispose of multiple pistols or revolvers within five consecutive business days to the same person, they must report to ATF the type, serial number, manufacturer, model, importer, and caliber on a Report of Multiple Sale or Other Disposition of Pistols and Revolvers, ATF Form 3310.4. [30]

However, because PMFs do not have markings identifying the name of a licensed manufacturer or importer, model, serial number, or caliber/gauge, licensees might only record a "type" of firearm (e.g., pistol, revolver, rifle, or shotgun) in their A&D Records and on ATF Forms 4473. Over time, as more PMFs are accepted into inventory, it will become increasingly difficult, if not impossible, for licensees and ATF (during inspections) to distinguish between those PMFs physically in the firearms inventory and those recorded in required A&D Records, as well as determine which PMFs recorded as disposed on ATF Form 4473, were those recorded as disposed in the A&D Record. [31] Likewise, it will be difficult for licensees and ATF to accurately determine which PMFs were stolen or lost from inventory, and for police to locate stolen PMFs in the business inventories of pawnbrokers, [32] or to return any recovered stolen or lost PMFs to their rightful owners.

Not only does the inability to distinguish between unmarked firearms ▯ make it extremely difficult for law enforcement to trace PMFs involved in crime, it also makes it more difficult for Federal, State, and local law enforcement to identify and prosecute illegal firearms traffickers who are often tied to violent criminals and armed narcotics traffickers. [33] The ATF Form 4473 is the primary evidence used to prosecute straw purchasers who buy firearms from a Federal firearms licensee on behalf of prohibited persons, such as felons, and other persons who could use them to commit a violent crime. The form is typically the key evidence that the straw purchaser who bought the firearm (and who can pass a background check) made a false statement to the Federal firearms licensee concerning the identity of the actual purchaser when acquiring that firearm, in violation of 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?type=usc&year=mostrecent&link-type=html)(a)(6) and 924(a)(1)(A), or State law. [34] But as unmarked and difficult-to-trace PMFs proliferate throughout the marketplace, it is likely to become increasingly difficult to prove that firearms acquired under false pretenses on a Form 4473 were the ones found in the hands of the true purchaser—and thus more difficult to prosecute straw purchasers for making false statements. [35] This assumes, of course, that the PMF involved in the crime could even be traced to the Federal firearms licensee, or that the correct Form 4473 could be located. Likewise, the absence of identifying firearm information on multiple sales forms and theft/loss reports makes it more difficult for ATF to identify firearms traffickers and thieves. [36]

▯ Start Printed Page 27725

Although clarifying the definition of "frame or receiver" in this rule would help the firearms industry and the public understand which part of a complete weapon is the regulated "frame or receiver," and more commercially manufactured frames or receivers are likely to be marked by licensed manufacturers as a result, PMFs are increasingly being made or 3D printed at home without any identifying marks, recordkeeping, or background checks. In turn, these firearms are progressively finding their way to licensees who may wish to acquire them so they can advertise and market them broadly, or who may repair, customize,

or accept them as security in pawn for a loan. Rulemaking is therefore necessary to ensure that PMFs are not unlawfully manufactured for sale to licensees who may wish to acquire them for resale, or accept them as security in pawn for a loan, as this would undermine the important public safety goals of the GCA to reduce violent crime, which includes assisting State and local law enforcement in their efforts to control the traffic of firearms within their borders.[37] Indeed, several States and municipalities have banned or severely restricted unserialized or 3D printed firearms.[38]

## II. Proposed Rule

Due to judicial developments as well as continued technological advancements in firearms manufacturing, maintaining the current definitions negatively affects both public safety and the regulated firearms industry. For these reasons, the Department proposes amending ATF's regulations to clarify the definition of "firearm" and to provide a more comprehensive definition of "frame or receiver" so that those definitions more accurately reflect firearm configurations not explicitly captured under the existing definitions in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) and 479.11. Further, this NPRM proposes new terms and definitions to take into account technological developments and modern terminology in the firearms industry, as well as amendments to the marking and recordkeeping requirements that would be necessary to implement these definitions. However, nothing in this rule would restrict persons not otherwise prohibited from possessing firearms from making their own firearms at home without markings solely for personal use (not for sale or distribution) in accordance with Federal, State, and local law. Also, while licensed manufacturers who sell or distribute firearms to law enforcement agencies would be subject to this rule, law enforcement agencies (not engaged in the business of manufacturing firearms for sale or distribution) would be excluded from this rule, including associated amendments to the marking and recordkeeping requirements necessary to implement its definitions.🗋

🗋 Start Printed Page 27726

## A. Definition of "Firearm"

Under the GCA and implementing regulations, the term "firearm" includes:

"(A) any weapon (including a starter gun) which *will or is designed to* or *may readily be converted* to expel a projectile by the action of an explosive." 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(3); 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) (emphasis added). Although weapon parts kits in their unassembled, incomplete, and/or unfinished state or configuration generally will not expel a projectile by the action of an explosive at the time of sale or distribution, weapon parts kits that are "designed to" [39] or "may readily be converted" [40] to expel a projectile by the action of an explosive are "firearms" under the GCA.[41]

In recent years, individuals have been purchasing firearm parts kits with incomplete frames or receivers, commonly called "80% receivers," [42] either directly from manufacturers of the kits or retailers, without background checks or recordkeeping. Some of these parts kits contain most or all of the components (finished or unfinished) necessary to complete a functional weapon within a short period of time. Some of them include jigs, templates, instructions, drill bits, and tools that allow the purchaser to complete the weapon to a functional state with minimal effort, expertise, or equipment. Weapon parts kits such as these are "firearms" under the GCA because they are *designed to* or *may readily be converted* to expel a projectile by the action of an explosive.[43] Manufacturers of such parts kits must be licensed, abide by the marking and recordkeeping requirements, and pay Federal Firearms Excise Tax on their sales price.[44] Any Federal firearms licensee that sells such kits to unlicensed individuals would need to complete ATF Forms 4473, conduct NICS background checks, and abide by the recordkeeping requirements applicable to fully completed and assembled firearms.[45] Therefore, to reflect existing case law, this proposed rule would add a

sentence at the end of the definition of "firearm" in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) providing that "[t]he term shall include a weapon parts kit that is designed to or may readily be assembled, completed, converted, or restored to expel a projectile by the action of an explosive."

Nonetheless, this amendment is not intended to affect the classification of a weapon, including a weapon parts kit, in which each frame or receiver (as defined in this proposed rule) of such weapon is properly destroyed in accordance with ATF standards. Because such weapons have been completely destroyed or permanently redesigned not to expel a projectile by the action of an explosive, and cannot readily be converted to do so, ATF would not consider them as either "designed to" or "readily assembled, completed, converted, or restored to expel a projectile by the action of an explosive." To make this clear, this proposed rule would add another sentence to the end of the definition of "firearm" in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) to provide that "[t]he term shall not include a weapon, including a weapon parts kit, in which each part defined as a frame or receiver of such weapon is destroyed." (see Section II.B.5 of the preamble)

## B. Definition of "Frame or Receiver"

The proposed new regulatory definition of "frame or receiver" would be a multi-part definition added to 27 CFR 478.11 and 479.11 (referencing section 478.11). First, there would be a general definition of "frame or receiver" with non-exclusive examples that illustrate the definition. This would be followed by supplements that further explain the meaning of the term "frame or receiver" for certain firearm designs and configurations, as follows: (a) Firearm muffler or silencer frame or receiver; (b) split or modular frame or receiver, also followed by examples of the frames or receivers for common firearm designs that are distinguishable because of differences in firing cycle, method of operation, or physical design characteristics; (c) partially complete, disassembled, or inoperable frame or receiver; and (d) destroyed frame or receiver. Although the new definition would more broadly define the term "frame or receiver" than the current definition, it is not intended to alter any prior determinations by ATF of what it considers the frame or receiver of a particular split/modular weapon. ATF would also continue to consider the same factors when classifying firearms (see Section I.A of the preamble).

⎕ Start Printed Page 27727

## 1. GENERAL DEFINITION OF "FRAME OR RECEIVER"

ATF proposes to replace the respective regulatory definitions of "firearm frame or receiver" and "frame or receiver" in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) and 479.11 because they too narrowly limit the definition of receiver with respect to most current firearms and have led to erroneous district court decisions. Indeed, most firearms currently in circulation in the United States do not have a specific part that expressly falls within the current "frame or receiver" regulatory definitions. Most concerning is that the interpretation of these definitions by some courts, relying on the current regulations, would make it easier to obtain the majority of existing firearms, including some of the most advanced semiautomatic weapons, without complying with the requirements of the GCA, and make it far more difficult to trace those firearms after a crime. Should the current definition remain in place and courts continue to interpret it such that no part or parts of most firearms are defined as the frame or receiver, these unserialized parts, easily purchased and assembled to create functioning firearms, would be untraceable, thereby putting the public at risk. While a "frame or receiver" is clearly within the statutory definition of what constitutes a "firearm" under the GCA, 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(3)(B), clarifying that this term includes how most modern-day firearms operate would help ensure that the regulatory definition of "frame or receiver" will not be misinterpreted by the courts, the firearms industry, or the public at large to mean that most firearms in circulation have no part identifiable as a frame or receiver.

As a threshold matter, the new definition makes clear that a "frame or receiver" must be visible to the exterior when the complete weapon is assembled so that licensees can quickly record the identifying markings, and law enforcement officers who recover the weapon can easily see the identifying markings for tracing purposes. Nonetheless, as explained in Section II.B.3 of the preamble, an internal frame or chassis at least partially exposed to the exterior to allow identification may be determined by ATF to be the frame or receiver of a split or modular frame or receiver.

Next, the new definition more broadly describes a "frame or receiver" as one that provides housing or a structure designed to hold or integrate any fire control component. Unlike the prior definitions of "frame or receiver" that were rigidly tied to three specific fire control components (*i.e.*, those necessary for the firearm to initiate or complete the firing sequence), the new regulatory definition is intended to be general enough to encompass changes in technology and parts terminology. With respect to the fire control components housed by the frame or receiver, the definition would include, at a minimum, any housing or holding structure for a hammer, bolt, bolt carrier, breechblock, cylinder, trigger mechanism, firing pin, striker, or slide rails. However, the definition is not limited to those particular fire control components.[46] There may be future changes in firearms technology or terminology resulting in housings or holding structures for new or different components that initiate, complete, or continue the firing sequence of weapons that expel a projectile by the action of an explosive. For further clarity, the definition would then give four nonexclusive examples with illustrations of common single-framed firearms: (1) Hinged or single frame revolver (structure to hold the trigger, hammer, and cylinder); (2) bolt-action rifle (structure to hold the bolt and firing pin, and attach the trigger mechanism); (3) break action, lever action, or pump action rifle or shotgun (housing for the bolt and firing pin, or a structure designed to integrate the breechblock); and (4) semiautomatic firearm or machinegun with a single receiver housing all fire control components (housing for the hammer, bolt, trigger mechanism, and firing pin, *e.g.*, AK-type firearms).

Finally, the definition would make clear to persons who may acquire or possess a part now defined as a "frame or receiver" that is identified with a serial number that they must presume, absent an official determination by ATF or other reliable evidence to the contrary, that the part is a firearm "frame or receiver" without further guidance.

## 2. FIREARM MUFFLER OR SILENCER FRAME OR RECEIVER

Under the GCA, licensed manufacturers and importers must identify the frame or receiver of each firearm, including a firearm muffler or silencer, with a serial number in accordance with regulations. 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(3)(C), 923(i). The NFA requires firearm manufacturers, importers, and makers to identify each firearm, including a firearm muffler or silencer, with a serial number and such other identification as may be prescribed by regulations. 26 U.S.C. 5842 (https://www.govinfo.gov/link/uscode/26/5842? type=usc&year=mostrecent&link-type=html)(a); *id.* at 5845(a)(7). Because under the NFA each individual part of a firearm muffler or silencer is a "firearm" [47] that must be registered in the National Firearms Registration and Transfer Record ("NFRTR"), the regulations currently assume that every part defined as a silencer must be marked in order to be registered, and expressly require that they be marked whenever sold, shipped, or otherwise disposed even though they may be installed by a qualified licensee within a complete muffler or silencer device.[48]

However, this result has caused confusion and concern among many silencer manufacturers because some silencer parts defined as "silencers," such as baffles, are difficult to mark, and make little sense to mark for tracing purposes when the outer tube or ☐ housing of the complete device is marked and registered. Not only

is it difficult for manufacturers to apply identifying markings, there is also the administrative difficulty in timely filing and processing numerous ATF Forms 2, Notice of Firearms Manufactured or Imported upon manufacture of each part, and ATF Forms 3, Application for Tax-Exempt Transfer of Firearm and Registration to Special Occupational Taxpayer upon sale or other disposition of each part to another qualified licensee.

For these reasons, ATF is proposing a number of amendments to clarify how and when firearm muffler or silencer parts must be marked and registered in the NFRTR. Among other changes (see Section II.H.9 of the preamble, below), this rule defines the term "frame or receiver" as it applies to a "firearm muffler or silencer frame or receiver" and adds the term "complete muffler or silencer device" (see Section II.D of the preamble). Under the NPRM, the term "frame or receiver" means, "in the case of a firearm muffler or firearm silencer, a part of the firearm that, when the complete device is assembled, is visible from the exterior and provides housing or a structure, such as an outer tube or modular piece, designed to hold or integrate one or more essential internal components of the device, including any of the following: baffles, baffling material, or expansion chamber." These new definitions would clarify for manufacturers and makers of complete muffler or silencer devices that they need only mark each part (or specific part(s) previously determined by the Director) of the device defined as a "frame or receiver" under this rule. However, individual muffler or silencer parts must be marked if they are disposed of separately from a complete device unless transferred by qualified manufacturers to other qualified licensees for the manufacture or repair of complete devices (see Section II.H.9 of the preamble).[49]

ATF anticipates that, under this supplemental definition, the outer tube of a complete muffler or silencer device would be considered the frame or receiver with respect to most commercial silencer designs currently on the market. This is because the outer tube would be the only housing for essential internal components (*e.g.,* baffles or baffling material) of the complete device. Marking the outer tube, as distinguished from a smaller non-housing component like an end cap that can be damaged upon expulsion of projectiles, best preserves the ability of law enforcement to trace the silencer device if used in crime, and is consistent with recommendations ATF has received from the firearms industry.[50]

Nonetheless, like the definition of "frame or receiver" for projectile weapons, this sub-definition would be flexible enough to encompass changes in technology and parts terminology. This is because any housing or structure designed to hold or integrate an essential internal component of the muffler or silencer device would meet the definition. While the proposed definition gives examples of internal components that manufacturers must consider as essential, *e.g.,* baffles, baffling material, or expansion chamber, it is not limited to those particular components.[51]

## 3. SPLIT OR MODULAR FRAME OR RECEIVER

This second supplement explains that ATF may determine "in the case of a firearm with more than one part that provides housing or a structure designed to hold or integrate one or more fire control or essential components" whether one or more specific part(s) of a weapon is the frame or receiver, which may include an internal frame or chassis at least partially exposed to the exterior to allow identification. It then sets forth the factors ATF considers in making this determination: "(a) Which component the manufacturer intended to be the frame or receiver; (b) which component the firearms industry commonly considers to be the frame or receiver with respect to the same or similar firearms; (c) how the component fits within the overall design of the firearm when assembled; (d) the design and function of the fire control components to be housed or integrated; (e) whether the component may permanently, conspicuously, and legibly be identified with a serial number and other markings in a manner not susceptible of being readily obliterated, altered, or

removed; (f) whether classifying the particular component is consistent with the legislative intent of the Act and this part; and (g) whether classifying the component as the frame or receiver is consistent with the Director's prior classifications." No single factor is controlling. It would further make clear that "[f]rames or receivers of different weapons that are combined to create a similar weapon each retain their respective classifications as frames or receivers provided they retain their original design and configuration."

This supplement to the general definition addresses one of the core problems of the current definition of "firearm frame or receiver;" namely, that a majority of firearms now use a split or modular design in which more than one part houses a different fire control component and/or incorporates a striker instead of a hammer. It would make clear that even though a firearm, including a silencer, may have more than one part that falls within the definition of "frame or receiver," ATF may classify a specific part or parts to be the "frame or receiver" of a particular weapon. For this reason, manufacturers may wish to submit samples to ATF for classification of one or more particular components as the frame or receiver so that they need only mark a specific part or parts of a weapon, rather than all qualifying parts (see Section II.H.10 of the preamble) or obtain a marking variance (see Section II.H.6 of the preamble). However, this supplemental definition would also make clear that ATF would not classify an internal frame or chassis as a "frame or receiver" unless it is at least partially exposed to the exterior to allow identification so that licensees accepting them into inventory can quickly record the identifying markings, and law enforcement officers who recover the weapon can easily see the identifying markings for tracing purposes.[52]

One important goal of this rule is to ensure that it does not affect existing ATF classifications of firearms that specify a single component as the frame or receiver. Application of the rule, as proposed, would not alter these prior ☐ ATF classifications. To provide more clarity, this supplement to the definition would include a nonexclusive list of common weapons with a split/multi-piece frame or receiver configuration for which ATF has previously determined a specific part to be the frame or receiver. If a manufacturer produces or an importer imports a firearm falling within one of these designs as they exist as of the date of publication of a final rule, it can refer to this list to know which part is the frame or receiver. The manufacturer or importer can then mark without needing to ask ATF for a classification. The nonexclusive list identifies the frame or receiver for the following firearms: (i) Colt 1911-type, Beretta/Browning/FN Herstal/Heckler & Koch/Ruger/Sig Sauer/Smith & Wesson/Taurus hammer fired semiautomatic pistols; (ii) Glock-type striker fired semiautomatic pistols; (iii) Sig Sauer P320-type semiautomatic pistols; (iv) certain locking block rail system semiautomatic pistols; (v) AR-15-type and Beretta AR-70-type firearms; (vi) Steyr AUG-type firearms; (vii) Thompson M1A1-type machineguns and semiautomatic variants, and L1A1, FN FAL, FN FNC, MP 38, MP 40, and SIG 550 type firearms, and HK-type machineguns and semiautomatic variants; (viii) Vickers/Maxim, Browning 1919, and M2-type machineguns, and box-type machineguns and semiautomatic variants thereof; and (ix) Sten, Sterling, and Kel-tec Sub-2000-type firearms. However, if there is a present or future split or modular design for a firearm that is not comparable to an existing classification, then the definition of "frame or receiver" would advise that more than one part is the frame or receiver subject to marking and other requirements, unless a specific classification or marking variance is obtained from ATF, as described above.

☐ Start Printed Page 27729

## 4. PARTIALLY COMPLETE, DISASSEMBLED, OR INOPERABLE FRAME OR RECEIVER

This third supplement would define "frame or receiver" to include "in the case of a frame or receiver that is partially complete, disassembled, or inoperable, a frame or receiver that has reached a stage in manufacture where it may readily be completed, assembled, converted, or restored to a functional state." To determine this status, "the Director may consider any available instructions, guides, templates, jigs, equipment, tools, or

marketing materials." For clarification, "partially complete" for purposes of this definition "means a forging, casting, printing, extrusion, machined body, or similar article that has reached a stage in manufacture where it is clearly identifiable as an unfinished component part of a weapon."

This supplement addresses another core challenge of the existing, definition of firearm "frame or receiver;" namely, that it does not address the question when an object becomes a frame or receiver. While the GCA and implementing regulations define a "firearm" to include the "frame or receiver," neither delineates when a frame or receiver is created. The crucial inquiry, then, is the point at which an unregulated piece of metal, plastic, or other material becomes a regulated item under Federal law. ATF has long held that a piece of metal, plastic, or other material becomes a frame or receiver when it has reached a critical stage of manufacture. This is the point at which a substantial step has been taken, or a critical line crossed, so that the item in question may be so classified under the law. This "critical stage of manufacture" is when the article becomes sufficiently complete to function as a frame or receiver, or may readily be completed, assembled, converted, or restored to accept the parts it is intended to house or hold.[53]

Clarifying this issue is needed to deter the increased sale or distribution of unlicensed and unregulated partially complete or unassembled frames or receivers often sold within parts kits that can readily be completed or assembled to a functional state.[54] Many kits that include unfinished frame or receivers have been sold by nonlicensees who were not required to run a background check or maintain transaction records. Accordingly, prohibited persons have easily obtained them.[55] Moreover, without any markings, they are nearly impossible to trace. Although this addition is intended to capture when an item becomes a frame or receiver that is regulated irrespective of the type of technology used to complete the assembly, frame or receiver molds that can accept metal or polymer, unformed blocks of metal, and other articles only in a primordial state would not—without more—be considered a "partially complete" frame or receiver. However, when a frame or receiver is broken or has been disassembled into pieces that can readily be made into a frame or receiver, or is a partially complete frame or receiver forging, casting, or additive printing [56] that has reached a stage in manufacture where it can readily be made into a functional frame or receiver, that article would be a "frame or receiver" under the GCA.

**5. DESTROYED FRAME OR RECEIVER**

This fourth supplement would exclude from the definition of "frame or receiver" any frame or receiver that is destroyed. The supplement describes what it means to be a "destroyed" frame or receiver: One permanently altered not to provide housing or a structure that may hold or integrate any fire control or essential internal component, and that may not readily be assembled, completed, converted, or restored to a functional state. This new definition then would set forth nonexclusive acceptable methods of destruction, which have been provided by ATF in past guidance.[57]

 

⬜ Start Printed
Page 27730

**C. Definition of "Readily"**

To provide guidance on how the term "readily" is used to classify firearms, including frame or receiver parts kits or weapon parts kits sold with incomplete or unassembled frames or receivers, the NPRM adds this term to 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) and 479.11 and defined as "a process that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speedy, or easy process." It would further list factors relevant in making this determining to include: (a) Time, *i.e.,* how long it takes to finish the process; (b) ease, *i.e.,* how difficult it is to do so; (c) expertise, *i.e.,* what knowledge and skills are required; (d) equipment, *i.e.,* what tools are required; (e) availability, *i.e.,* whether additional parts are

required, and how easily they can be obtained; (f) expense, i.e., how much it costs; (g) scope, i.e., the extent to which the subject of the process must be changed to finish it; and (h) feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction. This definition and factors considered in determining whether a weapon, including a weapon parts kit, or unfinished or damaged frame or receiver may readily be assembled, completed, converted, or restored to function are based on case law interpreting the terms "may readily be converted to expel a projectile" in 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(3)(A) and "can be readily restored to shoot" in 26 U.S.C. 5845 (https://www.govinfo.gov/link/uscode/26/5845? type=usc&year=mostrecent&link-type=html)(b).[58] Thus, defining the term "readily" is necessary to provide further clarity in determining when incomplete weapons or configurations of parts become a "firearm" regulated under the GCA and NFA.

## D. Definitions of "Complete Weapon" and "Complete Muffler or Silencer Device"

This proposed rule would add definitions for "complete weapon" and "complete muffler or silencer device" to 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) and 479.11. A "complete weapon" would be defined as "a firearm other than a firearm muffler or firearm silencer that contains all component parts necessary to function as designed whether or not assembled or operable." Likewise, a "complete muffler or silencer device" would be defined as "a firearm muffler or firearm silencer that contains all of the component parts necessary to function as designed whether or not assembled or operable." These definitions are needed to explain when a frame or receiver of a firearm, including a firearm muffler or silencer, as the case may be, must be marked.

