PHILLIP A. TALBERT
Acting United States Attorney
CAMERON L. DESMOND
Assistant United States Attorney
JUSTIN L. LEE
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>           v.<br><br>CRAIG MASON,<br><br>                    Defendant. | CASE NO.  2:16-CR-00002-KJM<br><br>UNITED STATES'S SUPPLEMENTAL SENTENCING BRIEF<br><br>DATE: January 10, 2022<br>TIME:  9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

**SUPPLEMENTAL BRIEF RE: PROPOSED REGULATION**

On December 6, 2021, the parties appeared for Judgment and Sentencing in this matter.  During the hearing, the Court considered the defendant's argument in the Supplemental Sentencing Memorandum (ECF 153 at 3-5) regarding a proposed change to the regulatory definition of a "frame or receiver" under 27 C.F.R. § 478.11.  The United States files this supplemental sentencing brief to address the questions raised by the Court at the December 6, 2021 hearing, specifically: (1) how much weight should the Court assign to this argument; and (2) how should this argument factor into the Court's § 3553(a) analysis?

**A 2021 regulation does not impact consideration of the defendant's 2013 conduct.**

The defendant's criminal conduct in this case took place in 2013.  Nothing about the 2021 notice and comment rulemaking impacts the defendant's culpability for conduct that

occurred 8 years ago.  The defendant's conduct was illegal in 2013 and it remains illegal today.  The only thing that has changed between 2013 and 2021, is that society has taken notice of the dangerousness and proliferation of ghost guns.  *See, e.g.*, LAPD DECLARES 'GHOST GUNS' AND 'EPIDEMIC,' CITING 400% INCREASE IN SEIZURES, Los Angeles Times, October 15, 2021.

Indeed, the defendant's referral to a regulatory amendment for firearm "frames and receivers" ignores what the defendant did.  The defendant manufactured and sold completed firearms:

> On some occasions, the defendant used equipment he owned in his personal workshop to mill out or machine unfinished AR-15 lower receivers ("blanks") into completed firearms and then sold those completed firearms for cash.  The defendant manufactured and sold AR-15-style firearms in this fashion.

Plea Agreement, ECF 100 at A-1.

By pointing to changes to the regulatory definition of a "frame or receiver," the defendant is only pointing to one part of the case against him.  As reflected in the factual basis for the plea agreement, the defendant used the metal working equipment that he used for his performance motorcycle parts company to put unserialized guns on the street.

> On other occasions, the defendant guided customers through the manufacturing process by setting up and manipulating the equipment to ensure the firearms were manufactured to the proper specifications.  He instructed his customers on these occasions to take menial steps such as lowering or turning the drill while he performed the technical aspects of the manufacturing.  The defendant manufactured and sold an unknown number of AR-15-style firearms in this fashion.  During the time of the offense conduct, the defendant created over 100 contacts in the cellular telephone labeled with the abbreviation "AR" next to the customer's name.

Plea Agreement, ECF 100 at A-1.

1    Given the context of the defendant's criminal conduct, the proposed change to a

2  regulatory definition is irrelevant to this case.  The defendant cites to a proposed change

3  to the Code of Federal Regulation and attaches the proposed rule change as Exhibit B to

4  his supplemental sentencing brief.  The defendant argues that the "proposed rule change

5  in Rule 2021 R-5 is a tacit admission that there was no clear proscription to the conduct at

6  issue in this case."  ECF 153 at 4.  As a result, the defendant argues that "imprisonment of

7  Mr. Mason does not serve as deterrent for a soon-to-be obsolete regulatory interpretation."

8  *Id.* at 5.

9    The proposed change to the CFR is not a "tacit admission" of anything.  The CFR

10 change is not about the defendant's case.  The defendant's case is not mentioned in

11 proposed rule change.  The proposed change to the CFR responds to three outlying district

12 court decisions (*Rowold*, *Jimenez*, and *Roh*) that are factual distinct from the defendant's

13 case and that "if broadly followed, could mean that as many as 90 percent of all firearms

14 now in the United States would not have any frame or receiver subject to regulation."  Ex.

15 B at 6.  These three district court decisions distort the intent of Congress in passing the

16 Gun Control Act of 1968 and would effectively mean that no gun possessed or

17 manufactured in the United States would need to bear a serial number.  The Department

18 of Justice, therefore, sought to amend the CFR to address this issue.

