LAW OFFICE OF TODD D. LERAS
Todd D. Leras, CA SBN 145666
455 Capitol Mall, Suite 802
Sacramento, California 95814
(916) 504-3933
toddleras@gmail.com
Attorney for Defendant
CRAIG MASON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 2:16-cr-002 KJM |
|---|---|
| Plaintiff, | |
| vs. | DEFENDANT CRAIG MASON'S REPLY TO GOVERNMENT'S SUPPLEMENTAL SENTENCING BRIEF |
| CRAIG MASON, | |
| Defendant. | |
| | Date:   January 10, 2022<br>Time:   9:00 a.m.<br>Court:  Hon. Kimberly J. Mueller |

    Defendant Craig Mason provides this Reply Brief in Response to the United States's Supplemental Sentencing Brief (ECF Entry 155). Mr. Mason's Supplemental Sentencing Memorandum included the text and commentary for a proposed regulatory change to the definition of a "frame or receiver" under 27 C.F.R. § 478.11. The proposed change tacitly acknowledges that existing regulations do not apply to guns, such as the AR-15 at issue in this

REPLY TO GOVERNMENT'S
SENTENCING BRIEF

case, with an upper and lower receiver.  Given the government's post-offense efforts to remedy the regulatory flaw, Mr. Mason urged the Court to consider whether imprisoning him served the express sentencing goals set out in 18 U.S.C. § 3553(a).

A sentencing judge is expressly required by 18 U.S.C. § 3553(a) to "impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set out in [18 U.S.C. § 3553(a)(2)]."  Subsection (a)(2) considerations include, among other things, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.  Each of these considerations presuppose that the law clearly delineates the illegal conduct.

The government urged the Court, during the December 6 Sentencing Hearing, to ignore Mr. Mason's argument regarding the potential impact of the regulatory change on selection of an appropriate sentence.  The Court declined this suggestion, instead allowing the government an opportunity to set out its arguments in a written brief.  The United States's Supplemental Sentencing Brief appears to have missed the salient point of Mr. Mason's argument.  The relevant question is not whether "ghost guns" pose a risk to public safety (Government's Supplemental Brief at page 2, lines 2-5).  The central question is whether the law, as it existed at the time of the charged offense, clearly applied to the defendant's conduct so that imprisonment is necessary for punishment, deterrence, and public protection purposes.

**LAW AND ARGUMENT**

The Government points out express language in the Plea Agreement indicating that "[o]n some occasions, the defendant used equipment he owned in his personal workshop to mill out or

REPLY TO GOVERNMENT'S
SENTENCING BRIEF

machine unfinished AR-15 *lower receivers ("blanks") into completed firearms* and then sold those complete firearms for cash." (Plea Agreement, ECF 100, at A-1 (Emphasis Added).)  The highlighted language puts the cart in front of the horse – presupposing that merely milling a blank into a lower receiver is illegal.

The proposed change to 27 C.F.R.§ 478.11 seeks to overcome a fatal flaw in the definition of a "completed firearm" existing at the time of Mr. Mason's conduct – specifically, that machining a blank into a lower receiver does not result in creation of a completed firearm.  *See United States v. Jimenez*, 191 F.Supp.3d 1038, 1039 (N.D. Cal. 2016); *see also* Judge Selna's intended ruling in *United States v. Roh* attached as Exhibit E to Defendant's Motion to Withdraw Guilty Plea, and Senior District Judge Carr's ruling in *United States v. Rowold and Robison,* attached as Exhibit G to Defendant's Motion to Withdraw Guilty Plea.  Whenever an 80% blank is machined to become a "lower receiver" it still falls short of being a "completed firearm."  It remains, under the current regulatory scheme, nothing more than a piece of harmless metal.  Much more is required before a completed firearm exists.

The language of the Factual Basis, in other words, is far from sufficient to overcome the ambiguities in the legal definition of what constitutes a completed firearm.  It is important to note that the Government drafted the Factual Basis for the Plea Agreement.  The only way it can overcome the ambiguity of its own word choice is to elide past it.  The language describing Mr. Mason's conduct simply highlights the question flowing from the deficient regulation – when does a completed firearm come into existence?

The government argues that Mr. Mason guided prospective buyers through the manufacturing process.  Again, the Plea Agreement's Factual Basis does not specify whether

REPLY TO GOVERNMENT'S
SENTENCING BRIEF

such guidance would overcome the deficiencies pointed out in *Jiminez, Roh,* and *Rowold and Robison.* Simply put, the process of guiding someone through machining an AR-15 blank into a lower receiver is not by itself sufficient to establish manufacturing or dealing of a firearm in violation of 18 U.S.C. § 922(a)(1)(A).

This deficiency continues to exist despite the government's argument that Mr. Mason's cell phone directory contained numerous examples of the abbreviation "AR" next to a contact's name. Again, this abbreviation tells nothing about what Mr. Mason did to manufacture a completed firearm. In fact, the government's brief offers only one instance of conduct amounting to manufacture of completed firearms under 18 U.S.C. § 922(a)(1)(A). That example comes from a cooperating defendant, Dejon Andrade, mentioned in the discovery (not the Plea Agreement's Factual Basis). (Government's Supplemental Brief, Page 4, lines 10-14). Although the government treats this information as if it is unassailable, the uncorroborated testimony of a cooperating defendant is far from dependable.

Courts, including the Ninth Circuit, have repeatedly recognized that cooperating defendants rewarded for their testimony are inherently untrustworthy. *See, e.g., Carriger v. Stewart,* 132 F.3d 463, 479 (9th Cir. 1997); *United States v. Bernal-Obeso,* 989 F.2d 331, 333 (finding that informant's granted benefits by the Government are "[b]y definition … cut from untrustworthy cloth, and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence of those under suspicion of crime, and from lying under oath in the courtroom."); *see also United States v. Cervantes-Pacheco,* 826 F.2d 310, 315 (5th Cir. 1987) ("It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence.").

REPLY TO GOVERNMENT'S
SENTENCING BRIEF

The government, having failed to disclose adverse information during Mr. Mason's pre-trial motion to dismiss (which addressed the deficient definition of what constitutes a "completed firearm"), is now compounding the problem.  It is doing so by urging a prison sentence based on information from the confidential informant and Mr. Andrade, absent any acknowledgement of the problems illustrated by *Jimenez* and *Roh*.  The predictable and unnecessary result is a misleading impression about the nature and extent of Mr. Mason's conduct.

The government seems to now recognize, as it urges imprisonment, the full inflammatory impact of the confidential informant's behavior.  The Supplemental Sentencing Brief mentions the informant's facial teardrop tattoo, disclosures about (the informant's) past crimes, and discussion of looming crackdowns on milling AR-15s, as suggesting Mr. Mason's guilty knowledge.  The government again elides past the crucial point – the informant arrived at Mr. Mason's shop with two AR-15 blanks.  He left with the same items – both altered by machining but falling far short of being "completed firearms" as defined in the regulation.

The informant's conversation with Mr. Mason cannot overcome this shortcoming.   In fact, a persuasive argument exists that the entire conversation is subject to exclusion from any trial because the danger of undue prejudice significantly outweighed its probative value under Federal Rule of Evidence 403.  Given these considerations, Mr. Mason urges that a term of imprisonment does not promote the goals of encouraging respect for the law, just punishment, deterrence, or public protection.

Respectfully submitted,

DATED:  January 4, 2022                    By    */s/ Todd D. Leras*
                                                              TODD D. LERAS
                                                              Attorney for Defendant
                                                              CRAIG MASON

REPLY TO GOVERNMENT'S
SENTENCING BRIEF