## E. Definition of "Privately Made Firearm"

The NPRM proposes adding a definition of "privately made firearm" to 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) to mean "[a] firearm, including a frame or receiver, assembled or otherwise produced by a person other than a licensed manufacturer, and without a serial number or other identifying markings placed by a licensed manufacturer at the time the firearm was produced." The term would not include a firearm identified and registered in the NFRTR pursuant to chapter 53, title 26, United States Code, or any firearm made before October 22, 1968 (unless remanufactured after that date). This proposed definition explains that PMFs are those firearms that were made by nonlicensees without the markings required by this part, and excludes those already marked and registered in the NFRTR, and any firearm made before enactment of the GCA which, unlike the repealed law it replaced, required all firearms to be marked under federal law.[59] The term "made" is incorporated within the term "privately made firearm" rather than "manufacture" to distinguish between firearms manufactured (or "made") by private individuals without a license and those manufactured by persons licensed to engage in the business of manufacturing firearms.[60]

## F. Definition of "Importer's or Manufacturer's Serial Number"

The proposed rule would define the term "importer's or manufacturer's serial number" in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) as: "[t]he identification number, licensee name, licensee city or state, or license number placed by a licensee on a firearm frame or receiver in accordance with this part. The term shall include any such identification on a privately made firearm, or an ATF issued serial number." Because "privately made firearms" are manufactured by someone other than a licensed manufacturer, the serial number that incorporates the abbreviated Federal firearms license ("FFL") number placed by a licensee on a PMF under this rule is the "importer's or manufacturer's serial number." This definition would help ensure that the serial numbers and other markings necessary to ensure tracing, including those placed

by a licensee on a "privately made firearm" or marked with an ATF-issued serial number, are to include imported firearms, are considered the "importer's or manufacturer's serial number" protected by 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?type=usc&year=mostrecent&link-type=html)(k), which prohibits their removal, obliteration, or alteration.[62]

🗋

## G. Definition of "Gunsmith" [63]

To provide greater access to professional marking, this proposed rule would clarify that the meaning of the term "gunsmith" includes persons who engage in the business of identifying firearms for nonlicensees so that gunsmiths may become licensed as dealer-gunsmiths solely to provide professional PMF marking services. Specifically, this proposed rule would amend the definition of "engaged in the business" as it applies to a "gunsmith" in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) to clarify the meaning of that term as someone "who, as a service performed on existing firearms not for sale or distribution by a licensee, devotes time, attention, and labor to repairing or customizing firearms, making or fitting special barrels, stocks, or trigger mechanisms to firearms, or identifying firearms in accordance with this chapter, as a regular course of trade or business with the principal objective of livelihood or profit, but such term shall not include a person who occasionally repairs or customizes firearms, or occasionally makes or fits special barrels, stocks, or trigger mechanisms to firearms."

This amendment would make clear that businesses that routinely repair or customize existing firearms, make or fit special barrels, stocks, or trigger mechanisms, or mark firearms as a service performed on firearms not for sale or distribution by a licensee, may be licensed as dealer-gunsmiths rather than as manufacturers.[64] Under this rule, PMFs would first need to be recorded by the dealer-gunsmith as an acquisition in the licensee's A&D Records upon receipt from the private owner (whether or not the licensee keeps the PMF overnight), and once marked, the licensee would update the acquisition entry with the identifying information, and then record its return as a disposition to the private owner. This would ensure that the PMF, if ever found by police at a crime scene, can be traced. However, no ATF Form 4473 or NICS background check would be required upon return of the marked firearm to the person from whom it was received, pursuant to 27 CFR 478.124 (/select-citation/2021/05/21/27-CFR-478.124)(a).

## H. Marking Requirements for Firearms

### 1. INFORMATION REQUIRED TO BE MARKED ON THE FRAME(S) OR RECEIVER(S)

To properly implement the new definitions, this proposed rule would amend 27 CFR 478.92 (/select-citation/2021/05/21/27-CFR-478.92)(a) and 479.102 to explain how and when markings must be applied on each part defined as a frame or receiver, particularly since there could be more than one part of a complete weapon, or complete muffler or silencer device, that is the frame or receiver (*i.e.*, when ATF has not identified specific part(s) as the frame or receiver). After publication of a final rule, each frame or receiver of a new firearm design or configuration manufactured or imported after the date of publication of the final rule would need to be marked with a serial number, and *either:* (a) The manufacturer's or importer's name (or recognized abbreviation), and city and State (or recognized abbreviation) where the manufacturer or importer maintains their place of business, or in the case of a maker of an NFA firearm, where the firearm was made; or (b) the manufacturer's or importer's name (or recognized abbreviation), and the serial number beginning with the licensee's abbreviated FFL number as a prefix, which is the first three and last five digits followed by a hyphen, and then followed by a number (which may incorporate letters and a hyphen) as a

suffix, *e.g.,* "12345678 [number]". The serial number (with or without the FFL prefix) identified on each part of a weapon defined as a frame or receiver must be the same number, but must not duplicate any serial number(s) placed by the licensee on any other firearm.

The additional information required to be marked on each frame or receiver (*i.e.,* name, city and state, or name and abbreviated serial number) would only apply to new designs or configurations of firearms manufactured or imported after publication of the rule. Licensed manufacturers and importers may continue to identify the additional information on firearms (other than PMFs) of the same design and configuration as they existed before [effective date of the rule] under the prior content rules, and any rules necessary to ensure such identification will remain effective for that purpose. This provision is intended to reduce production costs incurred by licensees.

Requiring Federal firearms licensees to mark in this manner on each part defined as a frame or receiver would make it possible for ATF to trace the firearm if the manufacturer's or importer's name, city, or state is marked on the slide or barrel, and the original components are later separated. At the same time, it would give an option for manufacturers and importers to avoid marking their city and state as currently required at §§ 478.92(a)(1)(ii)(D), (E) and 479.102(a)(1)(iv) and (v), or obtain a marking variance from this requirement, by allowing them to mark their abbreviated license number as a prefix to the serial number as an alternative because this information can be obtained by looking up the licensee's information. Except for silencer parts transferred by manufacturers to other qualified manufacturers and dealers for completion or repair of devices (see Section II.H.9 of the preamble), there would be no change to the existing requirement that each part defined as a machinegun or silencer that is disposed of separately and not part of a complete weapon or device be marked with all required information because individual machinegun conversion and silencer parts are "firearms" under the NFA that must be registered in the NFRTR. 26 U.S.C. 5841 (https://www.govinfo.gov/link/uscode/26/5841?type=usc&year=mostrecent&link-type=html)(a)(1); *id.* at 5845(a), (b). However, for frames or receivers, and individual machinegun conversion or silencer parts defined as "firearms" that are disposed of separately, the model designation and caliber or gauge may be omitted if it is unknown at the time the part is identified.▯

▯ Start Printed Page 27732

## 2. SIZE AND DEPTH OF MARKINGS

This proposed rule would not change the existing requirements for size and depth of markings in 27 CFR 478.92 (/select-citation/2021/05/21/27-CFR-478.92)(a)(1) and 479.102(a), but for sake of clarity, consolidates them into a standalone paragraph along with the existing method of measuring the size and depth of markings set forth in 27 CFR 478.92 (/select-citation/2021/05/21/27-CFR-478.92)(a)(5) and 479.102(b).

## 3. PERIOD OF TIME TO IDENTIFY FIREARMS

Neither the GCA nor the NFA explain at what point in the manufacturing process the required markings must be placed. In this regard, the proposed rule would make a distinction between the manufacture or making of a complete weapon or complete muffler or silencer device, and each part, including a replacement part, defined as a frame or receiver, machinegun, or firearm muffler or firearm silencer that is not a component part of a complete weapon or device at the time it is sold, shipped, or otherwise disposed. Complete weapons or complete muffler or silencer devices, as defined in this rule, would be allowed to be marked up to seven days from completion of the active manufacturing process for the weapon or device, or prior to disposition, whichever is sooner. Except for silencer parts produced by qualified manufacturers for transfer to other licensees to complete or repair silencer devices (see Section II.H.9 of the preamble), parts defined as a frame or receiver, machinegun, or firearm muffler or firearm silencer that are not component

parts of a complete weapon or device when disposed of would be allowed to be marked up to seven days following the date of completion of the active manufacturing process for the part, or prior to disposition, whichever is sooner. Adding this language would codify ATF Ruling 2012-1, and this ruling would become obsolete upon publication of the rule. As explained in that ruling, whether the end product is to become a complete weapon or device, or a frame or receiver to be disposed of separately, firearms that are actively awaiting materials, parts, or equipment repair to be completed are still considered to be actively in the manufacturing process.

## 4. MARKING OF PRIVATELY MADE FIREARMS

Because privately made firearms do not have the identifying markings required of commercially manufactured firearms, this rule proposes to amend 27 CFR 478.92 (/select-citation/2021/05/21/27-CFR-478.92) to require FFLs to mark, or supervise the marking of, the same serial number on each frame or receiver (as defined in this rule) of a weapon that begins with the FFL's abbreviated license number (first three and last five digits) as a prefix followed by a hyphen on any "privately made firearm" (as defined) that the licensee acquired (e.g., "12345678-[number]"). Unless previously identified by another licensee, PMFs acquired by licensees on or after the effective date of the rule would need to be marked in this manner within seven days of receipt or other acquisition (including from a personal collection), or before the date of disposition (including to a personal collection), whichever is sooner.[65] For PMFs acquired by licensees before the effective date of the rule, licensees would be required to mark or cause them to be marked by another licensee either within 60 days from that date, or before the date of final disposition (including to a personal collection), whichever is sooner. With respect to polymer firearms, including those that are produced using additive manufacturing (also known as "3D printing"), the method of marking would typically require the licensee to embed (or use pre-existing) metal serial number plates within the plastic to ensure they cannot be worn away during normal use.[66] Incorporation of this metal plate along with other metal components would also help ensure that the polymer firearm does not violate the Undetectable Firearms Act, 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?type=usc&year=mostrecent&link-type=html)(p), which prohibits the manufacture and possession of firearms that are not as detectable as the "Security Exemplar" that contains 3.7 ounces of material type 17-4 PH stainless steel.[67]

PMFs currently in inventory that a licensee chooses not to mark may also be destroyed or voluntarily turned in to law enforcement within the 60-day period. Also, this proposed rule would not require Federal firearms licensees to accept any PMFs, or to mark them themselves. Licensees would be able to refuse to accept PMFs, or arrange for private individuals to have them marked by another licensee before accepting them, provided they are properly marked in accordance with this proposed rule. To provide greater access to professional marking, as stated previously, this rule would clarify that the meaning of the term "gunsmith" includes persons who engage in the business of identifying firearms for nonlicensees so that gunsmiths may become licensed as dealer-gunsmiths solely to provide professional PMF marking services.

Consistent with the language and purpose of the GCA, this proposed provision is necessary to allow ATF to trace all firearms acquired and disposed of by licensees, prevent illicit firearms trafficking, and provide guidance to FFLs and the public with respect to PMF transactions with the licensed community. This provision is crucial in light of advances in technology that allow unlicensed persons easily to produce firearms at home from parts ordered online, or by using 3D printers or personally owned or leased equipment. Such privately made firearms have and will continue to make their way to the primary market in firearms throughout the licensed community.[68] At the same time, consistent with the intent of the GCA,[69] nothing in this rule would restrict persons not otherwise prohibited from possessing firearms from making

their own firearms at home without markings solely for personal use (not for sale or distribution) in accordance with Federal, State, and local law.[70] Persons should consult the laws and officials in their own States and localities to determine the lawfulness of PMFs.

🗋

## 5. MEANING OF MARKING TERMS

An additional amendment to 27 CFR 478.92 (/select-citation/2021/05/21/27-CFR-478.92) and 478.102 would clarify the meaning of the terms "legible" and "legibly" to ensure that "the identification markings use exclusively Roman letters (e.g., A, a, B, b, C, c) and Arabic numerals (e.g., 1, 2, 3), or solely Arabic numerals, and may include a hyphen," and that the terms "conspicuous" and "conspicuously" are understood to mean that "the identification markings are capable of being easily seen with normal handling of the firearm and unobstructed by other markings when the complete weapon is assembled." This would codify the meaning of those terms as explained in ATF Ruling 2002-6 ("legible"), and ATF's final rule at 66 FR 40599 (/citation/66-FR-40599) (Aug. 3, 2001) (referencing U.S. Customs Service regulations on the definition of "conspicuous").

## 6. ALTERNATE MEANS OR PERIOD OF IDENTIFICATION

This proposed rule would not alter the Director's ability to authorize other means of identification, or a "marking variance," for any part defined as a firearm (including a machinegun or silencer) upon receipt of a letter application or an Application for Alternate Means of Identification of Firearms (Marking Variance), ATF Form 3311.4, showing that such other identification is reasonable and does not hinder the effective administration of the regulations. The amendment would also allow ATF to grant a variance from the period in which to mark firearms.

## 7. DESTRUCTIVE DEVICE PERIOD OF IDENTIFICATION

Similar to other firearms, because the proposed rule would now specify the seven-day grace period in which to mark all completed firearms, including destructive devices, this rule would also allow ATF to grant a variance from this period. The marking requirements for destructive devices are otherwise unchanged.

## 8. ADOPTION OF IDENTIFYING MARKINGS

This rule proposes to authorize licensed manufacturers and importers to adopt an existing serial number, caliber/gauge, model, or other markings already identified on a firearm provided they legibly and conspicuously place, or cause to be placed, on each part (or part(s) previously determined by the Director) defined as a frame or receiver either: Their name (or recognized abbreviation), and city and State (or recognized abbreviation) where they maintain their place of business; or their name (or recognized abbreviation) and their abbreviated FFL number, which is the first three and last five digits followed by a hyphen, and then followed by the existing serial number (including any other abbreviated FFL prefix) as a suffix, e.g., "12345678-[serial number]," to ensure the traceability of the firearm. This language would supersede ATF Ruling 2013-3 as it applies to licensed manufacturers and importers, but the ruling would remain effective for makers of NFA firearms. This change would help avoid multiple markings on firearms that could be confusing to law enforcement and alleviate concerns of some manufacturers and importers regarding serial number duplication when firearms are remanufactured or reimported.

## 9. FIREARM MUFFLER OR SILENCER PARTS TRANSFERRED BETWEEN QUALIFIED LICENSEES

Licensed and qualified firearm muffler or silencer manufacturers routinely transfer small internal muffler or silencer components to each other to produce complete devices, and between qualified licensees when repairing existing devices. Because of the difficulties and expense of marking and registering small individual components used to commercially manufacture a complete muffler or silencer device with little law enforcement benefit, this proposed rule would allow qualified manufacturers to transfer parts defined as a firearm muffler or silencer to other qualified manufacturers without immediately identifying or registering them. Once the new device is complete with the part, the manufacturer would be required to identify and register the device in the manner and within the period specified in this rule for a complete device. Likewise, the proposed rule would allow qualified manufacturers to transfer muffler or silencer replacement parts to qualified manufacturers and dealers to repair existing devices already identified and registered in the NFRTR. Further, this rule would amend the definition of "transfer" to clarify that the temporary conveyance of a lawfully possessed NFA firearm, including a silencer, to a qualified manufacturer or dealer for the sole purpose of repair, identification, evaluation, research, testing, or calibration, and return to the same lawful possessor is not a "transfer" requiring additional identification or registration in the NFRTR. This change would be consistent with the definition of "transfer" in 26 U.S.C. 5845 (https://www.govinfo.gov/link/uscode/26/5845?type=usc&year=mostrecent&link-type=html)(j) because a temporary conveyance for these purposes is not a sale or other disposition.[71] These proposed rules are intended to reduce the practical and administrative problems of marking and registering silencer parts by the regulated industry, and avoid a potential resource burden on ATF to process numerous tax-exempt registration applications with little public safety benefit.[72]

## 10. VOLUNTARY CLASSIFICATION OF FIREARMS AND ARMOR PIERCING AMMUNITION

For many years, ATF has acted on voluntarily requests from persons, particularly manufacturers who are developing new products, by issuing determinations or "classifications" whether an item is a "firearm" or "armor piercing ammunition" as defined in the GCA or NFA. This helps regulated industry members and the public determine what laws and regulations may be applicable to the product, and any steps that they may need to take to be compliant with those laws and regulations. To clarify this process, this proposed rule would set forth the procedure and conditions by which persons may voluntarily submit such requests to ATF. Each request would be submitted in writing or on an ATF form executed under the penalties of perjury with a complete and accurate description of the item, the name and address of the manufacturer or importer thereof, and a sample of such item for examination along with any instructions, guides, templates, jigs, equipment, tools, or marketing materials that are made available to the purchaser or recipient of the item. Upon completion of the examination, ATF may return the sample to the person who made the request unless a determination is made that return of the ☐ sample would be or place the person in violation of law.

☐ Start Printed Page 27734

ATF's decision whether to classify an item voluntarily submitted is entirely discretionary. The proposed procedure would assist ATF more efficiently to determine the design and intent of the manufacturer of the item through its written statements, and by examining the objective design features of an actual sample along with any instructions, guides, templates, jigs, equipment, tools, or marketing materials that are made available to the purchaser or recipient of the item (though ATF is not limited to examining the items submitted to make its determination). The proposed rule would further codify ATF's policy not to evaluate a firearm accessory or attachment "unless it is installed on the firearm(s) in the configuration for which it is designed and intended to be used," and would further explain that "[a] determination made by the Director under this paragraph shall not be deemed by any person to be applicable to or authoritative with respect to any other sample, design, model, or configuration."

## I. Recordkeeping

This proposed rule would make minor amendments to 27 CFR 478.122 (/select-citation/2021/05/21/27-CFR-478.122), 478.123, 478.125, and 478.125a, pertaining to the acquisition and disposition records maintained by importers, manufacturers, and dealers. Due to the possibility that a firearm may have more than one frame or receiver as defined in this rule, and the changes to marking regulations, this rule would make technical amendments to these recordkeeping regulations to make certain words plural, (*e.g.*, manufacturer(s), importer(s), and serial number(s)) in the regulations and for the formatting of their records as applicable. Although under §§ 478.11 and 479.11 singular terms in the regulations must always be read to include the plural form, and vice versa, these changes are necessary to ensure that Federal firearms licensees record more than one manufacturer, importer, or serial number, if appropriate, when acquiring or disposing of firearms with multiple components marked as the frame or receiver, or that have been remanufactured or reimported by another licensee. This is consistent with prior ATF guidance to the firearms industry.[73] However, to reduce costs incurred by licensees, ATF anticipates that it would exercise its discretion not to enforce these format changes to the A&D Record until an existing paper record book is completed (*i.e.*, "closed out") or electronic record version updated in the normal course of business, provided the information is accurately recorded as required in the existing record.

Over the years, licensed importers and manufacturers have asked ATF to allow them to consolidate their records of importation or manufacture and acquisition and disposition of firearms, rather than maintaining separate records as required by 27 CFR 478.122 (/select-citation/2021/05/21/27-CFR-478.122)(d) and 478.123(d). Because separate records are also difficult for ATF to inspect, this rule would amend §§ 478.122 and 478.123 to require licensed importers and manufacturers to consolidate their records of importation, manufacture, or other acquisition, and their sale or other disposition in a format containing the applicable columns specified in a table included in § 478.122(b). The columns may be in a different order than the specified format provided they contain all required information. These changes would supersede ATF Rulings 2011-1 and 2016-3, and those rulings would become obsolete upon publication of a final rule.

This rule would also make minor clarifying edits to the format of the Firearms Acquisition and Disposition Record in § 478.125(e). The column titled "Name and address or name and license No." would be retitled as "Name and address of nonlicensee; or if licensee, name and License No." In addition, the column titled "Address or License No. if licensee, or Form 4473 Serial No. if Forms 4473 filed numerically" would be retitled "Address of nonlicensee; License No. of licensee; or Form 4473 Serial No. if such forms filed numerically." This change would make clear that both the name and license number (not the address) of a licensee from whom firearms are received and to whom they are disposed are recorded in the A&D Record. However, to reduce costs incurred by licensees, ATF anticipates that it would exercise its discretion not to enforce these format changes to the A&D Record until an existing paper record book is completed (*i.e.*, "closed out") or electronic record version updated in the normal course of business, provided the information is accurately recorded as required in the existing record.

The proposed changes to § 478.125 would also include a minor amendment to paragraph (f) to make it clear that in the event the licensee records a duplicate entry with the same firearm and acquisition information, whether to close out an old record book or for any other reason, the licensee must record a reference to the date and location of the subsequent entry (*e.g.*, date of new entry, book name/number, page number, and line number) as the disposition. This change is needed to ensure that acquisition records are closed out when firearms are no longer in inventory.[74] This would resolve a significant problem that ATF Industry Operations Investigators have when trying to reconcile the inventory of a Federal firearms licensee, and that

Federal firearms licensees have when timely responding to trace requests, particularly when old A&D
Records are "closed out" and stored, which, under this proposed rule, could be in a separate warehouse
depending on their age (see Section II.J of the preamble).

## 2. FIREARMS TRANSACTION RECORDS

Some technical amendments would be needed at 27 CFR 478.124 (/select-citation/2021/05/21/27-CFR-
478.124) pertaining to information recorded on the ATF Form 4473. Like changes to the recordkeeping
regulations, these amendments would make certain words plural, (e.g., manufacturer(s), importer(s), and
serial number(s)) to ensure that the Federal firearms licensee is recording more than one manufacturer,
importer, and serial number, if appropriate, on Forms 4473. In addition, the proposed changes to § 478.124
would include a minor technical amendment to paragraph (f) by removing a phrase that indicates that a
Federal firearms licensee must fill out the firearm description information only after filling out the
information about the transferee. Making this deletion would codify ATF Procedure 2020-1, which sets forth
an alternative method of complying with § 478.124(f) for non-over-the-counter firearm transactions. ATF
recently issued that procedure in light of changes to ATF Form 4473 (May 2020), which now requires
completion of the form in an order different from that provided in § 478.124(f).

## 3. RECORDKEEPING FOR PRIVATELY MADE FIREARMS

Minor changes to the above regulations regarding recordkeeping by licensees would also be needed to
account for any voluntary receipts or other acquisitions (including from a personal collection) of privately
made firearms, and corresponding dispositions (including to a personal collection). Since PMFs are not
commercially manufactured, if a PMF were received or otherwise acquired by a licensee or disposed of, or
imported, the abbreviation "PMF" would be recorded as the manufacturer in the appropriate column on a
licensee's acquisition and disposition record, ATF Form 4473, or import application, as well as the PMF
serial number beginning with the abbreviated FFL number in the serial number column. For PMFs received
prior to the effective date of a final rule that are to be identified by the licensee in accordance with § 478.92,
or by another licensee at the licensee's request, the licensee would be required to first record the firearm as
an acquisition in the licensee's A&D Records upon receipt from the private owner (whether or not the
licensee keeps the PMF overnight). Once marked, the licensee would update the acquisition entry with the
identifying information, and then record its return as a disposition to the private owner. However, to reduce
costs incurred by licensees, ATF anticipates that it would exercise its discretion not to enforce a title format
change to the A&D Record to add "and/or PMF" in the manufacturer column until an existing paper record
book is completed (i.e., "closed out") or electronic record version updated in the normal course of business,
provided each PMF received is accurately recorded as a "PMF" in the manufacturer column.