19    The defendant's pointing to present day efforts by the Department of Justice to

20 combat the scourge of ghost guns, is a veiled attempt to cast doubt on his underlying

21 conviction.  The defendant's Supplemental Sentencing Memorandum is a continuation of

22 his attempts to feign ignorance of the illegality of his conduct.  The defendant's motion to

23 dismiss (ECF 52), his motion to withdraw his guilty plea (ECF 130), and his supplemental

24 sentencing memo (ECF 153) show a consistent throughline of trying portray himself as

25 someone who was merely confused.  *See* ECF 153 ("This is precisely the issue that Mr.

26 Mason sought to address in his Dismissal Motion and his Motion to Withdraw Guilty

27 Plea.").  The defendant was not confused.

28    The defendant knew exactly what he was doing.  Mason told the ATF confidential

1    informant that "the Feds are cracking down on this stuff."  Mason told this same

2    informant that Mason didn't care that the informant had been convicted of robbery and

3    sent to prison.  All of this after Mason observed a tear drop tattoo on the informant's face

4    and asked if that meant that the CI had killed someone.  Mason knew what he was doing

5    and knew that it was against the law.

6            Separate and apart from the ATF confidential informant, the defendant also sold

7    completed AR-15-style ghost guns to a black market gun dealer named Dejon Andrade.

8    Andrade was convicted in 2013 in the Eastern District of California of unlawful dealing in

9    firearms.  2:13-CR-00092-GEB.  The defendant was one of Andrade's sources of supply.

10

11   i.   Subsequent to these purchases, ANDRADE began to purchase complete AR-15 rifles from MASON that
         MASON built from "80%s" that he machined.  ANDRADE purchased a total of approximately 20 rifles
12       from MASON and paid between $650 and $750 per rifle; the sales price of each rifle depended on the parts
         and accessories used by MASON to build the rifle.  ANDRADE then re-sold the rifles to his customers,
13       charging them between $1,500 and $1,700 per rifle.

14   Bates MASON_06881.  None of the guns that the defendant manufactured and sold to

15   Andrade were recovered.  Indeed, because the guns were unserialized, there will never be

16   a definitive link between the havoc wrought by these guns and the defendant.  The

17   defendant put the guns on the street in a manner designed to evade accountability.

18          The defendant is trying to have it both ways.  He pleaded guilty and received the

19   benefits of that plea – specifically, acceptance of responsibility, a limit to the government's

20   sentencing recommendation, and the dismissal of the drug charge at sentencing.  He now

21   argues that he is not actually guilty, and that the Court should vary downward on that

22   basis.  This argument – "I pleaded guilty but am not really guilty" – is not a legitimate

23   statutory basis for downward variance under 18 U.S.C. § 3553(a).  Indeed, a failure to

24   accept responsibility for knowingly manufacturing and selling untraceable AR ghost guns

25   weighs against a downward variance.  Without the defendant accepting that what he did

26   was wrong, the Court should have little confidence that the defendant has either been

27   adequately punished for his conduct or deterred from future similar conduct.

28   ///

**The Court should punish the defendant for putting at least 25 untraceable ghost guns on the street and deter others from similar dangerous conduct.**

This is a case about illegal, untraceable AR-15-style rifles being sold without any regard to whom was buying them or what they would do with them.  The defendant manufactured and sold firearms and he put those firearms into the hands of black market gun buyers wouldn't or couldn't buy guns through lawful channels—including a person the defendant believed had killed someone.  And he did all of this with a callous disregard for the havoc these guns would cause on the street.

The defendant argues that, "imprisonment of Mr. Mason does not serve as deterrent for a soon-to-be obsolete regulatory interpretation" and that "[i]mprisonment of Mr. Mason will provide no further protection to the public."  ECF 153 at 5.  The defendant is wrong. The Court should sentence the defendant to a term of imprisonment.

Putting the defendant in prison "reflect[s] the seriousness of the offence" and "promote[s] respect for the law."  18 U.S.C. § 3553(a)(2)(A).  The defendant put guns on the street and didn't care what happened.  The defendant's criminal conduct – manufacturing and selling untraceable AR-15-style guns on the black market – is egregious and warrants a significant sentence.  Further, the Court should deter this defendant and society at large from such dangerous conduct.  18 U.S.C. § 3553(a)(2)(B).  Here, the defendant put at least 25 unserialized, untraceable firearms onto the street.  This is exactly the crime that society needs to deter – putting guns in the hands of people who would not or could not lawfully purchase a firearm through a license firearms dealer.  The Court should sentence the defendant to 33 months incarceration, as recommended in the PSR.

Dated:  December 21, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By:  /s/ JUSTIN L. LEE
JUSTIN L. LEE
Assistant United States Attorney