☐ Start Printed
Page 27735

## 4. NFA FORMS UPDATE

Minor technical amendments would also be needed in 27 CFR 479.62 (/select-citation/2021/05/21/27-CFR-
479.62), 479.84, 479.88, 479.90, and 479.141, pertaining to NFA Form 1 (Application to Make), NFA Form 4
(Application to Transfer), NFA Form 3 (Tax Exempt Transfers—SOTs), NFA Form 5 (Tax Exempt Transfers
—Governmental Entities), and the Stolen or Lost Firearms report, respectively. Due to the new definitions
and changes to marking regulations, the technical amendments here would make certain words plural (e.g.,
manufacturer(s), importer(s), serial number(s)) in the regulations as applicable. Although under §§ 478.11
and 479.11 singular terms in the regulations must always be read to include the plural form, and vice versa,
these changes are necessary to ensure that more than one name, manufacturer, importer, or serial number, if
appropriate, is recorded when completing the NFA forms.

## 5. IMPORTATION FORMS UPDATE

Minor technical amendments would also be needed in 27 CFR 447.42 (/select-citation/2021/05/21/27-CFR-447.42), 447.45, 478.112, 478.113, 478.114, and 479.112, pertaining to the importation of firearms. Again, due to the new definition and changes to marking regulations, the technical amendments here would make certain words plural (*e.g.*, manufacturer(s), country or countries of manufacture, and serial number(s)) in the regulations as applicable. Although under §§ 478.11 and 479.11 singular terms in the regulations must always be read to include the plural form, and vice versa, these changes are necessary to ensure that more than one name, manufacturer, country, importer, or serial number, if appropriate, is recorded when completing importation forms.

## J. Record Retention

This rule also proposes to amend 27 CFR 478.129 (/select-citation/2021/05/21/27-CFR-478.129) to remove language stating that FFL dealers and collectors need only keep A&D Records and ATF Forms 4473 for up to 20 years following the date of sale or disposition of the firearm. The proposed changes would require Federal firearms licensees to retain all records until business or licensed activity is discontinued, either on paper or in an electronic format approved by the Director,[75] at the business or collection premises readily accessible for inspection. There would also be an amendment to 27 CFR 478.50 (/select-citation/2021/05/21/27-CFR-478.50)(a) to allow all licensees, including manufacturers and importers, to store paper records and forms with no open disposition entries and with no dispositions recorded within 20 years at a separate warehouse, which would be considered part of the business premises for this purpose and subject to inspection.

In view of advancements in electronic scanning and storage technology, and ATF's acceptance of electronic recordkeeping, these amendments would reverse a 1985 rulemaking allowing non-manufacturer/importer Federal firearms licensees to destroy their records after 20 years.[76] The durability and longevity of firearms means that they are often in circulation for more than 20 years, while the cost of storing firearm transaction records has decreased dramatically through electronic recordkeeping. The proposed amendments would enhance public safety by ensuring that records of active licensees will be available for tracing purposes. ATF has encountered some firearms retailers who have destroyed large numbers of records more than 20 years old so that they would no longer need to be stored physically. This resulted in some traces of firearms involved in crimes to be returned incomplete for lack of records. This provision is also essential if PMFs involved in crime are marked and traced directly to licensed dealers who, unlike licensed manufacturers and importers, are not presently required to maintain permanent records.

## III. Statutory and Executive Order Review

### A. Executive Orders 12866 and 13563

Executive Order 12866 (Regulatory Planning and Review) directs agencies to assess the costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic benefits, environmental benefits, public health and safety effects, distributive impacts, and equity). Executive Order 13563 (/executive-order/13563) (Improving Regulation and Regulatory Review) emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility.

The Office of Management and Budget (OMB) has determined that while this proposed rule is not economically significant, it is a "significant regulatory action" under section 3(f)(4) of Executive Order 12866 because this proposed rule raises novel legal or policy issues arising out of legal mandates. Accordingly, the rule has been reviewed by OMB.

This proposed rule would update the new definition of "frame or receiver," among other items. Table 1 provides a summary of the provisions of this proposed rule, along with the estimated affected population, costs, and benefits.

Table 1—Summary of Affected Population, Costs, and Benefits

| Category | NPRM |
|---|---|
| Applicability | • New Definition of Receiver. |
| | • Update Marking Requirements. |
| | • New Gunsmithing Definition. |
| | • Update Record Retention. |
| | • Other Technical Amendments. |
| Affected Population | • 113,204 FFLs (Record Retention). |
| | • Unknown number of FFLs manufacturers and importers (Definition of Receiver). |
| | • 35 Non-FFL manufacturers (Definition of Receiver). |
| | • 6,044 FFL retailers (PMFs). |
| | • 36 Non-FFL retailers (PMFs). |
| | • Unknown number of Individual Owners. |
| Total Costs to Industry, Public, and Government (7% Discount Rate) | $1.1 million; $149,995 7% annualized. |
| Benefits (7% Discount Rate) | N/A. |
| Benefits (Qualitative) | • Provides clarity to courts on what constitutes a firearm frame or receiver. |
| | • Applies to new technology. |
| | • Makes consistent marking requirements. |
| | • Eases certain marking requirements. |
| | • Increases tracing of crime scene firearms to prosecute criminals. |

## 1. NEW DEFINITION OF FIREARM FRAME OR RECEIVER

The proposed definition of this term would maintain current classifications and current marking requirements of firearm frames or receivers, except that the licensed manufacturer or importer must mark on new designs or configurations either: Their name (or recognized abbreviation), and city and State (or recognized abbreviation) where they maintain their place of business; or their name (or recognized abbreviation) and their abbreviated FFL number, on each part defined as a frame or receiver, along with the serial number. To ensure traceability if the parts are separated, there would no longer be an option *only* to mark the FFL's name, city, and state on the slide or barrel. More specifically—

- The proposed definitions would take into account the fact that modern firearms do not house all the components as defined in the current definition. These definitions account for firearms such as split frames or multi-piece firearms;

- The proposed definition would recognize the current classifications of a firearm "frame or receiver." It is intended to encompass the majority, if not all, of existing regulated firearms, and no new marking

requirements would be required for these existing designs and configurations.

- After this proposed rule is finalized, markings on new designs or configurations of firearms manufactured or imported may be accomplished by marking each frame or receiver with the licensee's name, city, and state, and serial number, or with the licensee's name and abbreviated license number prefix and number (serial number) in the manner prescribed by existing marking requirements;

- Markings would need to be accomplished within 7 days of completion of the active manufacturing process for the complete weapon (or frame or receiver of such weapon if not being sold as a complete weapon); and

- The proposed rule would require acquisition and disposition record changes to accommodate recording multiple frames or receivers that have different serial numbers if the original frames or receivers (with the same serial number) become separated and are reassembled with frames or receivers bearing different serial numbers.

ATF believes that the majority of the industry currently complies with these requirements, so the cost would be minimal. While the new definitions would mostly affect new designs or configurations of firearms, manufacturers would still be able to receive a determination or a variance on the design from ATF; therefore, they may not experience an additional cost or burden. For more details, please refer to Chapter 2 of the Regulatory Impact Analysis.[77]

## 2. PARTIALLY COMPLETE, DISASSEMBLED, OR INOPERABLE FIREARM KITS

This section addresses non-FFL manufacturers who manufacture partially complete, disassembled, or inoperable frame or receiver kits, to include both firearm parts kits that allow a person to make only a frame or receiver, and those kits that allow a person to make a complete weapon. When a partially complete frame or receiver parts kit reaches a stage in manufacture where it may readily be completed, assembled, converted, or restored to a functional state, it would be considered a firearm "frame or receiver" that must be marked. Further, under the proposed rule, weapon parts kits with partially complete frames or receivers containing the necessary parts such that they may readily be completed, assembled, converted, or restored to expel a projectile by the action of an explosive would be "firearms" for which each frame or receiver of the weapon, as defined under this rule, would need to be marked.

For non-FFL manufacturers of firearm parts kits containing a part defined as a firearm frame or receiver, ATF anticipates there would be a significant impact on these individual companies, but notes that the overall industry impact would also be minimal. Based on current marketing related to the unregulated sale of certain firearm parts kits, ATF anticipates that these non-FFLs would either become FFLs to sell regulated frames or receivers or complete weapons (either as kits or fully assembled), or would take a loss in revenue to sell unregulated items or parts kits that do not contain a frame or receiver (*i.e.,* unregulated raw materials or molds, fire control components, barrels, accessories, tools, jigs, or instructions), but not both. For more details, please refer to Chapter 3 of the Regulatory Impact Analysis.

## 3. GUNSMITHING

The proposed rule would result in a one-time cost for contract gunsmithing, estimated to be $180,849. For more details, please refer to Chapter 4 of the Regulatory Impact Analysis.🗋

🗋 Start Printed Page 27737

## 4. SILENCERS

The proposed rule would require silencers to be marked on any housing or structure, such as an outer tube or modular piece, designed to hold or integrate one or more essential internal components of the device. Currently, the regulations assume that each part defined as a muffler or silencer must be marked and registered.[78] While this proposed change would increase the number of certain parts—firearm muffler or

silencer frames or receivers—that need to be marked for modular silencers, this proposed change is not intended to require marking of all silencer parts so long as they are incorporated into a complete device by the original manufacturer or maker that is marked and registered. More specifically, none of the internal nonstructural parts of a complete muffler or silencer device would need to be marked so long as each frame or receiver as defined in this rule is marked. However, as with current regulations, silencer parts sold, shipped, or otherwise disposed of separately would still be considered "silencers" that require all markings prior to disposition except when transferred between qualified manufacturers for the production of new devices, and to qualified manufacturers and dealers for the repair of existing devices (see Section II.H.9 of the preamble).

However, the proposed rule would now require some manufacturers of silencers to mark the outer tube rather than the endcap. ATF anticipates only minimal costs associated with moving the serial number and other identifying information from the end cap or adding the same information to the outer tube on certain silencers. Furthermore, there may be a savings for individual owners of silencers. This proposed rule would expressly allow for repairs on silencer devices without having to undergo the additional NFA transfer and registration process, so long as the device is returned to the sender. For more details, please refer to Chapter 5 of the Regulatory Impact Analysis.

## 5. PRIVATELY MADE FIREARMS

A firearm, including a frame or receiver, assembled or otherwise produced by a non-licensee without any markings by a licensee at the time of production or importation is defined as a "privately made firearm (PMF)" in the proposed rule. This does not include a firearm identified and registered in the NFRTR pursuant to chapter 53, title 26, United States Code, or any firearm made before October 22, 1968 (unless remanufactured after that date). Under the proposed rule, FFLs would be required to mark PMFs within 7 days of the firearm being received by a licensee, or before disposition, whichever first occurs. Licensees would have 60 days to mark PMFs already in inventory after a final rule becomes effective. FFLs would have the option to mark their existing PMFs themselves. Both FFLs and non-FFLs would have the option to contract with an FFL, such as a gunsmith, for this purpose, dispose of them, or send them to ATF or another law enforcement agency for disposal. The industry cost for this section is $563,340. For more details, please refer to Chapter 6 of the Regulatory Impact Analysis.

## 6. RECORD RETENTION

Currently, licensees other than manufacturers and importers do not have to store their ATF Forms 4473 or A&D records beyond 20 years. This proposed rule would require licensed dealers and collectors to store their Forms 4473 or A&D records indefinitely. The industry cost for this section would be minimal because FFLs could drop off their overflow records to ATF or have ATF ship them directly. The government cost for this provision is $68,939 annually. For more details, please refer to Chapter 7 of the Regulatory Impact Analysis.

## 7. ATF FORM UPDATES

This proposed rule would modify existing forms and records, such as ATF Forms 4473, NFA forms, importation forms, the Stolen or Lost Firearms Reports, and A&D Records, to help ensure that if more than one manufacturer or serial number is identified on any firearm, those names or serial numbers are recorded. As paper forms run out, FFLs would be able to order forms as part of their normal operations. In other words, FFLs using paper forms requested from ATF are not anticipated to incur any additional cost. For FFLs maintaining transaction records electronically, these FFLs would also only be required to update their software during their next regularly scheduled update. Because software updates occur regularly, and costs

are already incorporated for those, ATF does not anticipate any additional costs would be incurred for these changes. There is no cost associated with this section. For more details, please refer to Chapter 8 of the Regulatory Impact Analysis.

## 8. TOTAL COST OF THE PROPOSED RULE

The total 10-year undiscounted cost of this proposed rule is estimated to be $1.3 million. The total 10-year discounted cost of the rule is $1.0 million and $1.2 million at 7 percent and 3 percent respectively. The annualized cost of this proposed rule would be $147,048 and $135,750, also at 7 percent and 3 percent, respectively.

## 9. ALTERNATIVES

ATF considered various alternatives when preparing this proposed rule. For a more detailed analysis, please refer to Chapters 1 and 10 of the Regulatory Impact Analysis.

### A. THIS PROPOSED RULE

ATF chose to propose promulgating new definitions of "frame or receiver," "privately made firearm," "gunsmithing," and an update to records retention and new requirements for marking silencers, because they would maximize benefits.

### B. OTHER CONSIDERED ALTERNATIVES

*Alternative 1*—No change. While this alternative minimizes cost, it does not meet any of the objectives outlined in this proposed rule.

*Alternative 2*—Everytown for Gun Safety petition. ATF received a petition for rulemaking from Everytown for Gun Safety, a non-profit organization, proposing to define "firearm frame or receiver" in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11). That proposed definition focused on housing the "trigger group"; however, it did not define "trigger group" and even if it did, it would not address firearms that do not house trigger components within a single housing, or which have a remote trigger outside the weapon. In other words, this alternative would fall short of addressing all technologies or designs of firearms that are currently available, or may become available in the future. It also does not address potential changes in firearms terminology. Thus, while the alternative requested by that petition would reduce the cost by reducing the number of entities affected, it does not fully address the objectives of this proposed rule.

*Alternative 3*—Grandfather all existing firearms and receivers. This alternative would grandfather in all existing firearms that would not meet the serialization standard for partially complete and split frames or receivers. This was considered and incorporated into the proposed alternative, where feasible. However, in order to enforce the regulation, a complete grandfathering of existing firearms and silencers is problematic in that manufacturers could continue to ▯produce non-compliant firearm frames or receivers and falsely market them as grandfathered firearms. This could potentially pose an enforcement issue that may not be resolved for years if not decades.

▯ Start Printed
Page 27738

*Alternative 4*—Require serialization of all partially complete firearms or split receivers. This would require all firearms purchased by individuals to be retroactively serialized. However, the cost would increase considerably and the GCA only regulates the manufacture of firearms by Federal firearm licensees, not the making of firearms for personal use by private unlicensed individuals.

## B. Executive Order 13132 (/executive-order/13132)

This proposed rule will not have substantial direct effects on the States, the relationship between the federal Government and the States, or the distribution of power and responsibilities among the various levels of government. This rule is not intended to supersede State requirements unless there is a direct and positive conflict between them such that they cannot be reconciled or consistently stand together.[79] States can require markings on firearms for individuals. This rule does not require individuals to mark their personal firearms. Therefore, in accordance with section 6 of Executive Order 13132 (/executive-order/13132) (Federalism), the Attorney General has determined that this proposed rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

## C. Executive Order 12988 (/executive-order/12988)

This regulation meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988 (/executive-order/12988) (Civil Justice Reform).

## D. Regulatory Flexibility Act

In accordance with the Regulatory Flexibility Act ("RFA"), ATF prepared an Initial Regulatory Flexibility Analysis ("IRFA") that examines the impacts of the proposed rule on small entities (5 U.S.C. 601 (https://www.govinfo.gov/link/uscode/5/601?type=usc&year=mostrecent&link-type=html) *et seq.*). The IRFA is included here and as part of the RFA. The term "small entities" comprises small businesses, not-for-profit organizations that are independently owned and operated and are not dominant in their fields, and governmental jurisdictions with populations of fewer than 50,000 people. 5 U.S.C. 601 (https://www.govinfo.gov/link/uscode/5/601?type=usc&year=mostrecent&link-type=html)(6).

Because this proposed rule affects different populations in different ways, the analysis for the IRFA has been broken up by provision. Certain provisions may have a significant impact on certain small entities, such as non-FFL manufactures of firearm parts kits with incomplete firearm frames or receivers. Based on the information from this analysis:

- ATF estimates that this proposed rule could potentially affect 132,023 entities, including all FFLs and non-FFL manufacturers and retailers of firearm parts kits with incomplete firearm frames or receivers, but anticipates that the majority of entities affected by this rule would experience minimal or no additional costs.

- Non-FFL manufacturers are anticipated to be small and would potentially have a significant impact on their individual revenue.

- The second largest impact would be $12,828 if a manufacturer had to retool their existing production equipment, but ATF anticipates this is unlikely because this proposed rule encompasses the majority of existing technology. This would not affect future production because this work would be part of their normal operations in creating new firearms.

- ATF estimates the majority of affected entities are small entities that would experience a range of costs; therefore, this rule may have a significant impact on small entities.

Under the RFA, we are required to consider what, if any, impact this rule would have on small entities. Agencies must perform a review to determine whether a rule will have such an impact. Because the agency has determined that it will, the agency has prepared an initial regulatory flexibility analysis as described in the RFA. Under Section 603(b) of the RFA, the regulatory flexibility analysis must provide or address:

- A description of the reasons why action by the agency is being considered;

- A succinct statement of the objectives of, and legal basis for, the proposed rule;

- A description of, and where feasible, an estimate of the number of small entities to which the proposed rule will apply;

- A description of the projected reporting, recordkeeping and other compliance requirements of the proposed rule, including an estimate of the classes of small entities which will be subject to the requirement and the type of professional skills necessary for preparation of the report or record;

- An identification, to the extent practicable, of all relevant Federal rules which may duplicate, overlap or conflict with the proposed rule; and

- Descriptions of any significant alternatives to the proposed rule which accomplish the stated objectives of applicable statutes and which minimize any significant economic impact of the proposed rule on small entities.

## 1. A DESCRIPTION OF THE REASONS WHY ACTION BY THE AGENCY IS BEING CONSIDERED

One of the reasons ATF is considering this proposed regulation is the failure of the market to compensate for negative externalities caused by commercial activity. A negative externality can be the by-product of a transaction between two parties that is not accounted for in the transaction.

This proposed rule would update the existing definition of frame or receiver to account for the majority of technological advances in the industry and ensure that these firearms continue to remain under the regulatory regime as intended by the enactment of the GCA, including accounting for manufacturing of firearms using multiple manufacturers. In light of recent court cases, the majority of regulated firearms may not meet the existing definition of firearm frame or receiver. This may result in no part of a firearm being regulated as a "frame or receiver" contrary to the requirements in the GCA that ensure tracing to solve crime and help prevent prohibited persons from coming into possession of weapons. Furthermore, finding information in support of criminal cases may be hindered because records are destroyed after 20 years despite the fact that firearms may last longer than 20 years and be used in criminal activities.

This proposed rule would also account for advances in technology in performing transactions such as electronic storage. For more specific details regarding the need for regulation, please refer to the specific chapters pertaining to each provision of this proposed rule.

## 2. A SUCCINCT STATEMENT OF THE OBJECTIVES OF, AND LEGAL BASIS FOR, THE PROPOSED RULE

The Attorney General is responsible for enforcing the GCA, as amended, and the NFA, as amended. This responsibility includes the authority to promulgate regulations necessary to enforce the provisions of the GCA and NFA. *See* 18 U.S.C. 926 (https://www.govinfo.gov/link/uscode/18/926?type=usc&year=mostrecent&link-type=html)(a); 26 U.S.C. 7801 (https://www.govinfo.gov/link/uscode/26/7801?type=usc&year=mostrecent&link-type=html)(a)(2)(A); *id.* at 7805(a). Congress and the Attorney General have delegated the responsibility for administering and enforcing the GCA and NFA to the Director of ATF, subject to the direction of the Attorney General and the Deputy Attorney General. *See* ☐ 28 U.S.C. 599 (https://www.govinfo.gov/link/uscode/28/599?type=usc&year=mostrecent&link-type=html)A(b)(1); 28 CFR 0.130 (/select-citation/2021/05/21/28-CFR-0.130)(a)(1)-(2). Accordingly, the Department and ATF have promulgated regulations implementing both the GCA and the NFA. *See* 27 CFR parts 478 (/select-citation/2021/05/21/27-CFR-478), 479.

☐ Start Printed Page 27739

The proposed rule provides new regulatory definitions of "firearm frame or receiver" and "frame or receiver" because they are outdated. The proposed rule would also amend ATF's definitions of "firearm" and "gunsmith" to clarify the meaning of those terms, and to add new regulatory terms such as "complete weapon," "complete muffler or silencer device," "privately made firearm," and "readily" for purposes of

clarity given advancements in firearms technology. Further, the proposed rule would amend ATF's regulations on marking and recordkeeping that are necessary to implement these new or amended definitions.

### 3. A DESCRIPTION OF, AND WHERE FEASIBLE, AN ESTIMATE OF THE NUMBER OF SMALL ENTITIES TO WHICH THE PROPOSED RULE WILL APPLY

- ATF estimates that this rule could potentially affect 132,023 entities, including all FFLs and non-FFL manufactures and retailers of firearm kits, but anticipates that the majority of entities affected by this rule would experience minimal or no additional costs.
- ATF anticipates the majority of affected entities are small entities and would experience any range of costs; therefore this rule would have a significant impact on a substantial number of small entities.

### 4. AN IDENTIFICATION, TO THE EXTENT PRACTICABLE, OF ALL RELEVANT FEDERAL RULES WHICH MAY DUPLICATE, OVERLAP OR CONFLICT WITH THE PROPOSED RULE

This proposed rule does not duplicate or conflict with other Federal rules.

### 5. DESCRIPTIONS OF ANY SIGNIFICANT ALTERNATIVES TO THE PROPOSED RULE WHICH ACCOMPLISH THE STATED OBJECTIVES OF APPLICABLE STATUTES AND WHICH MINIMIZE ANY SIGNIFICANT ECONOMIC IMPACT OF THE PROPOSED RULE ON SMALL ENTITIES

The significant alternatives considered are set forth in Section IV(A)(9) of this preamble. For more details, please refer to Chapters 1 and 10 of the Regulatory Impact Analysis.

## E. Small Business Regulatory Enforcement Fairness Act of 1996

This proposed rule is not a major rule as defined by section 251 of the Small Business Regulatory Enforcement Fairness Act of 1996, 5 U.S.C. 804 (https://www.govinfo.gov/link/uscode/5/804?type=usc&year=mostrecent&link-type=html).

## F. Unfunded Mandate Reform Act of 1995

This proposed rule will not result in the expenditure by State, local, and Tribal governments, in the aggregate, or by the private sector of $100 million or more in any one year and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995, Public Law 104-4 (https://www.govinfo.gov/link/plaw/104/public/4?link-type=html), 109 Stat. 48.

## G. Paperwork Reduction Act of 1995

This proposed rule would call for collections of information under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 (https://www.govinfo.gov/link/uscode/44/3501?type=usc&year=mostrecent&link-type=html)-20). As defined in 5 CFR 1320.3 (/select-citation/2021/05/21/5-CFR-1320.3)(c), "collection of information" comprises reporting, recordkeeping, monitoring, posting, labeling, and other similar actions. The title and description of the information collection, a description of those who must collect the information, and an estimate of the total annual burden follow. The estimate covers the time for reviewing instructions, searching existing sources of data, gathering and maintaining the data needed, and completing and reviewing the collection.

Under the provisions of this proposed rule, there would be a one-time increase in paperwork burdens of identification markings placed on firearms as well as additional transaction records. This requirement would be added to an existing approved collection covered by OMB control number 1140-0050 and 1140-0067.

*Title:* Identification Markings Placed on Firearms.

*OMB Control Number:* OMB 1140-0050.

*Proposed Use of Information:* The Bureau of Alcohol, Tobacco, Firearms, and Explosives would use this information in fighting crime by facilitating the tracing of firearms used in criminal activities. The systematic tracking of firearms from the manufacturer or U.S. importer to the retail purchaser also enables law enforcement agencies to identify suspects involved in criminal violations, determine if a firearm is stolen, and provide other information relevant to a criminal investigation.

*Description and Number of Respondents:* Currently there are 12,252 licensed manufacturers of firearms and 1,343 licensed importers. Of the potential number of licensed dealers and licensed pawnbrokers, ATF estimates that those directly affected would be a one-time surge of 5,298 licensed dealers, 710 licensed pawnbrokers, and 36 non-licensed dealers that would be affected. This proposed rule would affect a one-time surge of 6,044 respondents.

*Frequency of Response:* There will be a recurring response for all currently existing 13,595 licensed manufactures and licensed importers. This proposed rule would affect a one-time number of responses of 12,088 responses (6,044 respondents * 2 responses).

*Burden of Response:* This includes recurring time burden of 1 minute. ATF anticipates a one-time hourly burden of 0.25 hours per respondent.

*Estimate of Total Annual Burden:* The current burden listed in this collection of information is 85,630 hours. The new burden, as a result of this proposed rulemaking, is a one-time hourly burden of 3,022 (6,044 respondents * 2 responses * 0.25 hourly burden per respondent).

*Title:* Licensed Firearms Manufactures Records of Production, Disposition, and Supporting Data.

*OMB Control Number:* OMB 1140-0067.

*Proposed Use of Information:* The Bureau of Alcohol, Tobacco, Firearms, and Explosives would use this information for criminal investigation or regulatory compliance with the Gun Control Act of 1968. The Attorney General may inspect or examine the inventory and records of a licensed importer, licensed manufacturer, or licensed dealer, without such reasonable cause or warrant, and during the course of a criminal investigation of a person or persons other than the licensee in order to ensure compliance with the recordkeeping requirements of 18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(1)(A) and (B). The Attorney General may also inspect or examine any records relating to firearms involved in a criminal investigation that is traced to the licensee, or firearms that may have been disposed of during the course of a bona fide criminal investigation.

*Description and Number of Respondents:* The current number of respondents is 9,056 firearm manufacturers, but this proposed rule would have a one-time surge for an unknown select few licensed manufacturers.

*Frequency of Response:* There will be a recurring response for all 9,056 licensed manufacturers, but only a one-time surge of 6,790 responses ((2,649 licensed dealer submissions + 710 license pawnbroker submissions + 36 non-licensed dealers) * 2 firearms or firearm kits) to licensed manufactures.

*Burden of Response:* This includes recurring time burden of 0.05 minutes. The burden resulting from this proposed ☐ rule is 0.25 hours per set of submittals by licensed dealers and licensed pawnbrokers to licensed manufacturers.

*Estimate of Total Annual Burden:* The current burden listed in this collection of information is 201,205 hours. The new burden, as a result of this proposed rulemaking, is 1,698 hours (6,790 responses * 0.25 hours).

As required by the Paperwork Reduction Act of 1995 (44 U.S.C. 3507 (https://www.govinfo.gov/link/uscode/44/3507?type=usc&year=mostrecent&link-type=html)(d)), a copy of this proposed rule will be submitted to OMB for its review of the collections of information.

We ask for public comment on the proposed collection of information to help us determine how useful the information is; whether it can help us perform our functions better; whether it is readily available elsewhere; how accurate our estimate of the burden of collection is; how valid our methods for determining burden are; how we can improve the quality, usefulness, and clarity of the information; and how we can minimize the burden of collection.

You need not respond to a collection of information unless it displays a currently valid control number from OMB. Before the requirements for this collection of information becomes effective, we will publish a notice in the **Federal Register** and request additional comments regarding the collection of information prior to OMB's decision to approve, modify, or disapprove the proposed collection.

## IV. Public Participation

### A. Comments Sought

ATF requests comments on the proposed rule from all interested persons. ATF specifically requests comments on the feasibility of implementing the new definition of firearm "frame or receiver" in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11) and 27 CFR 479.11 (/select-citation/2021/05/21/27-CFR-479.11), and related definitions and amendments that ensure the proper marking, recordkeeping, and traceability of all firearms manufactured, imported, acquired and disposed by Federal firearms licensees. ATF also requests comments on the costs or benefits of the proposed rule and on the appropriate methodology and data for calculating those costs and benefits.

All comments must reference this document's docket number ATF 2021R-05, be legible, and include the commenter's complete first and last name and full mailing address. ATF may not consider, or respond to, comments that do not meet these requirements or comments containing profanity. ATF will retain all comments as part of this rulemakings administrative record. ATF will treat all comments as originals and will not acknowledge receipt of comments. In addition, if ATF cannot read your comment due to technical difficulties and cannot contact you for clarification, ATF may not be able to consider your comment.

ATF will carefully consider all comments, as appropriate, received on or before the closing date, and will give comments after that date the same consideration if practical to do so, but assurance of consideration cannot be given except as to comments received on or before the closing date.

### B. Confidentiality

ATF will make all comments meeting the requirements of this section, whether submitted electronically or on paper, available for public viewing at ATF and on the internet through the Federal eRulemaking Portal, and subject to the Freedom of Information Act (5 U.S.C. 552 (https://www.govinfo.gov/link/uscode/5/552?type=usc&year=mostrecent&link-type=html)). Commenters who do not want their name or other personal identifying information posted on the internet should submit comments by mail or facsimile, along with a separate cover sheet containing their personal identifying information. Both the cover sheet and comment must reference this docket number (2021R-05). For comments submitted by mail or facsimile, information contained on the cover sheet will not appear when posted on the internet but any personal identifying information that appears within a comment will not be redacted by ATF and it will appear on the internet.

A commenter may submit to ATF information identified as proprietary or confidential business information. The commenter shall place any portion of a comment that is proprietary or confidential business information under law on pages separate from the balance of the comment with each page prominently marked "PROPRIETARY OR CONFIDENTIAL BUSINESS INFORMATION" at the top of the page.

ATF will not make proprietary or confidential business information submitted in compliance with these instructions available when disclosing the comments that it received, but will disclose that the commenter provided proprietary or confidential business information that ATF is holding in a separate file to which the public does not have access. If ATF receives a request to examine or copy this information, it will treat it as any other request under the Freedom of Information Act (5 U.S.C. 552 (https://www.govinfo.gov/link/uscode/5/552?type=usc&year=mostrecent&link-type=html)). In addition, ATF will disclose such proprietary or confidential business information to the extent required by other legal process.

## C. Submitting Comments

Submit comments in any of three ways (but do not submit the same comment multiple times or by more than one method). Hand-delivered comments will not be accepted.

- *Federal eRulemaking Portal:* ATF recommends that you submit your comments to ATF via the Federal eRulemaking portal at *www.regulations.gov (http://www.regulations.gov)* and follow the instructions. Comments will be posted within a few days of being submitted. However, if large volumes of comments are being processed simultaneously, your comment may not be viewable for up to several weeks. Please keep the comment tracking number that is provided after you have successfully uploaded your comment.
- *Mail:* Send written comments to the address listed in the **ADDRESSES** section of this document. Written comments must appear in minimum 12-point font size (.17 inches), include the commenter's first and last name and full mailing address, be signed, and may be of any length.
- *Facsimile:* Submit comments by facsimile transmission to (202) 648-9741. Faxed comments must:

1. Be legible and appear in minimum 12 point font size (.17 inches);

2. Be 81/2" x 11" paper;

3. Be signed and contain the commenter's complete first and last name and full mailing address; and

4. Be no more than five pages long.

## D. Request for Hearing

Any interested person who desires an opportunity to comment orally at a public hearing should submit his or her request, in writing, to the Director of ATF within the 90-day comment period. The Director, however, reserves the right to determine, in light of all circumstances, whether a public hearing is necessary.

## Disclosure

Copies of this proposed rule and the comments received in response to it will be available through the Federal eRulemaking portal, at *www.regulations.gov (http://www.regulations.gov)* (search for ATF 2021R-05), and for public inspection by appointment during normal business hours at: ATF Reading Room, Room 1E-063, 99 New York Ave. NE, Washington, DC 20226; telephone: (202) 648-8740.

## List of Subjects

### 27 CFR Part 447 (/select-citation/2021/05/21/27-CFR-447)

- Administrative practice and procedure
- Arms control
- Arms and

### 27 CFR Part 478 (/select-citation/2021/05/21/27-CFR-478)

- Administrative practice and procedure
- Arms and munitions
- Exports
- Freight
- Imports
- Intergovernmental relations
- Law enforcement officers
- Military personnel
- Penalties
- Reporting and recordkeeping requirements
- Research
- Seizures and forfeitures
- Transportation

### 27 CFR Part 479 (/select-citation/2021/05/21/27-CFR-479)

- Administrative practice and procedure
- Arms and munitions
- Excise taxes
- Exports
- Imports
- Military personnel
- Penalties
- Reporting and recordkeeping requirements
- Seizures and forfeitures
- Transportation

**Authority and Issuance**

For the reasons discussed in the preamble, 27 CFR parts 447 (/select-citation/2021/05/21/27-CFR-447), 478, and 479 are proposed to be amended as follows:

# PART 447—IMPORTATION OF ARMS, AMMUNITION AND IMPLEMENTS OF WAR

**1.** The authority citation for 27 CFR part 447 (/select-citation/2021/05/21/27-CFR-447) continues to read as follows:

> **Authority:** 22 U.S.C. 2778 (https://www.govinfo.gov/link/uscode/22/2778?type=usc&year=mostrecent&link-type=html); Exec. Order 13637, 78 FR 16129 (/citation/78-FR-16129) (Mar. 8, 2013).

**§ 447.42            [Amended]**

**2.** Amend § 447.42 as follows:

> **a.** In paragraph (a)(1)(ii), remove the word "country" and add in its place the term "country or countries";

> **b.** In paragraph (a)(1)(iv)(A), remove "manufacturer" and add in its place "manufacturer(s) of the firearm or privately made firearm (if privately made in the United States)"; and

> **c.** In paragraph (a)(1)(iv)(G), remove "serial number" and add in its place "serial number(s)".

**§ 447.45            [Amended]**

**3.** Amend § 447.45 as follows:

> **a.** In paragraph (a)(2)(ii), remove "manufacturer of the defense article" and add in its place "manufacturer(s) of the defense article or privately made firearm (if privately made in the United States)";

> **b.** In paragraph (a)(2)(iii), remove the word "country" and add in its place the term "country or countries"; and

> **c.** In paragraph (a)(2)(vii), remove "serial number" and add in its place "serial number(s)".

# PART 478—COMMERCE IN FIREARMS AND AMMUNITION

**4.** The authority citation for 27 CFR part 478 (/select-citation/2021/05/21/27-CFR-478) continues to read as follows:

> **Authority:** 5 U.S.C. 552 (https://www.govinfo.gov/link/uscode/5/552?type=usc&year=mostrecent&link-type=html)(a); 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)-931; 44 U.S.C. 3504 (https://www.govinfo.gov/link/uscode/44/3504?type=usc&year=mostrecent&link-type=html)(h).

**5.** In § 478.11:

**a.** Add, in alphabetical order, definitions for "Complete muffler or silencer device" and "Complete weapon";

**b.** Revise the definition of "Engaged in the business" paragraph (d) "Gunsmith" and the definition of "Firearm";

**c.** Remove the definition of "Firearm frame or receiver"; and

**d.** Add, in alphabetical order, definitions for "Frame or receiver", "Importer or manufacturer's serial number", "Privately made firearm (PMF)", and "Readily".

The additions and revisions read as follows:

§ 478.11    Meaning of terms.

★  ★          ★  ★          ★  ★          ★  ★          ★  ★

*Complete muffler or silencer device.* A firearm muffler or firearm silencer that contains all component parts necessary to function as designed whether or not assembled or operable.

*Complete weapon.* A firearm other than a firearm muffler or firearm silencer that contains all component parts necessary to function as designed whether or not assembled or operable.

★  ★          ★  ★          ★  ★          ★  ★          ★  ★

*Engaged in the business—* * * *

*(d) Gunsmith.* A person who, as a service performed on existing firearms not for sale or distribution by a licensee, devotes time, attention, and labor to repairing or customizing firearms, making or fitting special barrels, stocks, or trigger mechanisms to firearms, or identifying firearms in accordance with this chapter, as a regular course of trade or business with the principal objective of livelihood or profit, but such term shall not include a person who occasionally repairs or customizes firearms, or occasionally makes or fits special barrels, stocks, or trigger mechanisms to firearms;

★  ★          ★  ★          ★  ★          ★  ★          ★  ★

*Firearm.* Any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; or any destructive device; but the term shall not include an antique firearm. In the case of a licensed collector, the term shall mean only curios and relics. The term shall include a weapon parts kit that is designed to or may readily be assembled, completed, converted, or restored to expel a projectile by the action of an explosive. The term shall not include a weapon, including a weapon parts kit, in which each part defined as a frame or receiver of such weapon is destroyed.

★  ★          ★  ★          ★  ★          ★  ★          ★  ★

*Frame or receiver.* A part of a firearm that, when the complete weapon is assembled, is visible from the exterior and provides housing or a structure designed to hold or integrate one or more fire control components, even if pins or other attachments are required to connect those components to the housing or structure. Any such part identified with a serial number shall be presumed,

absent an official determination by the Director or other reliable evidence to the contrary, to be a frame or receiver. For purposes of this definition, the term "fire control component" means a component necessary for the firearm to initiate, complete, or continue the firing sequence, including any of the following: Hammer, bolt, bolt carrier, breechblock, cylinder, trigger mechanism, firing pin, striker, or slide rails. The following are nonexclusive examples that illustrate this definition:

☐ Start Printed
Page 27742

*Example 1 – Hinged or single framed revolver:* The frame or receiver is the part of the revolver that provides a structure designed to hold the trigger, hammer, and cylinder.



*Example 2 – Bolt action rifle:* The frame or receiver is the part of the rifle that provides a structure designed to hold the bolt, firing pin, and trigger mechanism.



*Example 3 – Break action, lever action, or pump action rifle or shotgun:* The frame or receiver is the part of the rifle or shotgun that provides housing for the bolt and firing pin, or a structure designed to integrate the breechblock.



*Example 4 - Semiautomatic firearm or machinegun with a single receiver housing all fire control components:* The frame or receiver is the part of the firearm that provides housing for the hammer, bolt, trigger mechanism, and firing pin (*e.g.*, AK-type firearms).



(https://images.federalregister.gov/EP21MY21.000/original.png?1621087508)

☐ Start Printed
Page 27743

(a) *Firearm muffler or silencer frame or receiver.* The term "frame or receiver" shall mean, in the case of a firearm muffler or firearm silencer, a part of the firearm that, when the complete device is assembled, is visible from the exterior and provides housing or a structure, such as an outer tube or modular piece, designed to hold or integrate one or more essential internal components of the device, including any of the following: Baffles, baffling material, or expansion chamber.

(b) *Split or modular frame or receiver.* (1) In the case of a firearm with more than one part that provides housing or a structure designed to hold or integrate one or more fire control or essential internal components (*e.g.,* a split frame with upper assembly and lower assembly as in many semiautomatic rifles, upper slide assembly and lower grip module as in many semiautomatic handguns, or multiple silencer modular pieces), the Director may determine whether a specific part or parts of a weapon is the frame or receiver, which may include an internal frame or chassis at least partially exposed to the exterior to allow identification. In making this determination, the Director will consider the following factors, with no single factor being controlling:

(i) Which component the manufacturer intended to be the frame or receiver;

(ii) Which component the firearms industry commonly considers to be the frame or receiver with respect to the same or similar firearms;

(iii) How the component fits within the overall design of the firearm when assembled;

(iv) The design and function of the fire control components to be housed or integrated;

(v) Whether the component may permanently, conspicuously, and legibly be identified with a serial number and other markings in a manner not susceptible of being readily obliterated, altered, or removed;

(vi) Whether classifying the particular component is consistent with the legislative intent of the Act and this part; and

(vii) Whether classifying the component as the frame or receiver is consistent with ATF's prior classifications.

(2) Frames or receivers of different weapons that are combined to create a similar weapon each retain their respective classifications as frames or receivers provided they retain their original design and configuration.

(3) The Director has previously determined that a specific part is the frame or receiver with respect to certain weapons with split or modular frames or receivers. The following is a nonexclusive list of such weapons and the specific part identified as the frame or receiver as they existed on [date of publication of the final rule]:

(i) *Colt 1911-type, Beretta/Browning/FN Herstal/Heckler & Koch/Ruger/Sig Sauer/Smith & Wesson/Taurus hammer fired semiautomatic pistols:* The lower portion of the pistol, or grip, that provides housing for the trigger mechanism and hammer, and a structure designed to integrate the slide rails.



(ii) *Glock-type striker-fired semiautomatic pistols:* the lower portion of the pistol, or grip, that provides housing for the trigger mechanism, and a structure designed to integrate the slide rails.



(iii) *Sig Sauer P320-type semiautomatic pistols:* the internal removable chassis of the pistol, partially exposed to the exterior to allow identification, that provides housing for the trigger mechanism, and a structure designed to integrate the slide rails.



(iv) *Certain locking block rail system semiautomatic pistols:* the internal removable frame of the pistol that provides housing for the trigger mechanism, and a structure designed to integrate the slide rails, provided a portion is partially exposed to the exterior to allow identification.
(https://images.federalregister.gov/EP21MY21.001/original.png?1621087508)



(v)  *AR-15-type, and Beretta AR-70-type firearms:* the lower part of the weapon

that provides housing for the trigger mechanism and hammer.



(vi)  *Steyr AUG-type firearms:* the central part of the weapon that provides

housing for the rods in the bolt carrier sub-assembly and a structure designed to attach the

barrel.



(vii)  *Thompson M1A1-type machineguns and semiautomatic variants, and L1A1,*

*FN FAL, FN FNC, MP38, MP 40, and SIG 550-type firearms, and HK-type machineguns*

*and semiautomatic variants:* the upper part of the weapon that provides housing for the

bolt and firing pin.

(https://images.federalregister.gov/EP21MY21.002/original.png?1621087508)

Start Printed
Page 27746



(viii) *Vickers/Maxim, Browning 1919, and M2-type machineguns, and box-type machineguns and semiautomatic variants thereof:* the side plate of the weapon that provides a structure designed to hold the charging handle.



(ix) *Sten, Sterling, and Kel-Tec SUB-2000-type firearms:* the central part of the weapon, or tube, that provides housing for the bolt and firing pin.



(https://images.federalregister.gov/EP21MY21.003/original.png?1621087528)

(c) *Partially complete, disassembled, or inoperable frame or receiver.* The term "frame or receiver" shall include, in the case of a frame or receiver that is partially complete, disassembled, or inoperable, a frame or receiver that has reached a stage in manufacture where it may readily be completed, assembled, converted, or restored to a functional state. In determining whether a partially complete, disassembled, or inoperable frame or receiver may readily be assembled, completed, converted, or restored to a functional state, the Director may consider any available instructions, guides, templates, jigs, equipment, tools, or marketing materials. For purposes of this definition, the term "partially complete," as it modifies "frame or receiver," means a forging, casting, printing, extrusion, machined body or similar article that has reached a stage in manufacture where it is clearly identifiable as an unfinished component part of a weapon.

(d) *Destroyed frame or receiver.* The term "frame or receiver" shall not include a frame or receiver that is destroyed. For purposes of this definition, the term "destroyed" means that the frame or receiver has been permanently altered not to provide housing or a structure that may hold or integrate any fire control or essential internal component, and may not readily be assembled, completed, converted, or restored to a functional state. Acceptable methods of destruction include completely melting, crushing, or shredding the frame or receiver, or by completely severing at least three critical areas of the frame or receiver using a cutting torch having a tip of sufficient size to displace at least 1/4 inch of material at each location.

★*      ★*      ★*      ★*      ★*

*Importer's or manufacturer's serial number.* The identification number, licensee name, licensee city or state, or license number placed by a licensee on a firearm frame or receiver in accordance with this part. The term shall include any such identification on a privately made firearm, or an

ATF issued serial number. When used in this part, the term "serial number" shall mean the "importer's or manufacturer's serial number."

★ ★          ★ ★          ★ ★          ★ ★          ★ ★

*Privately made firearm (PMF).* A firearm, including a frame or receiver, assembled or otherwise produced by a person other than a licensed manufacturer, and without a serial number or other identifying markings ⧉ placed by a licensed manufacturer at the time the firearm was produced. The term shall not include a firearm identified and registered in the National Firearms Registration and Transfer Record pursuant to chapter 53, title 26, United States Code, or any firearm made before October 22, 1968 (unless remanufactured after that date).

⧉ Start Printed
Page 27747

★ ★          ★ ★          ★ ★          ★ ★          ★ ★

*Readily.* A process that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speedy, or easy process. Factors relevant in making this determination, with no single one controlling, include the following:

(a) Time, *i.e.,* how long it takes to finish the process;

(b) Ease, *i.e.,* how difficult it is to do so;

(c) Expertise, *i.e.,* what knowledge and skills are required;

(d) Equipment, *i.e.,* what tools are required;

(e) Availability, *i.e.,* whether additional parts are required, and how easily they can be obtained;

(f) Expense, *i.e.,* how much it costs;

(g) Scope, *i.e.,* the extent to which the subject of the process must be changed to finish it; and

(h) Feasibility, *i.e.,* whether the process would damage or destroy the subject of the process, or cause it to malfunction.

★ ★          ★ ★          ★ ★          ★ ★          ★ ★

§ 478.50          [Amended]

**6.** In § 478.50(a), add the phrase "or as otherwise provided in § 478.129" after "at the licensed premises served by such warehouse".

**7.** Revise § 478.92 to read as follows:

§ 478.92          **Identification of firearms and armor piercing ammunition.**

(a)(1) *Firearms manufactured or imported by licensees.* Licensed manufacturers and licensed importers of firearms must legibly identify each firearm they manufacture or import as follows:

(i) *Serial number, name, place of business.* By engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or otherwise placed on each part (or specific part(s) previously determined by the Director) defined as a frame

or receiver thereof, a serial number, in a manner not susceptible of being readily obliterated, altered, or removed. The serial number identified on each part of a weapon defined as a frame or receiver must be the same number, but must not duplicate any serial number(s) placed by the licensee on any other firearm. Except as provided in paragraph (a)(4)(v) of this section, each frame or receiver thereof must also be marked with either: Their name (or recognized abbreviation), and city and State (or recognized abbreviation) where they maintain their place of business; or their name (or recognized abbreviation) and abbreviated Federal firearms license number as a prefix, which is the first three and last five digits, followed by a hyphen, and then followed by a number as a suffix, *e.g.,* "12345678-[number]"; and

(ii) *Model, caliber or gauge, foreign manufacturer, country of manufacture.* By engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on each part (or specific part(s) previously determined by the Director) defined as a frame or receiver, or barrel or pistol slide (if applicable) thereof certain additional information. This information must be placed in a manner not susceptible of being readily obliterated, altered, or removed. Except as provided in paragraph (a)(4)(v) of this section, the additional information shall include:

(A) The model, if such designation has been made;

(B) The caliber or gauge;

(C) When applicable, the name of the foreign manufacturer; and

(D) In the case of an imported firearm, the name of the country in which it was manufactured. For additional requirements relating to imported firearms, see Customs regulations at 19 CFR part 134 (/select-citation/2021/05/21/19-CFR-134).

(iii) *Frame or receiver, machinegun conversion part, or muffler or silencer part disposed of separately.* Except as provided in paragraph (a)(4)(iv) of this section, each part defined as a frame or receiver, machinegun, or firearm muffler or firearm silencer that is not a component part of a complete weapon or device at the time it is sold, shipped, or otherwise disposed of by the licensee must be identified as required by this section with a serial number not duplicated on any other firearm and all additional identifying information, except that the model designation and caliber or gauge may be omitted if that information is unknown at the time the part is identified.

(iv) *Size and depth of markings.* The engraving, casting, or stamping (impressing) of the serial number and additional information must be to a minimum depth of .003 inch and in a print size no smaller than 1/16 inch. The size of serial numbers required by this section is measured as the distance between the latitudinal ends of the character impression bottoms (bases). The depth of all markings required by this section is measured from the flat surface of the metal and not the peaks or ridges.

(v) *Period of time to identify firearms.* Licensed manufacturers must identify a complete weapon or complete muffler or silencer device no later than seven days following the date of completion of the active manufacturing process for the weapon or device, or prior to disposition, whichever is sooner. Except as provided in paragraph (a)(4)(iv) of this section, licensed manufacturers must identify each part, including a replacement part, defined as a frame or receiver, machinegun, or

firearm muffler or firearm silencer that is not a component part of a complete weapon or device at the time it is sold, shipped, or otherwise disposed of no later than seven days following the date of completion of the active manufacturing process for the part, or prior to disposition, whichever is sooner. For purposes of this paragraph, firearms actively awaiting materials, parts, or equipment repair to be completed are actively in the manufacturing process. Licensed importers must identify imported firearms within the period prescribed in § 478.112.

(2) *Privately made firearms.* Unless previously identified by another licensee in accordance with this section, and except as provided in paragraph (a)(4)(vi) of this section, licensees must legibly and conspicuously identify each privately made firearm within seven days following the date of receipt or other acquisition (including from a personal collection), or before the date of disposition (including to a personal collection), whichever is sooner. PMFs must be identified by placing on each part (or specific part(s) previously determined by the Director) of a weapon defined as a frame or receiver, the same serial number, but must not duplicate any serial number(s) placed by the licensee on any other firearm. The serial number(s) must begin with the licensee's abbreviated Federal firearms license number as a prefix, which is the first three and last five digits, followed by a hyphen, and then followed by a number as a suffix, *e.g.,* "12345678-[number]". The serial number(s) must be placed in a manner otherwise in accordance with this section, including the requirements that the serial number(s) be at the minimum size and depth, and not susceptible of being readily obliterated, altered, or removed.

(3) *Meaning of marking terms.* For purposes of this section, the terms "legible" and "legibly" mean that the identification markings use exclusively ⬚ Roman letters (*e.g.,* A, a, B, b, C, c) and Arabic numerals (*e.g.,* 1, 2, 3), or solely Arabic numerals, and may include a hyphen, and the terms "conspicuous" and "conspicuously" mean that the identification markings are capable of being easily seen with normal handling of the firearm and unobstructed by other markings when the complete weapon is assembled.

⬚ Start Printed
Page 27748

(4) *Exceptions—(i) Alternate means or period of identification.* The Director may authorize other means of identification or period of time to identify firearms upon receipt of a letter application or Form 3311.4 from the licensee showing that such other identification or period is reasonable and will not hinder the effective administration of this part.

(ii) *Destructive devices.* In the case of a destructive device, the Director may authorize other means of identification or period of time to identify that weapon upon receipt of a letter application or Form 3311.4 from the licensee. The application shall show that engraving, casting, or stamping (impressing) such a weapon as required by this section would be dangerous or impracticable, or that the requested period is reasonable and will not hinder the effective administration of this part.

(iii) *Adoption of identifying markings.* Licensed manufacturers and licensed importers may adopt the serial number(s) or other identifying markings previously placed on a firearm in accordance with this section provided that, within the period and in the manner herein prescribed, the licensee legibly and conspicuously places, or causes to be placed, on each part (or specific part(s) previously determined by the Director) defined as a frame or receiver either: Their name (or recognized abbreviation), and city and State (or recognized abbreviation) where they maintain their place of business; or their name (or recognized abbreviation) and abbreviated Federal firearms license

number, which is the first three and last five digits, followed by a hyphen, and then followed by the existing serial number (including any other abbreviated FFL prefix) as a suffix, *e.g.,* "12345678-[serial number]".

(iv) *Firearm muffler or silencer parts*—(A) *Firearm muffler or silencer parts transferred between qualified manufacturers to complete new devices.* A licensed manufacturer qualified under part 479 may transfer a part defined as a firearm muffler or firearm silencer to another qualified manufacturer without immediately identifying or registering such part provided that, upon receipt, it is actively used to manufacture a complete muffler or silencer device. Once the new device with such part is completed, the manufacturer of the device shall identify and register it in the manner and within the period specified in this part for a complete muffler or silencer device.

(B) *Firearm muffler or silencer replacement parts transferred to qualified manufacturers or dealers to repair existing devices.* A licensed manufacturer qualified under part 479 may transfer a replacement part defined as a firearm muffler or firearm silencer other than a frame or receiver to a qualified manufacturer or dealer without identifying or registering such part provided that, upon receipt, it is actively used to repair a complete muffler or silencer device that was previously identified and registered in accordance with this part.

(v) *Firearms designed and configured before [EFFECTIVE DATE OF THE FINAL RULE].* Licensed manufacturers and licensed importers may continue to identify firearms (other than PMFs) of the same design and configuration as they existed before [EFFECTIVE DATE OF THE FINAL RULE] with the information required to be marked by paragraphs (a)(1)(i) and (ii) of this section that were in effect prior to that date, and any rules necessary to ensure such identification shall remain effective for that purpose.

(vi) *Privately made firearms acquired before [EFFECTIVE DATE OF THE FINAL RULE].* Licensees shall identify in the manner prescribed by this section, or cause another licensee to so identify, each privately made firearm received or otherwise acquired (including from a personal collection) by the licensee before [EFFECTIVE DATE OF THE FINAL RULE] within sixty (60) days from that date, or prior to the date of final disposition (including to a personal collection), whichever is sooner.

(b) *Armor piercing ammunition.* (1) *Marking of ammunition.* Each licensed manufacturer or licensed importer of armor piercing ammunition shall identify such ammunition by means of painting, staining or dying the exterior of the projectile with an opaque black coloring. This coloring must completely cover the point of the projectile and at least 50 percent of that portion of the projectile which is visible when the projectile is loaded into a cartridge case.

(2) *Labeling of packages.* Each licensed manufacturer or licensed importer of armor piercing ammunition shall clearly and conspicuously label each package in which armor piercing ammunition is contained, *e.g.,* each box, carton, case, or other container. The label shall include the words "ARMOR PIERCING" in block letters at least 1/4 inch in height. The lettering shall be located on the exterior surface of the package which contains information concerning the caliber or gauge of the ammunition. There shall also be placed on the same surface of the package in block

lettering at least 1/8 inch in height the words "FOR GOVERNMENTAL ENTITIES OR EXPORTATION ONLY." The statements required by this subparagraph shall be on a contrasting background.

(c) *Voluntary classification of firearms and armor piercing ammunition.* The Director may issue a determination to a person whether an item is a firearm or armor piercing ammunition as defined in this part upon receipt of a written request or form prescribed by the Director. Each such voluntary request or form submitted shall be executed under the penalties of perjury with a complete and accurate description of the item, the name and address of the manufacturer or importer thereof, and a sample of such item for examination along with any instructions, guides, templates, jigs, equipment, tools, or marketing materials that are made available to the purchaser or recipient of the item. The Director shall not issue a determination regarding a firearm accessory or attachment unless it is installed on the firearm(s) in the configuration for which it is designed and intended to be used. Upon completion of the examination, the Director may return the sample to the person who made the request unless a determination is made that return of the sample would be or place the person in violation of law. A determination made by the Director under this paragraph shall not be deemed by any person to be applicable to or authoritative with respect to any other sample, design, model, or configuration.

## § 478.112        [Amended]

**8.** Amend § 478.112 as follows:

**a.** In paragraph (b)(1)(iv)(A), remove "manufacturer" and add in its place "manufacturer(s) of the firearm or privately made firearm (if privately made in the United States)"; and

**b.** In paragraph (b)(1)(iv)(G), remove "serial number" and add in its place "serial number(s)".

## § 478.113        [Amended]

**9.** Amend § 478.113 as follows:

**a.** In paragraph (b)(1)(iv)(A), remove the word "manufacturer" and add in its place "manufacturer(s) of the firearm or privately made firearm (if privately made in the United States)";

**b.** In paragraph (b)(1)(iv)(G), remove the words "serial number" and add in □ their place the words "serial number(s)";

□ Start Printed Page 27749

**c.** In paragraph (c)(2)(ii), remove the word "manufacturer" and add in its place the word "manufacturer(s)";

**d.** In paragraph (c)(2)(iii), remove "country of manufacturer" and add in its place "country or countries of manufacturer(s) of the firearm or privately made firearm (if privately made in the United States)"; and

**e.** In paragraph (c)(2)(vii), remove the words "serial number" and add in their place "serial number(s)".

## § 478.114        [Amended]

**10.** Amend § 478.114 as follows:

**a.** In paragraph (a)(1)(v)(A), remove the word "manufacturer" and add in its place "manufacturer(s) of the firearm or privately made firearm (if privately made in the United States)";

**b.** In paragraph (a)(1)(v)(G), remove the words "serial number" and add in their place "serial number(s)"; and

**c.** In paragraph (b)(2)(ii), add "or privately made firearm (if privately made in the United States)" after "ammunition".

11. Revise § 478.122 to read as follows:

**§ 478.122**       **Records maintained by importers.**

(a) Each licensed importer shall record the name of the importer(s), manufacturer(s) and/or privately made firearm (if privately made in the United States), type, model, caliber or gauge, country or countries of manufacture (if imported), and serial number(s) of each firearm imported or otherwise acquired (including a frame or receiver to be disposed of separately), the date of such importation or other acquisition, and if otherwise acquired, the name and address, or the name and license number of the person from whom it was received. The information required by this paragraph shall be recorded not later than 15 days following the date of importation or other acquisition in a format with the applicable columns set forth in paragraph (b) of this section.

(b) A record of each firearm disposed of by an importer and a separate record of armor piercing ammunition dispositions to governmental entities, for exportation, or for testing or experimentation authorized under the provision of § 478.149, shall be maintained by the licensed importer on the licensed premises. The record shall show the date of such sale or other disposition, and the name and license number of the licensee to whom the firearm was transferred, or if disposed to a nonlicensee, the name and address of the person, or the serial number of the firearms transaction record, Form 4473, if the licensee transferring the firearm serially numbers the Forms 4473 and files them numerically. The information required by this paragraph shall be entered in the proper record book not later than the seventh day following the date of the transaction. In the event the licensee records a duplicate entry with the same firearm and acquisition information, whether to close out an old record book or for any other reason, the licensee shall record a reference to the date and location of the subsequent entry (*e.g.*, date of new entry, book name/number, page number, and line number) as the disposition. Such information shall be recorded in a format containing the applicable columns below, except that for armor piercing ammunition, the information and format shall also include the quantity of projectiles:

Importer's or Manufacturer's Firearms Acquisition and Dispositi

| Description of firearm | | | | | | Import/manufacture/ac | | |
|---|---|---|---|---|---|---|---|---|
| Importer(s), manufacturer(s), and/or PMF (if privately made in the U.S.) | Type | Model | Caliber or gauge | Country or countries of manufacture (if imported) | Serial number(s) | Date of import, manufacture, or acquisition | Nam addr nonlicer license and lic (if acc |
| | | | | | | | | |
| | | | | | | | | |

Importer's or Manufacturer's Armor Piercing Ammunition Disposition Record

| Date of disposition | Manufacturer | Caliber or gauge | Quantity of projectiles | Purchaser—name and address |
|---|---|---|---|---|

(c) The Director may authorize alternate records to be maintained by a licensed importer to record the acquisition and disposition of firearms and armor piercing ammunition when it is shown by the licensed importer that such alternate records will accurately and readily disclose the information required by this section. A licensed importer who proposes to use alternate records shall submit a letter application to the Director and shall describe the proposed alternate records and the need therefor. Such alternate records shall not be employed by the licensed importer until approval in such regard is received from the Director.

**12.** Revise § 478.123 to read as follows:

**§ 478.123**       **Records maintained by manufacturers.**

(a) Each licensed manufacturer shall record the name of the manufacturer(s), importer(s) (if any) and/or privately made firearm (if privately made in the United States), type, model, caliber or gauge, and serial number(s) of each firearm manufactured or otherwise acquired (including a frame or receiver to be disposed of separately), the date of such manufacture or other acquisition, and if otherwise acquired, the name and address or the name and license number of the person from whom it was received. The information required by this paragraph shall be recorded not later than the close of the next business day following the date of such manufacture or other acquisition, except that, when a commercial record is held by the licensed manufacturer separately from other commercial documents and readily available for inspection, containing all acquisition information required for the record, the period for making the required entry into the record may be delayed not to exceed the seventh day following the date of receipt. The information required by this paragraph shall be recorded in a format containing the applicable columns prescribed by § 478.122. ☐

☐ Start Printed
Page 27750

(b) A record of each firearm disposed of by a manufacturer and a separate record of armor piercing ammunition dispositions to governmental entities, for exportation, or for testing or experimentation authorized under the provision of § 478.149, shall be maintained by the licensed manufacturer on the licensed premises. The record shall show the date of such sale or other disposition, and the name and license number of the licensee to whom the firearms were transferred, or if disposed to a nonlicensee, the name and address of the person, or the serial number of the firearms transaction record, Form 4473, if the licensee transferring the firearm serially numbers the Forms 4473 and files them numerically. The information required by this paragraph shall be entered in the proper record book not later than the seventh day following the date of the transaction. In the event the licensee records a duplicate entry with the same firearm and acquisition information, whether to close out an old record book or for any other reason, the licensee shall record a reference to the date and location of the subsequent entry (*e.g.*, date of new entry, book name/number, page number, and line number) as the disposition. Such information shall be recorded in a format containing the applicable columns prescribed by § 478.122, except that for armor piercing ammunition, the information and format shall also include the quantity of projectiles.

(c) The Director may authorize alternate records to be maintained by a licensed manufacturer to record the acquisition or disposition of firearms and armor piercing ammunition when it is shown by the licensed manufacturer that such alternate records will accurately and readily disclose the information required by this section. A licensed manufacturer who proposes to use alternate

records shall submit a letter application to the Director and shall describe the proposed alternate record and the need therefor. Such alternate records shall not be employed by the licensed manufacturer until approval in such regard is received from the Director.

§ 478.124      [Amended]

**13.**Amend § 478.124 as follows:

**a.** In paragraph (c)(4), remove "manufacturer" and add in its place "manufacturer(s)", remove the words "importer (if any)" and add in their place "importer(s) (if any) of the firearm or privately made firearm (if privately made in the United States)", and remove the words "serial number" and add in their place "serial number(s)"; and

**b.** In the fourth sentence of paragraph (f), remove "Upon receipt of such Forms 4473, the" and add in its place "The", remove "manufacturer" and add in its place "manufacturer(s)", remove the words "importer (if any)" and add in their place "importer(s) (if any) of the firearm or privately made firearm (if privately made in the United States)", and remove the words "serial number" and add in their place "serial number(s)".

**14.**Amend § 478.125 as follows:

**a.** In paragraph (e):

**i.** Remove "manufacturer" and add in its place "manufacturer(s)", remove the words "importer (if any)" and add in their place "importer(s) (if any) of the firearm or privately made firearm (if privately made in the United States)", remove the words "serial number", wherever they appear, and add in their place "serial number(s)", and remove "as provided in paragraph (g)" and add in its place "as provided in paragraphs (g) and (i)";

ii. Add a sentence after the sixth sentence; and

iii. In the table Firearms Acquisition and Disposition Record remove "Name and address or name and license No." and add in its place "Name and address of nonlicensee; or if licensee, name and License No.", and remove "Address or License No. if licensee, or Form 4473 Serial No. if Forms 4473 filed numerically" and add in its place "Address of nonlicensee; License No. of licensee; or Form 4473 Serial No. if such forms filed numerically";

**b.** In paragraph (f)(1):

**i.** Remove "manufacturer" and add in its place "manufacturer(s)", remove the words "importer (if any)" and add in their place "importer(s) (if any) of the firearm or privately made firearm (if privately made in the United States)", remove the words "serial number" and add in their place "serial number(s)"; and

ii. Add a sentence after the fifth sentence;

**c.** In paragraph (f)(2) table Firearms Collectors Acquisition and Disposition Record, remove "Manufacturer" and add in its place "Manufacturer(s)", remove the words "importer (if any)" and add in their place "importer(s) (if any) of the firearm or privately made firearm (if privately made in the United States)", and remove the words "Serial No." and add in their place "Serial number(s)"; and

**d.** Add paragraph (j):

The additions read as follows:

**§ 478.125**    **Record of receipt and disposition.**

★*         ★*         ★*         ★*         ★*

(e) * * * In the event the licensee records a duplicate entry with the same firearm and acquisition information, whether to close out an old record book or for any other reason, the licensee shall record a reference to the date and location of the subsequent entry (*e.g.,* date of new entry, book name/number, page number, and line number) as the disposition.* * *

★*         ★*         ★*         ★*         ★*

(f) * * *

(1) * * * In the event the licensee records a duplicate entry with the same firearm and acquisition information, whether to close out an old record book or for any other reason, the licensee shall record a reference to the date and location of the subsequent entry (*e.g.,* date of new entry, book name/number, page number, and line number) as the disposition.* * *

★*         ★*         ★*         ★*         ★*

(j) *Privately made firearms.* Licensees must record each receipt (whether or not kept overnight) or other acquisition (including from a personal collection) and disposition (including to a personal collection) of a privately made firearm as required by this part, except that such information need not be recorded if the firearm is being identified under the direct supervision of another licensee with their information. Once a privately made firearm is identified by the licensee in accordance with section 478.92(a)(2), the licensee shall update the record of acquisition entry with the identifying information.

**§ 478.125**    **[Amended]**

**15.** Amend § 478.125a as follows:

**a.** In the first sentence of paragraph (a)(4), remove "manufacturer and importer (if any)" and add in its place "manufacturer(s) and importer(s) (if any) of the firearm or privately made firearm (if privately made in the United States)", remove the words "serial number" and add in their place "serial number(s)", remove "Manufacturer and importer (if any)" and add in its place "Manufacturer(s) and importer(s) (if any)", and remove the words "Serial No." and add in their place "serial number(s)".

**16.** In § 478.129, revise paragraphs (b), (d), and (e) to read as follows:

**§ 478.129**    **Record retention.**

★*         ★*         ★*         ★*         ★*

(b) *Firearms Transaction Record.* Licensees shall retain each Form 4473 until business is discontinued, either on paper, or in an electronic alternative method approved by the Director, at the ☐ business premises readily accessible for inspection under this part. Paper forms over 20 years of age may be stored at a separate warehouse, which shall be considered part of the business premises for this purpose and subject to inspection under this part. Forms 4473 shall be retained

☐ Start Printed
Page 27751

in the licensee's records as provided in § 478.124(b). *Provided, That* Forms 4473 with respect to which a sale, delivery or transfer did not take place shall be separately retained in alphabetical (by name of transferee) or chronological (by date of transferee's certification) order.

★*      ★*      ★*      ★*      ★*

(d) *Records of importation and manufacture.* Licensees shall maintain records of the importation, manufacture, or other acquisition of firearms, including ATF Forms 6 and 6A as required by subpart G of this part, until business is discontinued. Licensed importers' records and licensed manufacturers' records of the sale or other disposition of firearms after December 15, 1968, shall be retained until business is discontinued, either on paper, or in an electronic alternative method approved by the Director, at the business premises readily accessible for inspection under this part. Paper records that do not contain any open disposition entries and with no dispositions recorded within 20 years may be stored at a separate warehouse, which shall be considered part of the business premises for this purpose and subject to inspection under this part.

(e) *Records of dealers and collectors.* The records prepared by licensed dealers and licensed collectors of the sale or other disposition of firearms and the corresponding record of receipt of such firearms shall be retained until business or licensed activity is discontinued, either on paper, or in an electronic alternative method approved by the Director, at the business or collection premises readily accessible for inspection under this part. Paper records that do not contain any open disposition entries and with no dispositions recorded within 20 years may be stored at a separate warehouse, which shall be considered part of the business premises for this purpose and subject to inspection under this part.

★*      ★*      ★*      ★*      ★*

## PART 479—MACHINE GUNS, DESTRUCTIVE DEVICES, AND CERTAIN OTHER FIREARMS

**17.** The authority citation for 27 CFR part 479 (/select-citation/2021/05/21/27-CFR-479) continues to read as follows:

**Authority:** 26 U.S.C. 5812 (https://www.govinfo.gov/link/uscode/26/5812? type=usc&year=mostrecent&link-type=html); 26 U.S.C. 5822 (https://www.govinfo.gov/link/uscode/26/5822?type=usc&year=mostrecent&link-type=html); 26 U.S.C. 7801 (https://www.govinfo.gov/link/uscode/26/7801?type=usc&year=mostrecent&link-type=html); 26 U.S.C. 7805 (https://www.govinfo.gov/link/uscode/26/7805? type=usc&year=mostrecent&link-type=html).

**18.** In § 479.11:

**a.** Add definitions for "Complete muffler or silencer device" and "Complete weapon";

**b.** Revise the definition of "Frame or receiver";

**c.** Add a definition for "Readily"; and

**d.** Add a sentence at the end of the definition of "Transfer".

The additions and revision read as follows:

§ 479.11        **Meaning of terms.**

★*       ★*       ★*       ★*       ★*

*Complete muffler or silencer device.* A muffler or silencer that contains all component parts necessary to function as designed whether or not assembled or operable.

*Complete weapon.* A firearm other than a muffler or silencer that contains all component parts necessary to function as designed whether or not assembled or operable.

★*       ★*       ★*       ★*       ★*

*Frame or receiver.* The term "frame or receiver" shall have the same meaning as in 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11).

★*       ★*       ★*       ★*       ★*

*Readily.* A process that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speedy, or easy process. Factors relevant in making this determination, with no single one controlling, include the following:

(a) Time, *i.e.,* how long it takes to finish the process;

(b) Ease, *i.e.,* how difficult it is to do so;

(c) Expertise, *i.e.,* what knowledge and skills are required;

(d) Equipment, *i.e.,* what tools are required;

(e) Availability, *i.e.,* whether additional parts are required, and how easily they can be obtained;

(f) Expense, *i.e.,* how much it costs;

(g) Scope, *i.e.,* the extent to which the subject of the process must be changed to finish it; and

(h) Feasibility, *i.e.,* whether the process would damage or destroy the subject of the process, or cause it to malfunction.

★*       ★*       ★*       ★*       ★*

*Transfer.* * * * For purposes of this part, the term shall not include the temporary conveyance of a lawfully possessed firearm to a manufacturer or dealer qualified under this part for the sole purpose of repair, identification, evaluation, research, testing, or calibration, and return to the same lawful possessor.

★*       ★*       ★*       ★*       ★*

§ 479.62        **[Amended]**

**19.** In § 479.62(b)(3), remove "manufacturer" and add in its place "manufacturer(s)" and remove the words "serial number" and add in their place "serial number(s)".

**20.** In § 479.84(b)(8), remove "manufacturer" and add in its place "manufacturer(s)", remove the words "importer (if known)" and add in their place "importer(s) (if known)", and remove the words "serial number", wherever they may be, and add in their place "serial number(s)".

§ 479.88        **[Amended]**

**21.** In § 479.88(b), remove "manufacturer" and add in its place "manufacturer(s)", remove the word "importer" and add in its place "importer(s)", and remove the words "serial number" and add in their place "serial number(s)".

§ 479.90        **[Amended]**

**22.** In § 479.90(b), remove the words "manufacturer", wherever they may be, and add in their place "manufacturer(s)", remove the word "importer" and add in its place "importer(s)", and remove the words "serial number" and add in their place "serial number(s)".

**23.** Revise § 479.102 to read as follows:

§ 479.102        **Identification of firearms.**

(a) *Identification required.* You, as a manufacturer, importer, or maker of a firearm, must legibly identify the firearm as follows:

(1) *Serial number, name, place of business.* By engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or otherwise placed on each part (or specific part(s) previously determined by the Director) defined as a frame or receiver thereof, a serial number, in a manner not susceptible of being readily obliterated, altered, or removed. The serial number identified on each part of a weapon, including a weapon parts kit, defined as a frame or receiver must be the same number, but must not duplicate any serial number(s) placed by the licensee or maker on any other firearm. Except as provided in paragraph (b)(5) of this section, each frame or receiver thereof must also be marked with either: Your name (or recognized abbreviation), and city and State (or recognized abbreviation) where you as a manufacturer or importer maintain your place of business, or in the case of a maker, where you made the ☐ firearm; or if a licensee, your name (or recognized abbreviation) and abbreviated Federal firearms license number as a prefix, which is the first three and last five digits, followed by a hyphen, and then followed by a number as a suffix, *e.g.,* "12345678-[number]"; and

☐ Start Printed
Page 27752

(2) *Model, caliber or gauge, foreign manufacturer, country of manufacture.* By engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on each part (or specific part(s) previously determined by the Director) defined as a frame or receiver, or barrel or pistol slide (if applicable) thereof certain additional information. This information must be placed in a manner not susceptible of being readily obliterated, altered, or removed. Except as provided in paragraph (b)(5) of this section, the additional information shall include:

(i) The model, if such designation has been made;

(ii) The caliber or gauge;

(iii) When applicable, the name of the foreign manufacturer or maker; and

(iv) In the case of an imported firearm, the name of the country in which it was manufactured. For additional requirements relating to imported firearms, see Customs regulations at 19 CFR part 134 (/select-citation/2021/05/21/19-CFR-134).

(3) *Frame or receiver, machine gun conversion part, or silencer part disposed of separately.* Except as provided in paragraph (b)(4) of this section, each part defined as a frame or receiver, machine gun, or firearm muffler or firearm silencer, that is not a component part of a complete weapon or device at the time it is sold, shipped, or otherwise disposed of by you must be identified as required by this section with a serial number not duplicated on any other firearm and all additional identifying information, except that the model designation and caliber or gauge may be omitted if that information is unknown at the time the part is identified.

(4) *Size and depth of markings.* The engraving, casting, or stamping (impressing) of the serial number and additional information must be to a minimum depth of .003 inch and in a print size no smaller than 1/16 inch. The size of serial numbers required by this section is measured as the distance between the latitudinal ends of the character impression bottoms (bases). The depth of all markings required by this section is measured from the flat surface of the metal and not the peaks or ridges.

(5) *Period of time to identify firearms.* You must identify a complete weapon or complete muffler or silencer device no later than seven days following the date of completion of the active manufacturing process for the weapon or device, or prior to disposition, whichever is sooner. Except as provided in paragraph (b)(4) of this section, you must identify each part, including a replacement part, defined as a frame or receiver, machine gun, or firearm muffler or firearm silencer, that is not a component part of a complete weapon or device at the time it is sold, shipped, or otherwise disposed of no later than seven days following the date of completion of the active manufacturing process for the part, or prior to disposition, whichever is sooner. For purposes of this paragraph, firearms actively awaiting materials, parts, or equipment repair to be completed are actively in the manufacturing process. Licensed importers must identify imported firearms within the period prescribed in § 478.112.

(6) *Meaning of marking terms.* For purposes of this section, the terms "legible" and "legibly" mean that the identification markings use exclusively Roman letters (*e.g.,* A, a, B, b, C, c) and Arabic numerals (*e.g.,* 1, 2, 3), or solely Arabic numerals, and may include a hyphen, and the terms "conspicuous" and "conspicuously" mean that the identification markings are capable of being easily seen with normal handling of the firearm and unobstructed by other markings when the complete weapon is assembled.

(b) *Exceptions*—(1) *Alternate means or period of identification.* The Director may authorize other means of identification or period of time to identify firearms upon receipt of a letter application or Form 3311.4 from you showing that such other identification or period is reasonable and will not hinder the effective administration of this part.

(2) *Destructive devices.* In the case of a destructive device, the Director may authorize other means of identification or period of time to identify that weapon upon receipt of a letter application or Form 3311.4 from you. The application shall show that engraving, casting, or stamping

(impressing) such a weapon as required by this section would be dangerous or impracticable, or that the requested time period is reasonable and will not hinder the effective administration.

(3) *Adoption of identifying markings.* Licensed manufacturers and licensed importers may adopt the serial number(s) or other identifying markings previously placed on a firearm in accordance with this section provided that, within the period and in the manner herein prescribed, the licensee legibly and conspicuously places, or causes to be placed, on each part (or specific part(s) previously determined by the Director) defined as a frame or receiver either: Their name (or recognized abbreviation), and city and State (or recognized abbreviation) where they maintain their place of business; or their name (or recognized abbreviation) and their abbreviated Federal firearms license number, which is the first three and last five digits, followed by a hyphen, and then followed by the existing serial number (including any other abbreviated FFL prefix) as a suffix, *e.g.*, "12345678-[serial number]".

(4) *Firearm muffler or silencer parts—*(i) *Firearm muffler or silencer parts transferred between qualified manufacturers to complete new devices.* A licensed manufacturer qualified under this part may transfer a part defined as a muffler or silencer to another qualified manufacturer without immediately identifying or registering such part provided that, upon receipt, it is actively used to manufacture a new complete muffler or silencer device. Once the new device with such part is completed, the manufacturer of the device shall identify and register it in the manner and within the period specified in this part for a complete muffler or silencer device.

(ii) *Firearm muffler or silencer replacement parts transferred to qualified manufacturers or dealers to repair existing devices.* A licensed manufacturer qualified under this part may transfer a replacement part defined as a muffler or silencer other than a frame or receiver to a qualified manufacturer or dealer without identifying or registering such part provided that, upon receipt, it is actively used to repair a complete muffler or silencer device that was previously identified and registered in accordance with this part.

(5) *Firearms designed and configured before [EFFECTIVE DATE OF THE FINAL RULE].* Licensed manufacturers and licensed importers may continue to identify firearms of the same design and configuration as they existed before [EFFECTIVE DATE OF THE FINAL RULE] with the information required to be marked by paragraphs (a)(1) and (2) of this section that were in effect prior to that date, and any rules necessary to ensure such identification shall remain effective for that purpose.

(c) *Voluntary classification of firearms.* The Director may issue a determination to a person whether an item is a firearm as defined in this part ▯ upon receipt of a written request or form prescribed by the Director. Each such voluntary request or form submitted shall be executed under the penalties of perjury with a complete and accurate description of the item, the name and address of the manufacturer or importer thereof, and a sample of such item for examination along with any instructions, guides, templates, jigs, equipment, tools, or marketing materials that are made available to the purchaser or recipient of the item. The Director shall not issue a determination regarding a firearm accessory or attachment unless it is installed on the firearm(s) in the configuration for which it is designed and intended to be used. Upon completion of the examination, the Director may return the sample to the person who made the request unless a

▯ Start Printed
Page 27753

determination is made that return of the sample would be of place the person in violation of law. A determination made by the Director under this paragraph shall not be deemed by any person to be applicable to or authoritative with respect to any other sample, design, model, or configuration.

**§ 479.103**        **[Amended]**

**24.** In § 479.103, at the end of the third sentence, add ", except as provided in § 479.102(b)(4)."

**§ 479.112**        **[Amended]**

**25.** In § 479.112(a), second sentence, remove the words "serial number" and add in their place the words "serial number(s)".

**§ 479.141**        **[Amended]**

**26.** In § 479.141, remove the word "manufacturer" and add in its place "manufacturer(s)" and remove the words "serial number" and add in their place "serial number(s)".

Dated: May 7, 2021.

Merrick B. Garland,

Attorney General.

# Footnotes

*1. NFA provisions still refer to the "Secretary of the Treasury." 26 U.S.C. ch. 53. However, the Homeland Security Act of 2002, Public Law 107-296 (https://www.govinfo.gov/link/plaw/107/public/296?link-type=html), 116 Stat. 2135 (2002), transferred the functions of ATF from the Department of the Treasury to the Department of Justice, under the general authority of the Attorney General. 26 U.S.C. 7801 (https://www.govinfo.gov/link/uscode/26/7801?type=usc&year=mostrecent&link-type=html)(a)(2); 28 U.S.C. 599 (https://www.govinfo.gov/link/uscode/28/599?type=usc&year=mostrecent&link-type=html)A(c)(1). Thus, for ease of reference, this notice of proposed rulemaking refers to the Attorney General throughout.*
Back to Citation

*2. See also H.R. Rep. 90-1577, at 4416 (June 21, 1968) ("Under former definitions of `firearm,' any part or parts of such a weapon were included. It was found impractical to have controls over each small part of a firearm. Thus, this definition includes only the major parts of the firearm, that is, the frame or receiver."); S. Rep. No. 90-1097, at 2200 (April 29, 1968) (same).*
Back to Citation

*3. Additionally, a firearm frame or receiver that is not a component part of a complete weapon at the time it is sold, shipped, or disposed of must be identified in the manner prescribed with a serial number and all of the other required markings. 27 CFR 478.92 (/select-citation/2021/05/21/27-CFR-478.92)(a)(2); id. at 479.102(e); ATF Ruling 2012-1.*
Back to Citation

*4. See Webster's Third New International Dictionary, pp. 902, 1894 (1971) (a "frame" is "the basic unit of a handgun which serves as a mounting for the barrel and operating parts of the arm"; "receiver" means "the metal frame in which the action of a firearm is fitted and to which the breech end of the barrel is attached"); Olson's Encyclopedia of Small Arms, p.72 (1985) (the term "frame" means "the basic structure and principal component of a firearm"); Steindler's New Firearms Dictionary p. 209 (1985) ("receiver"*

*means "that part of a rifle or shotgun (excepting hinged frame guns) that houses the bolt, firing pin, mainspring, trigger group, and magazine or ammunition feed system. The barrel is threaded into the somewhat enlarged forward part of the receiver, called the receiver ring. At the rear of the receiver, the butt or stock is fastened. In semiautomatic pistols, the frame or housing is sometimes referred to as the receiver.").*
Back to Citation

5. *The definition of "frame or receiver" in § 479.11 differs slightly from the definition in § 478.11 in that it omits an Oxford comma between "bolt or breechblock" and "firing mechanism."*
Back to Citation

6. *See Once Banned, Now Loved and Loathed: How the AR-15 Became `America's Rifle', New York Times (Mar. 3, 2018), https://www.nytimes.com/2018/03/03/us/politics/ar-15-americas-rifle.html (https://www.nytimes.com/2018/03/03/us/politics/ar-15-americas-rifle.html) (Once the patent expired in 1977, "it opened the way for dozens of weapons manufacturers to produce their own models, using the same technology. The term AR-15 has become a catchall that includes a variety of weapons that look and operate similarly"); Paul M. Barrett, Glock: The Rise of America's Gun 21-23 (2013) ("Today the Glock is on the hip of more American police officers than any other handgun."); A Star Is Born—U.S. Army Chooses Sig Sauer P320 For Its New Service Pistol, Forbes.com (Jan. 20, 2017) https://www.forbes.com/sites/ frankminiter/2017/01/20/a-star-is-born-u-s-army-chooses-sig-sauer-p320-for-its-new-service-pistol/ (https://www.forbes.com/sites/frankminiter/2017/01/20/a-star-is-born-u-s-army-chooses-sig-sauer-p320-for-its-new-service-pistol/). While millions of AR-15s/M-16s existed at the time ATF promulgated the definitions, they were manufactured almost exclusively for military use. See Internal Colt Memorandum from B. Northrop, Feb. 2, 1973, p.2 (noting that there were 2,752,812 military versus 25,774 civilian ("Sporters") serialization of AR-15/M-16 rifles then manufactured).*
Back to Citation

7. *A Matter of Purpose: Striker Fire vs. Hammer Fire, Small Arms Defense Journal (June 8, 2018), http://www.sadefensejournal.com/wp/a-matter-of-purpose-striker-fire-vs-hammer-fire/ (http://www.sadefensejournal.com/wp/a-matter-of-purpose-striker-fire-vs-hammer-fire/) ("Even though Glock wasn't the first to use striker fire on pistols, Glock can be credited for making the striker fire popular in the 1980s when they started using striker fire in their entire line of pistols. As Glock became popular, other manufacturers started using striker fire as well, proliferating it across the firearms manufacturing community on a grand scale").*
Back to Citation

8. *United States v. Rowold, 429 F. Supp. 3d 469 (N.D. Ohio 2019), Testimony of ATF Firearms Enforcement Officer Daniel Hoffman at Doc. No. 60, Hrg. Tr., Page ID 557 (approximately 10% of currently manufactured firearms in the United States include the three components in the frame or receiver definition); and Defense Expert Daniel O'Kelly at Doc. No. 60, Hrg. Tr. Page ID 482 ("90 some percent of [semiautomatic pistols] do not have a part which has more than one of these four elements in it and, therefore, don't qualify, according to the definition in the CFR.").*
Back to Citation

9. *ATF Internal Revenue Service Memoranda #21208 (Mar. 1, 1971) (lower portion of the M-16 is the frame or receiver because it comes closest to meeting the definition of frame or receiver in 26 CFR 178.11 (/select-citation/2021/05/21/26-CFR-178.11) (now 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11)), and is the receiver of a machinegun as defined in the NFA; ATF Memorandum #22334 (Jan. 24, 1977) (upper half of the FN FAL rifle is the frame or receiver because it was designed to accept the components that allow fully automatic fire). The ability to accept machinegun parts is considered because both the GCA and the NFA regulate machinegun receivers as "machineguns." See 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(23); 26 U.S.C. 5845 (https://www.govinfo.gov/link/uscode/26/5845?type=usc&year=mostrecent&link-*

type=html)(b)("The term "machinegun" shall also include the frame or receiver of any such weapon [which shoots is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger].").

10. Regulations implementing the relevant statutes spell the term "machine gun" rather than "machinegun." E.g., 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11), 479.11. For convenience, this notice of proposed rulemaking uses "machinegun" except when quoting a source to the contrary.
Back to Citation

11. See footnote 9 supra.
Back to Citation

12. ATF's predecessor agency, the Alcohol, Tobacco and Firearms Division within the Internal Revenue Service, derived this limitation on the application of definitions from the Internal Revenue Code ("IRC"), 26 U.S.C. 7701 (https://www.govinfo.gov/link/uscode/26/7701?type=usc&year=mostrecent&link-type=html) (a). Courts interpreting definitions in the IRC have not strictly applied those definitions where they would be manifestly incompatible with the intent of the applicable statute. See, e.g., Pierre v. Commissioner, 133 T.C. 24, 35 (2009) (even though a Limited Liability Company was not among any of the named entities defined in section 7701, it would be manifestly incompatible with the Federal estate and gift tax statutes to exclude them); Bunnel v. Commissioner, 50 T.C. 837, 841 (1968) (literal application of the definition of "taxpayer" in section 7701(a)(14) was avoided where it was manifestly incompatible with the intent of other sections of the IRC); Davis v. Commissioner, 30 T.C. 462, 466-67 (1958) (strict geographical application of the term "United States" in 26 U.S.C. 3797 (https://www.govinfo.gov/link/uscode/26/3797? type=usc&year=mostrecent&link-type=html)(a)(9) (now 7701(a)(9)) to the territory of American Samoa, rather than in a political sense, would be manifestly incompatible with the intent and purpose of the income tax exemption for persons earning income outside the United States).
Back to Citation

13. See footnote 8, supra.
Back to Citation

14. The United States military services have adopted variants of the Sig Sauer P320 as their official side arm, and are in the process of purchasing up to 500,000 of these striker-fired pistols. Army Picks Sig Sauer's P320 Handgun to Replace M9 Service Pistol, Military.com (Jan. 19, 2017), https://www.military.com/daily-news/2017/01/19/army-picks-sig-sauer-replace-m9-service-pistol.html (https://www.military.com/daily-news/2017/01/19/army-picks-sig-sauer-replace-m9-service-pistol.html); Every U.S. military branch is about to get its hands on the Army's new sidearm of choice, Taskandpurpose.com (Nov. 18, 2020), https://taskandpurpose.com/military-tech/modular-handgun-system-fielding/ (https://taskandpurpose.com/military-tech/modular-handgun-system-fielding/) (Sig Sauer delivered its 200,000th P320 variant pistol to the military despite the obstacles posed by the novel coronavirus).
Back to Citation

15. See Design of AR-15 could derail charges tied to popular rifle, APnews.com (Jan. 13, 2020), https://apnews.com/article/396bbedbf4963a28bda99e7793ee6366 (https://apnews.com/article/396bbedbf4963a28bda99e7793ee6366).
Back to Citation

16. See footnote 2, supra.
Back to Citation

17. See Baltimore police report a 400% increase in untraceable `ghost guns', The Baltimore Sun (Feb. 18, 2021), http://www.baltimoresun.com/news/crime/bs-pr-md-ci-cr-ghost-gun-ban-20210218-ae2dortu6ngn5llmfmq6yxtx6m-story.html (http://www.baltimoresun.com/news/crime/bs-pr-md-ci-cr-ghost-gun-ban-20210218-ae2dortu6ngn5llmfmq6yxtx6m-story.html); Syracuse joins lawsuit against feds amid rise in ghost guns, WRVO Syracuse (Aug. 27, 2020), https://www.wrvo.org/post/syracuse-joins-

lawsuit-against-feds-amid-rise-ghost-guns#stream/0 (https://www.wired.org/pdf/3/raise-feds-lawsuit-against-feds-amid-rise-ghost-guns#stream/0); *Ghost Guns: The build-it-yourself firearms that skirt most federal gun laws and are virtually untraceable*, CBS News (May 10, 2020), https://www.cbsnews.com/news/ghost-guns-untraceable-weapons-criminal-cases-60-minutes-2020-05-10/ (https://www.cbsnews.com/news/ghost-guns-untraceable-weapons-criminal-cases-60-minutes-2020-05-10/); *Untraceable ghost guns proliferate as Philadelphia grapples with violence*, The Morning Call (Mar. 18, 2020), https://www.mcall.com/news/pennsylvania/mc-nws-pa-philadelphia-ghost-guns-20200318-jzyt4thyvvgntproexbleyleay-story.html (https://www.mcall.com/news/pennsylvania/mc-nws-pa-philadelphia-ghost-guns-20200318-jzyt4thyvvgntproexbleyleay-story.html); *Ghost Guns Are Everywhere in California*, The Trace (May 17, 2019), https://www.thetrace.org/2019/05/ghost-gun-california-crime/ (https://www.thetrace.org/2019/05/ghost-gun-california-crime/); *The Rise of Untraceable Ghost Guns*, Wall Street Journal (Jan. 4, 2018), https://www.wsj.com/articles/the-rise-of-untraceable-ghost-guns-1515061800 (https://www.wsj.com/articles/the-rise-of-untraceable-ghost-guns-1515061800); *How D.C. Is Addressing An Ongoing Spike In Gun Violence*, NPR Washington (Mar. 2, 2020), https://www.npr.org/local/305/2020/03/02/811194978/how-d-c-is-addressing-an-ongoing-spike-in-gun-violence (https://www.npr.org/local/305/2020/03/02/811194978/how-d-c-is-addressing-an-ongoing-spike-in-gun-violence); *Untraceable `Ghost Guns' sold across Central Florida*, WKMG-TV Orlando (Nov. 15, 2016), https://www.clickorlando.com/getting-results/2016/11/15/untraceable-ghost-guns-sold-across-central-florida/ (https://www.clickorlando.com/getting-results/2016/11/15/untraceable-ghost-guns-sold-across-central-florida/).
Back to Citation

18. *Source: ATF Office of Strategic Intelligence and Information. These numbers (as of March 4, 2021) are likely far lower than the actual number of PMFs recovered from crime scenes because some law enforcement departments incorrectly trace some PMFs as commercially manufactured firearms, or may not see a need to use their resources to attempt to trace firearms with no serial number or other identifiable markings. The term "suspected PMF" is used because of the difficulty of getting law enforcement officials to uniformly enter PMF trace information into ATF's electronic tracing system ("eTrace"), resulting in reporting inconsistencies of PMFs involved in crime. For example, often PMFs resemble commercially manufactured firearms, or incorporate parts from commercially manufactured firearms bearing that manufacturer's name, so some firearms suspected of being PMFs were entered into eTrace using a commercial manufacturer's name rather than as one privately made by an individual. The term "potential crime scenes" is used because ATF does not know if the firearm being traced by the law enforcement agency was found at a crime scene as opposed to one recovered by them that was stolen or otherwise not from at the scene of a crime. This is because the recovery location or correlated crime is not always communicated by the agency to ATF in the tracing process.*
Back to Citation

19. *See, e.g., Kissimmee Man Sentenced To Five Years In Prison For Manufacturing Over 200 "Ghost Guns" Without A License*, D.O.J Office of Public Affairs (June 12, 2018), https://www.justice.gov/usao-mdfl/pr/kissimmee-man-sentenced-five-years-prison-manufacturing-over-200-ghost-guns-without (https://www.justice.gov/usao-mdfl/pr/kissimmee-man-sentenced-five-years-prison-manufacturing-over-200-ghost-guns-without); *Grass Valley Man Sentenced to 5 Years in Prison for Unlawfully Manufacturing Ghost Guns and Selling Them on Dark Web*, DOJ Office of Public Affairs (Sept. 21, 2018), https://www.justice.gov/usao-edca/pr/grass-valley-man-sentenced-5-years-prison-unlawfully-manufacturing-ghost-guns-and (https://www.justice.gov/usao-edca/pr/grass-valley-man-sentenced-5-years-prison-unlawfully-manufacturing-ghost-guns-and); *Rhode Island Man Charged with Building, Selling "Ghost" Machine Gun*, DOJ Office of Public Affairs (Dec. 12, 2018), https://www.justice.gov/usao-ri/pr/rhode-island-man-charged-building-selling-ghost-machine-gun (https://www.justice.gov/usao-ri/pr/rhode-island-man-charged-building-selling-ghost-machine-gun); *Conroe Man Ordered to Prison for Making "Ghost Guns"*, DOJ Office of Public Affairs (Feb. 21, 2019) https://www.justice.gov/usao-sdtx/pr/conroe-man-ordered-prison-making-ghost-guns (https://www.justice.gov/usao-sdtx/pr/conroe-man-ordered-prison-making-ghost-guns); *Seven Felons Indicted, Dozens of Firearms Seized as Part of Investigation Targeting Criminal Gun Sales in Orange County*, DOJ Office of Public Affairs (Oct. 10, 2019),

https://www.justice.gov/usao-cdca/pr/seven-felons-indicted-dozens-firearms-seized-part-investigation-targeting-criminal-gun (https://www.justice.gov/usao-cdca/pr/seven-felons-indicted-dozens-firearms-seized-part-investigation-targeting-criminal-gun); *Man Sentenced to 15 Years for Trafficking "Ghost Guns" and Drugs*, DOJ Office of Public Affairs (Feb. 14, 2020), https://www.justice.gov/usao-edva/pr/man-sentenced-15-years-trafficking-ghost-guns-and-drugs (https://www.justice.gov/usao-edva/pr/man-sentenced-15-years-trafficking-ghost-guns-and-drugs); *Tampa Man Sentenced To Over Five Years For Manufacturing Counterfeit Credit Cards, Fake IDs, And Illegal Firearms*, DOJ Office of Public Affairs (June 26, 2020), https://www.justice.gov/usao-mdfl/pr/tampa-man-sentenced-over-five-years-manufacturing-counterfeit-credit-cards-fake-ids-and (https://www.justice.gov/usao-mdfl/pr/tampa-man-sentenced-over-five-years-manufacturing-counterfeit-credit-cards-fake-ids-and); *Alleged Dealer of Ghost Guns and Machinegun Conversion Devices Arraigned*, DOJ Office of Public Affairs (July 15, 2020), https://www.justice.gov/usao-edva/pr/alleged-dealer-ghost-guns-and-machinegun-conversion-devices-arraigned (https://www.justice.gov/usao-edva/pr/alleged-dealer-ghost-guns-and-machinegun-conversion-devices-arraigned); *Connecticut Man Charged with Firearm Trafficking*, DOJ Office of Public Affairs (Aug. 12, 2020), https://www.justice.gov/usao-ma/pr/connecticut-man-charged-firearm-trafficking (https://www.justice.gov/usao-ma/pr/connecticut-man-charged-firearm-trafficking); *Operation `Black Phoenix' Leads to Federal Charges Against 25 Who Allegedly Engaged in Illegal Narcotics and Firearms Sales*, DOJ Office of Public Affairs (Sept. 15, 2020), https://www.justice.gov/usao-cdca/pr/operation-black-phoenix-leads-federal-charges-against-25-who-allegedly-engaged-illegal (https://www.justice.gov/usao-cdca/pr/operation-black-phoenix-leads-federal-charges-against-25-who-allegedly-engaged-illegal); *D.C. Felon Pleads Guilty in Federal Court in Maryland to Illegal Possession of a "Ghost Gun" Firearm and Ammunition*, DOJ Office of Public Affairs (Sept. 22, 2020), https://www.justice.gov/usao-md/pr/dc-felon-pleads-gui&lty-federal-court-maryland-illegal-possession-ghost-gun-firearm-and (https://www.justice.gov/usao-md/pr/dc-felon-pleads-gui&lty-federal-court-maryland-illegal-possession-ghost-gun-firearm-and); *Ghost Gun and Machine Gun Conversion Device Dealer Pleads Guilty*, DOJ Office of Public Affairs (Sept. 29, 2020), https://www.justice.gov/usao-edva/pr/ghost-gun-and-machine-gun-conversion-device-dealer-pleads-guilty (https://www.justice.gov/usao-edva/pr/ghost-gun-and-machine-gun-conversion-device-dealer-pleads-guilty); *Felon sentenced to more than five years in prison for arsenal of `ghost guns' and smuggled silencers*, DOJ Office of Public Affairs (Oct. 9, 2020), https://www.justice.gov/usao-wdwa/pr/felon-sentenced-more-five-years-prison-arsenal-ghost-guns-and-smuggled-silencers (https://www.justice.gov/usao-wdwa/pr/felon-sentenced-more-five-years-prison-arsenal-ghost-guns-and-smuggled-silencers); *Montgomery County Man Admits to Unlawfully Selling "Ghost Guns"*, DOJ Office of Public Affairs (Nov. 5, 2020), https://www.justice.gov/usao-ndny/pr/montgomery-county-man-admits-unlawfully-selling-ghost-guns (https://www.justice.gov/usao-ndny/pr/montgomery-county-man-admits-unlawfully-selling-ghost-guns); *Drug Dealer Who Sold "Ghost Guns," Silencers, and a Machinegun Sentenced to Thirty Years in Federal Prison*, DOJ Office of Public Affairs (Nov. 6, 2020), https://www.justice.gov/usao-ndia/pr/drug-dealer-who-sold-ghost-guns-silencers-and-machinegun-sentenced-thirty-years-federal (https://www.justice.gov/usao-ndia/pr/drug-dealer-who-sold-ghost-guns-silencers-and-machinegun-sentenced-thirty-years-federal); *Baltimore Man Sentenced to 21 Years in Federal Prison for Five Bank Robberies, Five Armed Robberies of Liquor Stores, and Related Firearms Charges*, DOJ Office of Public Affairs (Nov. 12, 2020), https://www.justice.gov/usao-md/pr/baltimore-man-sentenced-21-years-federal-prison-five-bank-robberies-five-armed-robberies (https://www.justice.gov/usao-md/pr/baltimore-man-sentenced-21-years-federal-prison-five-bank-robberies-five-armed-robberies); *Philadelphia Man Sentenced to 121/2 Years for Trafficking Methamphetamine and Weapons, Including `Ghost Guns,' Near Schools*, DOJ Office of Public Affairs (Dec. 30, 2020), https://www.justice.gov/usao-edpa/pr/philadelphia-man-sentenced-12-12-years-trafficking-methamphetamine-and-weapons (https://www.justice.gov/usao-edpa/pr/philadelphia-man-sentenced-12-12-years-trafficking-methamphetamine-and-weapons); *Vineland Boys Gang Member Pleads Guilty to Racketeering Offenses, Including Attempted Murder and Narcotics Trafficking*, DOJ Office of Public Affairs (Jan. 22, 2021), https://www.justice.gov/usao-cdca/pr/vineland-boys-gang-member-pleads-guilty-racketeering-offenses-including-attempted (https://www.justice.gov/usao-cdca/pr/vineland-boys-gang-member-pleads-guilty-racketeering-offenses-including-attempted); *Burbank Man Arrested on Federal Complaint Alleging He*

*Sold `Ghost Guns' Out of His Hookah Lounge, DOJ Office of Public Affairs (Jan. 29, 2021),*
https://www.justice.gov/usao-cdca/pr/burbank-man-arrested-federal-complaint-alleging-he-sold-ghost-
guns-out-his-hookah (https://www.justice.gov/usao-cdca/pr/burbank-man-arrested-federal-complaint-
alleging-he-sold-ghost-guns-out-his-hookah); *Saratoga County Man Admits to Unlawfully Selling "Ghost
Guns" and Methamphetamine Distribution, DOJ Office of Public Affairs (Feb. 3, 2021),*
https://www.justice.gov/usao-ndny/pr/saratoga-county-man-admits-unlawfully-selling-ghost-guns-
and-methamphetamine (https://www.justice.gov/usao-ndny/pr/saratoga-county-man-admits-
unlawfully-selling-ghost-guns-and-methamphetamine); *Orange County Man Sentenced to 10 Years in
Federal Prison for Brokering Illegal Sales of `Ghost Guns,' Other Firearms, DOJ Office of Public Affairs
(Feb. 8, 2021),* https://www.justice.gov/usao-cdca/pr/orange-county-man-sentenced-10-years-federal-
prison-brokering-illegal-sales-ghost-guns (https://www.justice.gov/usao-cdca/pr/orange-county-man-
sentenced-10-years-federal-prison-brokering-illegal-sales-ghost-guns).
Back to Citation

*20. Specifically, the House Report cited a January 11, 2019, Joint Intelligence Bulletin issued by DHS, FBI,
and NCTC concluding that "these rapidly evolving technologies pose an ongoing, metastasizing challenge
to law enforcement in understanding, tracking, and tracing ghost guns," and an April 19, 2019, DHS
intelligence assessment that "repeated the warning that ghost guns pose an urgent and evolving threat to
the homeland, particularly in the hands of ideologically motivated lone wolf actors." H.R. Rep. No. 116-88,
at 2.*
Back to Citation

*21. CBP: 3-D-printed full-auto rifle seized at Lukeville crossing, tucsonsentinel.com (Feb. 8, 2016),*
http://www.tucsonsentinel.com/local/report/020816_3d_printed_gun/cbp-3-d-printed-full-auto-rifle-
seized-lukeville-crossing/ (http://www.tucsonsentinel.com/local/report/020816_3d_printed_gun/cbp-3-
d-printed-full-auto-rifle-seized-lukeville-crossing/); *Firearms using 3D-printed components seized in
Sweden, Armament Research Services (May 19, 2017),* https://armamentresearch.com/3d-printed-
firearms-seized-in-sweden/ (https://armamentresearch.com/3d-printed-firearms-seized-in-sweden/);
*The TSA Has Found 3D-Printed Guns at Airport Checkpoints 4 Times Since 2016, Time (Aug. 2, 2018),*
https://time.com/5356179/3d-printed-guns-tsa/ (https://time.com/5356179/3d-printed-guns-tsa/);
*Indiana Residents Indicted on Terrorism and Firearms Charges, DOJ Office of Public Affairs (July 11,
2019),* https://www.justice.gov/opa/pr/indiana-residents-indicted-terrorism-and-firearms-charges
(https://www.justice.gov/opa/pr/indiana-residents-indicted-terrorism-and-firearms-charges); *Use of 3D
printed guns in German synagogue shooting must act as warning to security services, experts say,
independent.co.uk (Oct. 11, 2019),* https://www.independent.co.uk/news/world/europe/3d-gun-print-
germany-synagogue-shooting-stephan-balliet-neo-nazi-a9152746.html
(https://www.independent.co.uk/news/world/europe/3d-gun-print-germany-synagogue-shooting-
stephan-balliet-neo-nazi-a9152746.html); *TSA Confiscated 3D-Printed Guns at Raleigh-Durham
International Airport, nextgov.com (Mar. 4, 2020),* https://www.nextgov.com/emerging-tech/2020/03/
tsa-confiscated-3d-printed-guns-raleigh-durham-international-airport/163533/
(https://www.nextgov.com/emerging-tech/2020/03/tsa-confiscated-3d-printed-guns-raleigh-durham-
international-airport/163533/); *Man Sentenced for Attempting to Board International Flight with a
Loaded Firearm, DOJ Office of Public Affairs (Mar. 12, 2021),* https://www.justice.gov/usao-sdca/pr/
man-sentenced-attempting-board-international-flight-loaded-firearm (https://www.justice.gov/usao-
sdca/pr/man-sentenced-attempting-board-international-flight-loaded-firearm); *Glock ghost guns up for
grabs on the dark web, Australian National University (Mar. 23, 2021),* https://www.anu.edu.au/news/
all-news/glock-ghost-guns-up-for-grabs-on-the-dark-web (https://www.anu.edu.au/news/all-
news/glock-ghost-guns-up-for-grabs-on-the-dark-web); *Spain dismantles workshop making 3D-printed
weapons, BBC, (Apr. 19, 2021),* https://www.bbc.com/news/world-europe-56798743
(https://www.bbc.com/news/world-europe-56798743).
Back to Citation

22.  *See also ATF Ruling 2009-5, p. 2 ("The unique marks of identification of firearms serve several purposes. First, the marks are used by Federal firearms licensees to effectively track their firearms inventories and maintain all required records. Second, the marks enable law enforcement officers to trace specific firearms used in crimes from the manufacturer or importer to individual purchasers, and to identify particular firearms that have been lost or stolen. Further, marks help prove in certain criminal prosecutions that firearms used in a crime have travelled in interstate or foreign commerce.").*
Back to Citation

23.  *See 18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(1)(D); 27 CFR 478.125 (/select-citation/2021/05/21/27-CFR-478.125)(f) (disposition records of a Federal firearms licensee's personal collection firearms must contain a complete description of the firearm); House Consideration and Passage of S.2414, 99th Cong., 2d Sess., 132 Cong. Rec. 15229 (June 24, 1986) (Statement of Rep. Hughes) ("In order for the law enforcement Firearm Tracing Program to operate, some minimal level of recordkeeping is required [for sales from dealers' personal collections]. Otherwise, we will not have tracing capability. This provision simply requires that a bound volume be maintained by the dealer of the sales of firearms which would include a complete description of the firearm, including its manufacturer, model number, and its serial number and the verified name, address, and date of birth of the purchaser. There is only a minimal inconvenience for the dealer, yet obtaining and recording this information is critical to avoid serious damage to the Firearm Tracing Program.").*
Back to Citation

24.  *Licensees must respond to ATF trace requests within 24 hours. 18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(7); see also J&G Sales Ltd. v. Truscott, 473 F.3d 1043, 1045-46 (9th Cir. 2007) (describing the tracing process).*
Back to Citation

25.  *Source: ATF Office of Strategic Intelligence and Information. These figures were extracted on May 5, 2021, and include traces for both U.S. and international law enforcement agencies.*
Back to Citation

26.  *27 CFR 478.125 (/select-citation/2021/05/21/27-CFR-478.125)(e).*
Back to Citation

27.  *18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(1)(A); 27 CFR 478.125 (/select-citation/2021/05/21/27-CFR-478.125)(e), (f).*
Back to Citation

28.  *18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(1)(A); 27 CFR 478.124 (/select-citation/2021/05/21/27-CFR-478.124).*
Back to Citation

29.  *18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(6); 27 CFR 478.39 (/select-citation/2021/05/21/27-CFR-478.39)a(b).*
Back to Citation

30.  *18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html)(g)(3)(A); 27 CFR 478.126 (/select-citation/2021/05/21/27-CFR-478.126)a. Pursuant to 18 U.S.C. 923 (https://www.govinfo.gov/link/uscode/18/923?type=usc&year=mostrecent&link-type=html) (g)(5)(A), licensed dealers along the Southwest border are also required by demand letter to report to ATF multiple sales of certain rifles during five consecutive business days to the same person on ATF Form 3310.12, including the rifle's serial number, manufacturer, importer, model, and caliber. Also under that statute, licensed dealers with 15 or more trace requests with a "time-to-crime" of three years or less must report to ATF the acquisition date, model, caliber or gauge, and the serial number of a secondhand firearm transferred by the dealer.*
Back to Citation

*31. In United States v. Biswell, 406 U.S. 311, 315-16 (1972), the Supreme Court explained that "close scrutiny of [firearms] traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders. Large interests are at stake, and inspection is a crucial part of the regulatory scheme, since it assures that weapons are distributed through regular channels and in a traceable manner and makes possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms." (citation omitted).*
Back to Citation

*32. Most states require pawnbrokers to record or report any serial number and other identifying markings on pawned merchandise so that police can determine their origin. See Ala. Code section 5-19A-3(1); Alaska Stat. section 08.76.180(a)(4); Ariz. Rev. Stat. section 44-1625(C)(5); Colo. Rev. Stat. section 29-11.9-103(1); Conn. Gen. Stat. section 21-41(c); Del. Code tit. 24, section 2302(a)(1)(b); DC Code section 47-2884.11(d); Fla. Stat. section 538.04(1)(b)(3),(9); Ga. Code section 44-12-132(4); Haw. Rev. Stat. section 445-134.11(c)(10); 205 Ill. Comp. Stat. section 510/5(a); Ind. Code section 28-7-5-19(a)(4); Ky. Rev. Stat. Ann. section 226.040(1)(d)(7); La. Stat. Ann. section 37:1782(16)(a); Mass. Gen. Laws ch. 140 section 79; Mich. Comp. Laws section 446.205(5)(1),(4); Minn. Stat. section 325J.04(Sub.1)(1); Miss. Code Ann. section 75-67-305(1)(a)(iii),(ix); Mo. Rev. Stat. section 367.040(6)(b); Neb. Rev. Stat. section 69-204(3); N.M. Stat. section 56-12-9(A)(3); N.C. Gen. Stat. section 66-391(b)(1); Ohio Rev. Code section 4727.07; Okla. Stat. tit. 59 section 1509(D)(h); S.C. Code Ann. section 40-39-80(B)(1)(l)(iii),(ix); Tenn. Code Ann. section 45-6-209(b)(1)(C),(H); Tex. Fin. Code section 371.157(4); Utah Code section 13-32a-104(1)(h)(i)(A); Va. Code Ann. section 54.1-4009(A)(1); Wash. Rev. Code section 19.60.020(1)(e); W. Va. Code section 47-26-2(b)(1); Wis. Stat. section 134.71(8)(c)(2).*
Back to Citation

*33. See United States v. Marzzarella, 614 F.3d 85, 100 (3rd Cir. 2010) ("The direct tracing of the chain of custody of firearms involved in crimes is one useful means by which serial numbers assist law enforcement. But serial number tracing also provides agencies with vital criminology statistics—including a detailed picture of the geographical source areas for firearms trafficking and "time-to-crime" statistics which measure the time between a firearm's initial retail sale and its recovery in a crime—as well as allowing for the identification of individual dealers involved in the trafficking of firearms and the matching of ballistics data with recovered firearms."); Following the Gun, Enforcing Federal Laws Against Firearms Traffickers, ATF Publication, pp.1, 26 (June 2000) (serial number obliteration is a clear indicator of firearms trafficking to, among other criminals, armed narcotics traffickers).*
Back to Citation

*34. See, e.g., Abramski v. United States, 573 U.S. 169 (2014); Marshall v. Commonwealth, 822 S.E.2d 389 (Va. App. 2019); Commonwealth v. Baxter, 956 A.2d 465 (Pa. Super 2008).*
Back to Citation

*35. See, e.g., United States v. Powell, 467 F. Supp. 3d 360, 368, 374 (E.D. Va. 2020) (indictment charging false statements on ATF Form 4473 in connection with the purchase of specific handguns listed by date of purchase, make, caliber, model, serial number, and name of FFL); United States v. McCurdy, 634 F. Supp. 2d 118 (D. Me 2009) (denial of a motion for a new trial discussing whether the firearm sold as documented on the ATF Form 4473 and the firearm introduced at trial were the same).*
Back to Citation

*36. The lack of firearm description information in theft/loss reports makes it difficult for ATF to match recovered firearms with those reported as lost or stolen, thereby hindering ATF's efforts to enforce the numerous provisions of the GCA that prohibit thefts. See 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?type=usc&year=mostrecent&link-type=html)(i) (transporting or shipping stolen firearms in interstate or foreign commerce); id. at 922(j) (receiving, possessing, concealing, storing, bartering, selling, disposing, or pledging or accepting as security for a loan any stolen firearm which has moved in interstate or foreign commerce); id. at 922(u) (stealing a*

*firearm that has been shipped or transported in interstate or foreign commerce from the person or premises of an FFL); id. at 924(l) (stealing a firearm which is moving in or has moved in interstate commerce); and id. at 924(m) (stealing a firearm from a licensee).*
Back to Citation

*37. See Public Law 90-351, sec. 901(a), 82 Stat. 212, 225-26 (1968); 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?type=usc&year=mostrecent&link-type=html)(b)(2) (prohibiting licensees from selling or delivering any firearm to any person in a State where the purchase or possession by such person of such firearm would be in violation of any State law or published ordinance applicable at the place of sale, delivery, or other disposition); id. at 922(t)(2),(4) (NICS background check denied if receipt of firearm by transferee would violate State law); id. at 923(d)(1)(F) (requiring license applicants to certify compliance with the requirements of State and local law applicable to the conduct of business).*
Back to Citation

*38. See Cal. Pen. Code. section 29180 (prohibiting ownership of firearms that do not bear a serial number or other mark of identification provided by the State); Conn. Gen. Stat. section 29-36a(a) (prohibiting manufacture of firearms without permanently affixing serial numbers issued by the State); DC Code section 7-2504.08(a) (prohibiting licensees from selling firearms without serial numbers); Haw. Rev. Stat. section 134-10.2 (prohibiting unlicensed persons from producing 3D printed or parts kit firearms without a serial number); Mass. Gen. Laws 269 section 11E (prohibiting manufacture or delivery of unserialized firearms to licensed dealer); N.J. Stat. Ann. section 2C:39-3(n) (prohibiting possession of firearms manufactured or assembled without serial number); N.Y. Penal Law sections 265.50, 265.55 (prohibiting manufacture/possession of undetectable firearms); R.I. Gen. Laws section 11-47-8(e) (prohibiting possession of "a ghost gun or an undetectable firearm or any firearm produced by a 3D printing process"); Va. Code. Ann. section 18.2-308.5 (prohibiting possession of undetectable firearms); Wash. Rev. Code section 9.41.190 (prohibiting the manufacture with intent to sell of undetectable and untraceable firearms); see also Philadelphia Becomes First City To Ban 3D-Printed Gun Manufacturing, Reason.com (Nov. 22, 2013), https://reason.com/2013/11/22/philadelphia-becomes-first-city-to-ban-3/ (https://reason.com/2013/11/22/philadelphia-becomes-first-city-to-ban-3/); County Council Unanimously Approves Ghost Gun Bill , Mocoshow.com (April 6, 2021), https://mocoshow.com/blog/ county-council-unanimously-approves-ghost-gun-bill/?fbclid=IwAR1KCyFal3AId31WKCTLanR-uEUj_- dW_T32lND5gfKmle_-nvIbZyT052 (https://mocoshow.com/blog/county-council-unanimously-approves- ghost-gun-bill/?fbclid=IwAR1KCyFal3AId31WKCTLanR-uEUj_-dW_T32lND5gfKmle_-nvIbZyT052).*
Back to Citation

*39. See H.R. Rep. 90-1577, at 4416 (June 21, 1968) ("This provision makes it clear that so-called unserviceable firearms come within the definition."); S. Rep. No. 90-1097, at 2200 (April 29, 1968) (same). Numerous courts have held that weapons designed to expel a projectile by the action of an explosive are "firearms" under 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921? type=usc&year=mostrecent&link-type=html)(a)(3)(A) even if they cannot expel a projectile in their present form or configuration. See, e.g., United States v. Hardin, 889 F.3d 945, 946 (8th Cir. 2017) (pistol with broken trigger and numerous missing internal parts was a weapon designed to expel a projectile by the action of an explosive); United States v. Dotson, 712 F.3d 369 (7th Cir. 2013) (damaged pistol with corroded, missing and broken components); United States v. Rivera, 415 F.3d 284, 285-87 (2nd Cir. 2005) (pistol with a broken firing pin and flattened firing-pin channel); United States. v. Brown, 117 F.3d 353 (7th Cir. 1997) (no firing pin); United States v. Reed, 114 F.3d 1053 (10th Cir. 1997) (shotgun with broken breech bolt); United States v. Hunter, 101 F.3d 82 (9th Cir. 1996) (pistol with broken firing pin); United States v. Yannott, 42 F.3d 999, 1005 (6th Cir. 1994) (shotgun with broken firing pin); United States v. Ruiz, 986 F.2d 905, 910 (5th Cir. 1993) (revolver with hammer filed down); United States. v. York, 830 F.2d 885, 891 (8th Cir. 1987) (revolver with no firing pin and cylinder did not line up with barrel). But see United States v. Wada, 323 F. Supp. 2d 1079 (D. Or. 2004) (firearms redesigned as ornaments that "would take a great deal of time, expertise, equipment, and materials to attempt to reactivate" were no longer designed to expel a projectile by the action of an explosive and could not readily be converted to do so).*

40. *See, e.g., United States v. Wick, 697 F. App'x 507, 508 (9th Cir. 2017) (complete UZI parts kits "could `readily be converted to expel a projectile, by the action of an explosive,' meeting the statute's definition of firearm under section 921(a)(3)(A)" because the "kits contained all of the necessary components to assemble a fully functioning firearm with relative ease"); United States v. Stewart, 451 F.3d 1071, 1073 n.2 (9th Cir. 2006) (upholding district court's finding that .50 caliber rifle kits with incomplete receivers were "firearms" under 921(a)(3)(A) because they could easily be converted to expel a projectile); United States v. Morales, 280 F. Supp. 2d 262, 272-73 (S.D.N.Y. 2003) (partially disassembled Tec-9 pistol that could be assembled within short period of time could readily be converted to expel a projectile).*
Back to Citation

41. *The plain language of the definition of "firearm" in 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(3)(A) states that a weapon need not function so long as it is designed to, or may readily be converted to, expel a projectile. Even though they generally cannot function to expel a projectile when sold, weapon parts kits are still "weapons"—real combat instruments, such as pistols, revolvers, rifles, or shotguns—in an unassembled, unfinished, and/or incomplete state or configuration. There is no minimum utility or lethality requirement in the GCA or NFA for an item to be considered a "weapon." Cf. United States v. Thompson/Center Arms, 504 U.S. 505, 513, n.6 (1992) (a rifle was "made" under the NFA when a pistol was packaged together with a disassembled rifle parts kit); United States v. Hunter, 843 F. Supp. 235, 256 (E.D. Mich. 1994) ("If Defendants believe that machinegun conversion kits are not in and of themselves `weapons' under § 921(a)(3), they forget that that section clearly envisions machineguns as weapons."); United States v. Drasen, 845 F.2d 731, 736-37 (7th Cir. 1988) (rejecting argument that a collection of rifle parts cannot be a "weapon").*
Back to Citation

42. *The term "80% receiver" is a term used by some industry members, the public, and the media to describe a frame or receiver that has not yet reached a stage in manufacture to be classified as a "frame or receiver" under Federal law. However, that term is neither found in Federal law nor accepted by ATF.*
Back to Citation

43. *See footnotes 39 and 40, supra.*
Back to Citation

44. *The Internal Revenue Code of 1954, 26 U.S.C. 4181 (https://www.govinfo.gov/link/uscode/26/4181? type=usc&year=mostrecent&link-type=html), imposes on the manufacturer, producer, or importer an excise tax of 10% (pistols and revolver) or 11% (other firearms) on the sales price of firearms manufactured, produced, or imported, including complete, but unfinished, weapon parts kits. See Rev. Rul. 62-169 (IRS RRU), 1962-2 C.B. 245 (kits which contain all of the necessary component parts for the assembly of shotguns are complete firearms in knockdown condition even though, in assembling the shotguns the purchaser must `final-shape,' sand, and finish the fore-arm and the stock); cf. Rev. Rul. 61-189 (IRS RRU), 1961-2 C.B. 185 (kits containing unassembled components and tools to complete artificial flies for fisherman were sporting goods subject to excise tax); Hine v. United States, 113 F. Supp. 340, 343 (Ct. Cl. 1953) ("True enough, [these fishing rod kits] might be called `blanks' by those engaged in the trade, but what could they be called or to what practical use could they be put other than `fishing rods?' Plaintiff says that it would be extremely difficult if not impossible to case with a `blank' rod and this is true, but we can conceive of no other practical use for them except as fishing rods. . . . Having reached the stage of manufacture or development where they became recognizable as one of the sporting goods described in Section 3406(a)(1) the rods upon being sold were subject to tax even though there remained one or more finishing operations to be performed.") (citations omitted).*
Back to Citation

45. Additionally, persons who engage in the business of selling or distributing such weapon parts
cannot avoid licensing, marking, recordkeeping, or excise taxation by selling or shipping the parts in more
than one box or shipment to the same person, or by conspiring with another person to do so. See, e.g.,
United States v. Evans, 928 F.2d 858 (9th Cir. 1991) (conspiracy to cause and aid and abet the possession of
unregistered machineguns where one defendant sold parts kits containing all component parts of Sten
machineguns except receiver tubes, and the other sold customers blank receiver tubes along with detailed
instructions on how to complete them); Internal Revenue Service Technical Advice Memorandum 8709002,
1986 WL 372494, at 4 (Nov. 13, 1986) (for purposes of imposing Firearms Excise Tax it is irrelevant
whether the components of a revolver in an unassembled knockdown condition are sold separately to the
same purchaser in various related transactions, rather than sold as a complete kit in a single transaction).
Back to Citation

46. The prefatory paragraph to the definitional sections in the GCA and NFA regulations explain that
"[t]he terms `includes' and `including' do not exclude other things not enumerated which are in the same
general class or are otherwise within the scope thereof." 27 CFR 478.11 (/select-citation/2021/05/21/27-
CFR-478.11), 479.11.
Back to Citation

47. A firearm "muffler or silencer" is defined to include "any combination of parts" designed and intended
for the use in assembling or fabricating a firearm silencer or muffler and "any part intended only for use in
such assembly or fabrication." 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?
type=usc&year=mostrecent&link-type=html)(a)(24); 26 U.S.C. 5845
(https://www.govinfo.gov/link/uscode/26/5845?type=usc&year=mostrecent&link-type=html)(a)(7); 27
CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11); id. at 479.11. This rule defines the term "complete
muffler or silencer device" not to say that individual silencer parts are not considered a firearm "muffler or
silencer" subject to the requirements of the NFA, but to advise industry members when those individual
silencer parts must be marked and registered in the NFRTR when they are used in assembling or
fabricating a muffler or silencer device.
Back to Citation

48. See 27 CFR 479.101 (/select-citation/2021/05/21/27-CFR-479.101)(b); 478.92(a)(4)(iii); 479.102(f)(1).
Back to Citation

49. This rule is consistent with ATF enforcement policy. See footnote 72 infra.
Back to Citation

50. In 2016, ATF issued an Advance Notice of Proposed Rulemaking in response to a petition for
rulemaking from a firearms industry trade association recommending that regulations be amended to
require that a silencer be marked on the outer tube (as opposed to other locations), unless a variance is
granted by the Director on a case-by-case basis for good cause. See 81 FR 26764 (/citation/81-FR-26764)
(May 4, 2016).
Back to Citation

51. See footnote 46, supra.
Back to Citation

52. Markings must also be clearly visible from the exterior because they may be needed to prove that a
criminal defendant had knowledge that the serial number was obliterated or altered. See, e.g., Lewis v.
United States, No. 3:12-0522, 2012 WL 5198090, at *4 (M.D. Tenn. Oct. 19, 2012) (serial number
obliterated on the "visible exterior" of a revolver); State v. Shirley, No. 107449, 2019 WL 2156402 (Ct. App.
Ohio May 16, 2019) (same); cf. United States v. Sands, 948 F.3d 709, 719 (6th Cir. 2020) (serial number is
not altered or obliterated so long as it is "visible to the naked eye"); United States v. St. Hilaire, 960 F.3d 61,
66 (2d Cir. 2020) ("This `naked eye test' best comports with the ordinary meaning of `altered'; it is readily
applied in the field and in the courtroom; it facilitates identification of a particular weapon; it makes more

*efficient the larger project of rendering stolen guns from detection; it operates against mutilation that impedes identification as well as mutilation that frustrates it; and it discourages the use of untraceable weapons without penalizing accidental damage or half-hearted efforts.").*
Back to Citation

*53.  ATF Letter to Private Counsel #907010 (Mar. 20, 2015).*
Back to Citation

*54.  The Polymer 80 assembly, for example, may be completed in under thirty minutes. See, e.g., Silverback Reviews, Polymer 80 Lower Completion/Parts Kit Install, YouTube (Aug. 19, 2019), https://www.youtube.com/watch?v=ThzFOIYZgIg (https://www.youtube.com/watch?v=ThzFOIYZgIg) (21-minute video of completion of a Polymer 80 lower parts kit with no slide). Indeed, the internet is replete with people with no experience completing these firearms. See HandleBandle, DIY: How to Build a Gun at Home (That Shoots) Part 1, YouTube (Oct. 7, 2018), https://www.youtube.com/watch?v=nO-8Pns9aq4 (https://www.youtube.com/watch?v=nO-8Pns9aq4); HandleBandle, Polymer 80 with No Experience Tips (Build Part 2), YouTube (Oct. 7, 2018), https://www.youtube.com/watch?v=a0JM5v45vsg (https://www.youtube.com/watch?v=a0JM5v45vsg); HandleBandle, Legally Building a Gun in My Living Room (5D Tactical Glock Kit), YouTube (Oct. 18, 2018), https://www.youtube.com/watch?v= 5SaNLrhnnuA (https://www.youtube.com/watch?v=5SaNLrhnnuA).*
Back to Citation

*55.  See Bridgeport Felon Sentenced to More Than 5 Years in Federal Prison for Possessing Firearms, Justice.gov (Jan. 7, 2021), https://www.justice.gov/usao-ct/pr/bridgeport-felon-sentenced-more-5-years-federal-prison-possessing-firearms (https://www.justice.gov/usao-ct/pr/bridgeport-felon-sentenced-more-5-years-federal-prison-possessing-firearms); Winthrop man had homemade `ghost' guns and 3,000 rounds of ammunition, prosecutors say, Boston.com (Aug. 5, 2020), https://www.boston.com/news/ crime/2020/08/05/winthrop-man-had-homemade-ghost-guns-prosecutors-say (https://www.boston.com/news/crime/2020/08/05/winthrop-man-had-homemade-ghost-guns-prosecutors-say); `Ghost Gun' used in shooting that killed two outside Snyder County restaurant, Penn Live (Jul. 14, 2020), https://www.pennlive.com/crime/2020/07/ghost-gun-used-in-shooting-that-killed-two-outside-snyder-county-restaurant.html (https://www.pennlive.com/crime/2020/07/ghost-gun-used-in-shooting-that-killed-two-outside-snyder-county-restaurant.html); The gunman in the Saugus High School shooting used a `ghost gun,' sheriff says, CNN (Nov. 21, 2019), https://www.cnn.com/2019/11/21/ us/saugus-shooting-ghost-gun/index.html (https://www.cnn.com/2019/11/21/us/saugus-shooting-ghost-gun/index.html); How the felon killed at Walmart got his handgun, DA says, LehighValleyLive.com (March 28, 2018), https://www.lehighvalleylive.com/news/2018/05/how_the_felon_killed_at_ walmar.html (https://www.lehighvalleylive.com/news/2018/05/how_the_felon_killed_at_walmar.html); `Ghost guns': Loophole allows felons to legally buy gun parts online, KIRO7.com, https://www.kiro7.com/news/ local/ghost-guns-federal-loophole-allows-felons-to-legally-buy-gun-parts-online-build-assault-weapons/ 703695149/ (https://www.kiro7.com/news/local/ghost-guns-federal-loophole-allows-felons-to-legally-buy-gun-parts-online-build-assault-weapons/703695149/).*
Back to Citation

*56.  ATF does not believe the production of 3D printed frames or receivers is substantial at this time when compared with commercially produced firearms. For the most part, individuals currently make PMFs from parts kits produced commercially, not by using 3D printers. However, the cost, capabilities, and availability of 3D printers are quickly improving.*
Back to Citation

*57.  See How to Properly Destroy Firearms, ATF.gov, https://www.atf.gov/firearms/how-properly-destroy-firearms (https://www.atf.gov/firearms/how-properly-destroy-firearms); ATF Rul. 2003-1 (destruction of Browning M1919 type receivers); ATF Rul.2003-2 (FN FAL type receivers); ATF Rul. 2003-3 (H&K G3 type receivers); ATF Rul. 2003-4 (Sten type receivers).*
Back to Citation

*58. See United States v. Woolsey, 919 F. App'x 344, 352-53 (6th Cir. 2013) (gun that was restored with 90 minutes of work, using widely available parts and equipment and common welding techniques, fit comfortably within the readily restorable standard); United States v. TRW Rifle 7.62x51mm Caliber, 447 F.3d 686, 692 (9th Cir. 2006) (a two-hour restoration process using ordinary tools, including a stick weld, is within the ordinary meaning of "readily restored"); United States v. Mullins, 446 F.3d 750, 756 (8th Cir. 2006) (a starter gun that can be modified in less than one hour by a person without any specialized knowledge to fire may be considered "readily convertible" under the GCA); United States v. One TRW, Model M14, 7.62 Caliber Rifle, 441 F.3d 416, 422-24 (6th Cir. 2006) ("[T]he Defendant weapon here had all of the necessary parts for restoration and would take no more than six hours to restore."); United States v. Woods, 560 F.2d 660, 664 (5th Cir. 1977) (holding that a weapon was a shotgun within the meaning of 26 U.S.C. 5845 (https://www.govinfo.gov/link/uscode/26/5845?type=usc&year=mostrecent&link-type=html)(d) and stating "[t]he fact that the weapon was in two pieces when found is immaterial considering that only a minimum of effort was required to make it operable."); United States v. Smith, 477 F.2d 399, 400-01 (8th Cir. 1973) (machinegun that would take around an eight-hour working day in a properly equipped machine shop was readily restored to shoot); United States v. 16,179 Molso Italian .22 Caliber Winler Derringer Convertible Starter Guns, 443 F.2d 463 (2d Cir. 1971) (starter guns converted in no more than 12 minutes to fire live ammunition were readily convertible under the GCA); United States v. Morales, 280 F. Supp. 2d 262, 272-73 (S.D.N.Y. 2003) (partially disassembled Tec-9 pistol that could be assembled within a short period of time could readily be converted to expel a projectile); United States v. Catanzaro, 368 F. Supp. 450, 453 (D. Conn. 1973) (a sawed-off shotgun was "readily restorable to fire" where it could be reassembled in one hour and the necessary missing parts could be obtained at a Smith & Wesson plant); compare with United States v. Seven Miscellaneous Firearms, 503 F. Supp. 565, 574-75 (D.D.C. 1980) (weapons could not be "readily restored to fire" when restoration required master gunsmith in a gun shop and $65,000 worth of equipment and tools).*
Back to Citation


*59. The Federal Firearms Act of 1938 (repealed), the predecessor to the GCA, made it unlawful for a person to receive a firearm that had the manufacturer's serial number removed, obliterated or altered. 15 U.S.C. 902 (https://www.govinfo.gov/link/uscode/15/902?type=usc&year=mostrecent&link-type=html)(i). Regulations promulgated to implement this law required each firearm manufactured after July 1, 1958, to be identified with the name of the manufacturer or importer, a serial number, caliber, and model. However, there was an exception from the serial number and model requirements for any shotgun or .22 caliber rifle unless that firearm was also subject to the NFA. 26 CFR 177.50 (/select-citation/2021/05/21/26-CFR-177.50) (rescinded).*
Back to Citation


*60. Both the GCA and NFA define the term "manufacturer" as any person "engaged in the business of manufacturing firearms," and the GCA further defines the term "licensed manufacturer" as "any such person licensed under the provisions of this chapter." 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?type=usc&year=mostrecent&link-type=html)(a)(10); 26 U.S.C. 5845 (https://www.govinfo.gov/link/uscode/26/5845?type=usc&year=mostrecent&link-type=html)(m). The NFA further defines the term "make," and the various derivatives of that word, to include "manufacturing (other than by one qualified to engage in the business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. 5845 (https://www.govinfo.gov/link/uscode/26/5845?type=usc&year=mostrecent&link-type=html)(i).*
Back to Citation


*61. ATF occasionally issues serial numbers for placement on firearms in which the serial numbers were not originally placed, see 26 U.S.C. 5842 (https://www.govinfo.gov/link/uscode/26/5842?type=usc&year=mostrecent&link-type=html)(b), or were accidentally removed, damaged, or worn due to routine use or other innocent reason.*
Back to Citation

62. In addition to federal law, 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?
type=usc&year=mostrecent&link-type=html)(k) and 26 U.S.C. 5861
(https://www.govinfo.gov/link/uscode/26/5861?type=usc&year=mostrecent&link-type=html)(g), (h), (i),
almost every state prohibits the removal, alteration, or obliteration of a firearm's serial number or
possession of a firearm with a serial number that has been removed, altered, or obliterated. See Ala. Code
section 13A-11-64; Alaska Stat. section 11.61.200; Ariz. Rev. Stat. section 13-3102; Ark. Code section 5-73-
107; Cal. Penal Code section 23900; Colo. Rev. Stat. section 18-12-103; Conn. Gen. Stat. section 29-36; Del.
Code tit. 11 section 1459; Fla. Stat. Ann. section 790.27; Ga. Code. Ann. section 16-9-70; Haw. Rev. Stat.
section 134-10; Idaho Code Ann. section 18-2410; 720 Ill. Comp. Stat. section 5/24-5; Ind. Code section 35-
47-2-18; Kan. Stat. Ann. section 21-6306; Ky. Rev. Stat. section 527.050; La. Stat. Ann. section 40:1788;
Me. Stat. tit. 17-A section 705(E); Md. Code Pub. Safety section 5-142; Mass. Gen. Laws 269 section 11C;
Mich. Comp. Laws section 750.230; Minnesota Stat. section 609.667; Mo. Rev. Stat. section 571.050; Mont.
Code Ann. section 45-6-326; Neb. Rev. Stat. sections 28-1207, 28-1208; New. Rev. Stat. section 202.277;
N.H. Rev. Stat. Ann. section 637:7-a; N.J. Stat. Ann. section 2C:39-3(d); N.Y. Penal Law section 265.02(3);
N.C. Gen. Stat. section 14-160.2; N.D. Cent. Code section 62.1-03-05; Ohio Rev. Code section 2923.201;
Okla. Stat. tit. 21 section 1550(B); Or. Rev. Stat. section 166.450; 18 Pa. Cons. Stat. sections 6110.2, 6117;
R.I. Gen. Laws section 11-47-24; S.C. Code. Ann. section 16-23-30(C) (handguns); S.D. Codified Laws 22-
14-5; Tenn. Code Ann. section 39-14-134; Tex. Penal Code section 31.11; Utah Code section 76-10-521
(handguns); Va. Code Ann. section 18.2-311.1; Wash. Rev. Code section 9.41.140; W. Va. Code section 18.2-
311.1; Wis. Stat. section 943.37(3).
Back to Citation

63. The term "gunsmith" is not used in the GCA; however, the Firearm Owners' Protection Act, Public Law
99-308, amended the GCA to define "engaged in the business" as applied to dealers to clarify when
gunsmiths must have a license. See 18 U.S.C. 921 (https://www.govinfo.gov/link/uscode/18/921?
type=usc&year=mostrecent&link-type=html)(a)(11)(B); id. at (a)(21)(D); 132 Cong. Rec. 9603-04 (May 6,
1986) (statement of Sen. McClure).
Back to Citation

64. By clarifying the definition of gunsmith to mean a service routinely performed on existing firearms
that are not for sale or distribution by a licensee, this rule would supersede ATF Ruling 2010-10, which
allows gunsmiths under specified conditions to engage in certain manufacturing activities for licensed
manufacturers. This would eliminate a significant source of confusion among regulated industry members
and the public as to who needs a license to manufacture firearms. See Broughman v. Carver, 624 F.3d 670
(4th Cir. 2010) (distinguishing dealer-gunsmiths from manufacturers).
Back to Citation

65. Under this rule, licensed collectors would only need to mark PMFs they receive or otherwise acquire
that are defined as "curios or relics." See 27 CFR 478.11 (/select-citation/2021/05/21/27-CFR-478.11)
(definitions of "firearm" and "curios or relics").
Back to Citation

66. When the size and depth of markings regulations were first promulgated, ATF recognized that "all
markings can be removed by someone who wishes to make a deliberate effort to remove the markings.
Realistically, we need to be concerned about markings that could be worn away during normal use or
markings that could survive normal refinishing processes, e.g., blueing, plating, etc. . . . As such, ATF has
required manufacturers and importers who use polymer plastic frames to mark serial numbers in a steel
plate embedded within the plastic." 66 FR 40599 (/citation/66-FR-40599) (Aug. 3, 2001).
Back to Citation

67. Handguns that are 3D printed are also subject to the registration and taxation requirements of the
NFA if they have a smooth bore and are capable of being concealed on the person, thereby falling within
the definition of "any other weapon." See 26 U.S.C. 5845 (https://www.govinfo.gov/link/uscode/26/5845?
type=usc&year=mostrecent&link-type=html)(e).
Back to Citation

68. *Under Federal law, for example, certain firearm transactions must be conducted through Federal firearms licensees. See 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922? type=usc&year=mostrecent&link-type=html)(a)(5) (prohibiting any person other than a licensee, subject to certain limited exceptions, from selling or delivering a firearm to an unlicensed out of state resident).*
Back to Citation

69. *See Public Law 90-351, sec. 901(b), 82 Stat. 227.*
Back to Citation

70. *This rule is also consistent with the Second Amendment. As the Supreme Court stated in District of Columbia v. Heller, 554 U.S. 570, 626-27 & n.26 (2008), "presumptively lawful regulatory measures" include those "imposing conditions and qualifications on the commercial sale of arms." See also United States v. Marzzarella, 614 F.3d 85, 99 (3d Cir. 2010) (concluding that even if strict scrutiny were to apply, 18 U.S.C. 922 (https://www.govinfo.gov/link/uscode/18/922?type=usc&year=mostrecent&link-type=html)(k) (prohibiting possession of firearms with obliterated serial numbers) would be upheld under the Second Amendment because "serial number tracing serves a governmental interest in enabling law enforcement to gather vital information from recovered firearms. Because it assists law enforcement in this manner, we find its preservation is not only a substantial but a compelling interest.").*
Back to Citation

71. *The definition of "transfer" in the NFA only includes "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of" a firearm. See United States v. Smith, 642 F.2d 1179, 1182 (9th Cir. 1981) ("We cannot agree that Congress intended to impose a transfer tax and require registration whenever mere physical possession of a firearm is surrendered for a brief period.").*
Back to Citation

72. *These changes are consistent with ATF enforcement policy. See NFA Handbook, ATF E-Publication 5320.8 (April 2009), pp. 46, 60 sections 7.4.6; 9.5.1. With regard to silencer repairs, in order to avoid any appearance that an unlawful "transfer" has taken place, ATF recommends that an Application for Tax Exempt Transfer and Registration of Firearm, ATF Form 5, be submitted for approval prior to conveying the firearm for repair or identifying the firearm. The conveyance may also be accomplished by submission of a letter from the registrant to the qualified FFL advising the FFL that the registrant is shipping or delivering the firearm for repair/identification and describing the repair or identification. Return of the registered silencer to the registrant may likewise be accomplished by submission of an ATF Form 5 or by a letter from the FFL to the registrant that accompanies the silencer.*
Back to Citation

73. *See FFL Newsletter, May 2012, p.5 ("If a firearm is marked with two manufacturer's names, or multiple manufacturer and importer names, FFLs should record each manufacturers' and importers' name in the A&D record.").*
Back to Citation

74. *This is consistent with prior ATF guidance to the firearms industry. See FFL Newsletter, Sept. 2011, p.5.*
Back to Citation

75. *ATF previously approved electronic storage of certain records under the conditions set forth in ATF Rulings 2016-1 (Acquisition and Disposition Records) and 2016-2 (ATF Forms 4473).*
Back to Citation

76. *See 50 FR 26702 (/citation/50-FR-26702) (June 28, 1985).*
Back to Citation

77. *The Regulatory Impact Analysis is available on www.regulations.gov (http://www.regulations.gov) in the same docket as this rule.*
Back to Citation

78. *See footnote 47, supra.*
Back to Citation

79. *See 18 U.S.C. 927 (https://www.govinfo.gov/link/uscode/18/927?type=usc&year=mostrecent&link-type=html).*
Back to Citation

BILLING CODE 4410-FY-P

BILLING CODE 4410-FY-C

BILLING CODE 4410-FY-P

BILLING CODE 4410-FY-C

[FR Doc. 2021-10058 (/a/2021-10058) Filed 5-20-21; 8:45 am]

BILLING CODE 4410-FY-P